UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:18-CR-00139-RWS-NAB |
| WILLIAM DOUGLAS HANING, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR CHANGE OF VENUE**

Defendant William Douglas Haning ("Haning"), by and through undersigned counsel, respectfully moves this Court, pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, for an order transferring this case from the United States District Court for the Eastern District of Missouri to the United States District Court for the Northern District of Texas. Transfer is in the interest of justice as venue in Texas will be substantially more convenient to the parties and the witnesses.

**I.    Background**

On February 14, 2018, Haning was charged in a 31-count indictment. (Doc. 1). The counts consist of one count of conspiracy to commit mail or wire fraud in violation of 18 U.S.C. § 1349, and 30 counts of wire fraud in violation of 18 U.S.C. § 1343. (*Id.*). The underlying factual allegations for all counts generally relate to the alleged adulteration, mislabeling, and misbranding of protein products that were to be used in the production of pet food. It is alleged that the protein products were produced and shipped from a facility in Rosser, Texas that was owned by Wilbur-Ellis, a corporation headquartered in California. Haning was an employee of Wilbur-Ellis who worked at the Rosser facility and is a resident of Texas. Before the Government began investigating

this case—which compelled Haning to retain local counsel—Haning had never set foot within the Eastern District of Missouri.

A review of the indictment in this case reveals that minimal alleged conduct occurred in, or had an effect on, the Eastern District of Missouri. Specifically, the following allegations constitute the entirety of the conduct that allegedly even involved the Eastern District of Missouri:

- Diversified Ingredients was involved, and that Diversified Ingredients is a Missouri corporation located in the Eastern District of Missouri (Doc. 1 at ¶ 7);
- brokers and distributors in the Eastern District of Missouri were used and that certain shipments of protein products passed through the Eastern District of Missouri (*Id.* at ¶ 15);
- "within the Eastern District of Missouri, and elsewhere," certain checks and bills of lading were mailed (*Id.* at ¶ 72);
- emails to and from the Eastern District of Missouri were sent regarding the protein products at issue (*Id.* at ¶ 73); and
- two specific shipments of protein product were transported through the Eastern District of Missouri (*Id.* at ¶ 74).

In sum, the Eastern District of Missouri is only even allegedly touched by any of the alleged conduct in this case in 5 paragraphs of this 83-paragraph indictment. In stark contrast, the following allegations contained within the indictment allegedly involved persons and entities located within Texas:

- American By-Products ("ABP") was involved and was located in Rosser and Dallas, Texas (*Id.* at ¶ 7);
- ABP was owned by Haning and other members of his family (*Id.*);
- ABP, in Rosser, Texas, was acquired by Wilbur-Ellis, a California corporation in 2011 (*Id.* at ¶¶ 36-43);
- Custom AG Commodities was involved and is located in Winnsboro, Texas, with a mailing address in Sulphur Springs, Texas (*Id.* at ¶ 10);
- The Texas Feed and Fertilizer Control Service and the Office of Texas State Chemist were involved in investigating the Rosser, Texas facility (*Id.* at ¶¶ 20-34); and
- *critically*, every single alleged act of adulteration, mislabeling, and misbranding of protein products—and the corresponding shipment of said protein products—is alleged to have occurred at the facility located in Rosser, Texas (*Id.* at ¶¶ 15-19, 45-49, 51-53, 60-68, 70-71, 73-74).

In sum, 51 paragraphs of the 83-paragraph indictment allege conduct occurring in Texas.

Because the vast majority of the actions alleged occurred in Texas and, correspondingly, because most of the witnesses and documentation that will be a necessary part of this litigation are located in Texas, the Northern District of Texas is a far more appropriate venue for this matter. For these and the additional reasons that follow, Haning respectfully requests that this matter be transferred, pursuant to Federal Rule of Criminal Procedure 21(b), to the United States District Court for the Northern District of Texas as that venue would be significantly more convenient for the parties and the witnesses involved and would be in the interest of justice.

**II.     Discussion**

Federal Rule of Criminal Procedure 21(b) provides, "Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." The decision to transfer is committed to the discretion of the district Court. *United States v. Hull*, 419 F.3d 762, 768 (8th Cir. 2005).

While the Government's choice of forum is ordinarily to be respected, "the convenience of the defendants to be tried in the district where they live and work, where their attorneys reside and where the majority of the witnesses live may overcome that presumption." *United States v. McManus*, 535 F.2d 460, 463 (8th Cir. 1976). "Rule 21(b) interjects into criminal law an analogue to the civil doctrine of forum non conveniens." *Id.* "Venue provisions are to be liberally construed so as to minimize inconvenience to the parties, especially the defendant." *United States v. Lopez*, 343 F. Supp. 2d 824, 835 (E.D. Mo. 2004).

In *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240, 243-44 (1964), the Supreme Court noted with approval a number of factors considered by the district court in granting a motion for change of venue including:

> (1) location of the defendant; (2) location of the witnesses; (3) location of events in issue; (4) location of documents and records likely to be used in trial; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) accessibility of place of trial; (9) docket condition of the respective districts, and (10) any other considerations which might affect transfer.

Courts throughout the country, including the Eighth Circuit, have used these factors as a guide when considering a motion for change of venue pursuant to Rule 21(b). *See United States v. McGregor*, 503 F.2d 1167, 1170 (8th Cir. 1974). "Although *Platt* involved a corporate defendant, the ten *Platt* factors are used in cases involving individual defendants as well." *In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001). "No one of these considerations is dispositive, and '[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance.'" *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (quoting *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990)). "In determining the propriety of transfer, a court must decide which of these factors support transfer and which do not and then determine whether transferring of the case is warranted." *United States v. Valenciano*, No. CR06-4082MWB, 2006 WL 4046179, at *4 (N.D. Iowa Dec. 27, 2006). "A balance should be struck among the most important factors in the particular case to determine whether transfer is appropriate." *In re U.S.*, 273 F.3d at 388. While the burden is on a defendant to show that transfer is warranted, "the defendant is not required to show 'truly compelling circumstances for…change….[of venue, but rather that] all relevant things considered, the case would be better off transferred to another district.'" *Id.* (quoting *Matter of Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995)).

The great weight of these factors favors transfer of this case because, all things considered, the case would be better off transferred to the United States District Court for the Northern District of Texas.

4

A.  Location of Defendant

Haning is a lifelong resident of Texas. At the time of the conduct alleged in the indictment, Haning worked for Wilbur-Ellis at a facility located in Rosser, Texas, a town located approximately 40 miles from Dallas. That Haning had never even set foot within the Eastern District of Missouri prior to the initiation of the investigation of this case speaks volumes to the fact that the Northern District of Texas, not the Eastern District of Missouri, is a more appropriate venue.

B.  Location of Witnesses

Most of the witnesses whose testimony will be necessary at any future trial are located in Texas. For example, the employees of the Rosser, Texas facility will likely be necessary witnesses and most, if not all, of those employees reside in Texas. Moreover, the indictment discusses at length certain investigations that were allegedly undertaken by the Texas Feed and Fertilizer Control Service and the Office of Texas State Chemist. (*See* Doc. 1 at ¶¶ 20-34). On information and belief, necessary witnesses of these Texas State organizations continue to reside in Texas. Additionally, the indictment contends Custom AG Commodities was involved in the actions alleged in this case. (*Id.* at ¶ 10). That company and any employees thereof are believed to continue to reside in Texas.

While certain necessary witnesses will likely be found in places outside Texas, it is unclear how many, if any, reside in Missouri. Indeed, in the indictment, the only entity involved in the allegations that is located in the Eastern District of Missouri is Diversified Ingredients. (Doc. 1 at ¶ 8). Review of the indictment does not reveal any other entity whose employees might possibly reside in the Eastern District of Missouri. Indeed, of the states involved in this matter, Missouri appears to be home to the fewest potential witnesses. Because the majority of witnesses whose

5

testimony will be necessary at any future trial reside in Texas and in other states besides Missouri, this factor powerfully favors transfer to the Northern District of Texas.

        C.      Location of Events at Issue

All the allegedly criminal conduct in this case stems from Texas. The facility that allegedly adulterated, mislabeled, and misbranded protein products is located in Rosser, Texas. While some of these products allegedly left the State of Texas, it is not even alleged that any of these products were actually delivered to any location in the Eastern District of Missouri. At best, even taking the Government's allegations as true, certain shipments were transported through the Eastern District of Missouri. (Doc. 1 at ¶¶ 15 and 74).

Although Diversified Ingredients is located in Missouri, the role that company allegedly performed in this matter was that of a broker and distributor. (Doc. 1 at ¶ 8). In other words, it does not appear that Diversified Ingredients was an end recipient of any shipments at issue in this case.

Because the location of the events at issue in this case occurred by and large in Texas and in places outside the Eastern District of Missouri, this factor favors transfer to the Northern District of Texas.

        D.      Location of Documents and Records

Relevant documents and records are located in Texas. Additionally, some documents and records are ostensibly located in California as Wilbur-Ellis' corporate headquarters is located there. On information and belief, the only documents and records relevant to this matter that are located within the Eastern District of Missouri are those located at Diversified Ingredients headquarters. Moreover, regardless of the physical location of relevant documents, most of the documents that will likely be at issue in this matter were created in Texas. As such, in order to

authenticate and explain the documents, it will likely prove necessary to adduce testimony from witnesses who continue to reside in Texas.

Because the majority of the relevant documents and records in this case are located in Texas and in places beyond the Eastern District of Missouri, this factor, too, favors transfer to the Northern District of Texas.

E.   Disruption of Defendants' Business

Haning is presently assisting as the director of marketing for his wife's business, Always Accurate Home Healthcare and Hospice, LLC. The business is located in Texas and employs approximately 25 employees. If this matter is not transferred to the Northern District of Texas, it will substantially disrupt Haning's and his family's business. Consideration of this factor lends further strength to the argument that this matter should be transferred to the Northern District of Texas.

F.   Expense to the Parties

If Haning is forced to defend against these allegations in Missouri, it will cause him significant and unnecessary expense. He and his family live in Texas. This factor also favors transfer to the Northern District of Texas.

G.   Location of Counsel

While Haning has retained undersigned counsel in this matter, he has also been forced to retain the services of three attorneys located in Fort Worth, Texas, near his home. Moreover, the entries of appearance filed by the Government indicate that the United States is represented in this matter by attorneys designated as "Special Attorney[s] to the United States Attorney General" as opposed to Assistant United States Attorneys for the Eastern District of Missouri. (Docs. 4 and

8).[1] As such, even counsel for the United States in this matter is not, at least in theory, tethered in any manner to the Eastern District of Missouri to the extent the attorneys are actually not working as Assistant United States Attorneys for the Eastern District of Missouri in this case.

This factor again favors transfer to the Northern District of Texas.

### H.    Relative Accessibility of Place of Trial

Haning resides in Texas. If required to defend against these allegations in Missouri, he will have to uproot his entire life to spend significant periods of time away from his family and will incur substantial and unnecessary expenses. The only actor allegedly involved in this matter that has ready access to the Eastern District of Missouri is Diversified Ingredients. Again, this factor favors transfer to the Northern District of Texas.

### I.    Docket Condition of Each District Involved

Courts note that, because of the provisions of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, this factor is of little import in determining the appropriateness of a transfer. *See Lopez*, 343 F. Supp. 2d at 837. As such, this factor neither favors nor disfavors transfer of this matter to the Northern District of Texas.

**III.    Conclusion**

Based on the foregoing, Haning respectfully requests that this Court grant this Motion, transferring this case to the United States District Court for the Northern District of Texas. Transfer is in the interest of justice and will make this litigation far more convenient for the parties and for the witnesses involved.

---

[1] The actual attorneys upon which this designation has been conferred were, and are, Assistant United States Attorneys in the Eastern District of Missouri. In filing this motion, Haning is in no way conceding that this change of title is sufficient to eliminate what may constitute a conflict of interest arising from the Government's staffing of this case. To the extent such a conflict of interest exists and merits further litigation, Haning will raise that issue in a separate and subsequent motion.

8

Respectfully submitted,

**Margulis Gelfand, LLC**

<u>*/s/ Arthur S. Margulis*</u>
ARTHUR S. MARGULIS, #16906MO
WILLIAM S. MARGULIS, #37625
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
art@margulisgelfand.com
bill@margulisgelfand.com
justin@margulisgelfand.com
ian@margulisgelfand.com

## **Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

*/s/ Arthur S. Margulis*