UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 4:18-CR-00139-RWS-NAB |
| | ) |
| WILLIAM DOUGLAS HANING, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR CHANGE OF VENUE

COMES NOW the United States of America, by and through, Jefferson Sessions, Attorney General for the United States, Timothy A. Garrison, United States Attorney for the Western District of Missouri, and Charles S. Birmingham and Gilbert C. Sison, Special Attorneys to the United States Attorney General, and submits the following opposition to the Defendant's Motion for Change of Venue:

### I.    INTRODUCTION

Defendant Haning was charged on February 14, 2018, with one count of conspiracy to commit mail or wire fraud in violation of 18 U.S.C. § 1349 and 30 counts of wire fraud in violation of 18 U.S.C. §1343.  The Indictment charged Defendant Haning with his involvement in a wide ranging scheme relating to the adulteration, mislabeling and misbranding of various protein ingredients produced and shipped from a facility in Rosser, Texas, that were used in the production of pet food.  The facility was owned by Wilbur-Ellis ("WE"), a corporation headquartered in California, and Defendant Haning was an employee of WE who worked at the Rosser facility.  Also relevant is the fact that Diversified Ingredients ("DI"), as the broker and

1

distributor located in the Eastern District of Missouri, arranged for the shipment of various protein ingredients from the Rosser facility to pet food manufacturers – the arrangement of which was effectuated through the use of emails to and from the Eastern District of Missouri between DI, WE and the Rosser facility.

Defendant Haning now seeks to transfer this case to the Northern District of Texas (where he is a resident) pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure. Specifically, he argues that the vast majority of the actions alleged in the Indictment occurred in Texas, and as such, most of the witnesses and documentation that will be needed to litigate the case are located in Texas. Defendant Haning further relies on the factors outlined in *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240 (1964) to argue that the case should be transferred to the Northern District of Texas.

Defendant Haning, however, is wrong on both points. The indictment alleges that Defendant Haning was involved in a conspiracy, and actions related to that conspiracy clearly occurred in the Eastern District of Missouri. For example, invoices, shipping schedules, contracts and purchase orders were sent to and from this district. (Doc. 2, ¶73). Payments were also wired and mailed from this district. (Doc. 2, ¶72). Furthermore, the shipment of various protein ingredients repeatedly travelled through the district. (Doc. 2, ¶74). Moreover, each wire fraud count (Counts 2 through 31) involved a wire communication to and from the Eastern District of Missouri. (Doc. 2, ¶83). As such, venue is properly established in the Eastern District of Missouri. Furthermore, the balancing of the *Platt* factors do not warrant a transfer to the Northern District of Texas. For these and the foregoing reasons stated below, Defendant Haning's motion for a change of venue should be denied.

## II. ARGUMENT

### A. VENUE IS PROPERLY ESTABLISHED IN THE EASTERN DISTRICT OF MISSOURI BECAUSE ACTS RELATED TO THE CONSPIRACY AND THE CONTINUING OFFENSES ALLEGED IN THE INDICTMENT WERE COMMITTED IN THIS DISTRICT.

In his motion for change of venue, Defendant Haning argues that he has never set foot within the Eastern District of Missouri. (Doc. 18, p. 2). He further argues that the Indictment alleges minimal conduct which occurred in the Eastern District of Missouri, but notes that much of the alleged conduct involves persons and entities located within Texas. (Doc. 18, p. 2). While the Government disputes Defendant Haning's characterization of the Indictment, even assuming that it is true, it does not serve as a legitimate basis to transfer the proceedings to the Northern District of Texas. The number of indictable acts committed in the trial forum as compared to indictable acts committed elsewhere is not a relevant factor in considering motions for transfer. *See United States v. Luros*, 243 F. Supp. 160, 177 (N.D. Iowa). This is because nothing in the law suggests that a court should favor holding a trial near the defendant's residence and business simply because it is near that situs, as opposed to where his crimes had their impact.

Indeed, it is well settled that venue as to prosecution of all members of a conspiracy lies either in the jurisdiction in which the conspiratorial agreement was formed or in any jurisdiction in which an overt act in furtherance of the conspiracy was committed. Section 3237 provides as follows:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a). *See also United States v. Hull*, 419 F.3d 762, 768 (8th Cir. 2005), *cert. denied,* 547 U.S. 1140 (2006)(stating that "[i]n a conspiracy case, venue is proper in any district in which any act in furtherance of the conspiracy was committed by any of the conspirators even

3

though some of them were never physically present there."); *United States v. Kim,* 246 F.3d 186, 193 n.5 (2nd Cir. 2001)(noting that venue is proper in a conspiracy prosecution in any district in which an overt act was committed by any of the coconspirators). Moreover, the next paragraph specifically provides that any offense "involving the use of the mails, [or] transportation in interstate or foreign commerce . . . is a continuing offense and . . . may be inquired of and ***prosecuted in any district from, through, or into which such commerce***, mail matter, or imported object or person moves." 18 U.S.C. § 3237(a) (emphasis added).

Here, many acts in furtherance of the conspiracy took place within the Eastern District of Missouri. The scheme, for example, involved brokers and distributors, specifically DI, which is a Missouri corporation located in the Eastern District of Missouri. In addition to DI being headquartered in Missouri, Defendant Haning correctly notes that certain checks and bills of lading were mailed within this district. (Doc. 2, ¶¶7, 15). The bills of lading, for example, played a critical role in concealing the scheme as Defendant Haning and others used these shipping documents knowing that the use of the documents would misrepresent what was actually being shipped from the Rosser facility. (Doc. 2, ¶¶66-67). The bills of lading used in shipping were provided by DI. *Id.*

Defendant Haning also correctly notes that emails were sent to and from this district. (Doc. 2, ¶73). Defendant Haning and others transmitted and caused to be transmitted these emails in furtherance of the scheme to defraud. For example, the emails included and/or pertained to contracts, purchase orders and agreements for adulterated, misbranded and/or mislabeled products shipped from the Rosser facility. (Doc. 2, ¶73). The emails also included and/or pertained to bills of lading and certificates of analysis which misrepresented the products being shipped from the Rosser facility. (Doc. 2, ¶¶66-67, 73). Finally, all of the wire fraud

4

counts alleged in the Indictment involve wire communications to and from the Eastern District of Missouri. (Doc. 2, ¶83). The wire communications underlying these counts involved emails relating to bills of lading, certificates of analysis, invoices, shipping schedules, weights and estimated times of arrival for various shipments. *Id.*

Finally, Defendant Haning acknowledges that specific shipments were transported through the Eastern District of Missouri. (Doc. 2, ¶74). Defendant Haning and others shipped or caused to be shipped adulterated, misbranded and/or mislabeled protein ingredients into the stream of commerce. For example, on March 21, 2014, a shipment of more than 50,000 pounds of mislabeled and adulterated chicken meal (low ash) was sent from the Rosser facility and transported through the Eastern District of Missouri. (Doc. 2, ¶74). Similarly, on April 4, 2014, another shipment of more than 50,000 pounds of mislabeled and adulterated chicken meal (low ash) was sent from the Rosser facility and transported through this district. *Id.*

Based on the above, the allegations in the Indictment make clear that venue is properly situated in the Eastern District of Missouri pursuant to both paragraphs of Section 3237(a).

### B. THE BALANCING OF THE RELEVANT *PLATT* FACTORS DO NOT WARRANT A TRANSFER OF VENUE TO THE NORTHERN DISTRICT OF TEXAS.

#### 1. Legal standards and burdens.

Rule 21 of the Federal Rules of Criminal Procedure addresses the transfer of criminal matters between districts for purposes of trial. Rule 21(b) concerns transfers for convenience (as opposed to transfers due to prejudice under Rule 21(a)). Rule 21(b) reads as follows:

> Upon the defendant's motion, the court may transfer the proceeding, or one or more counts against the defendant to another district for the convenience of the parties, any victim and witnesses, and in the interests of justice.

Fed. R. Crim. Proc. 21(b). The decision whether to grant or deny a Rule 21(b) motion rests with the sound discretion of the district court. *See United States v. Green*, 983 F.2d 100, 103 (8th Cir.

1992); *United States v. McGregor,* 503 F.2d 1167, 1169 (8th Cir.1974); *United States v. Phillips,* 433 F.2d 1364, 1368 (8th Cir.1970). The defendant bears the burden of showing that the matter should be transferred. *See United States v. Kanner,* No. 07-CR-1023-LRR, 2008 WL 2663414 at *5 (N.D. Iowa June 27, 2008)(citing cases). *See also United States v. Estrada,* 880 F.Supp.2d 478,482 (S.D.N.Y.2012)(stating that "[c]ourts in this district have uniformly placed the burden on the defendant to show that the interests of justice require transfer.").

    2.    **The *Platt* factors.**

In considering Rule 21(b) motions, the Eighth Circuit applies the ten factors found in *Platt v. Minnesota Min. & Mfg. Co.*, 376 U.S. 240 (1964) ("*Platt* factors"). *See, e.g., United States v. McGregor,* 503 F.2d 1167, 1170 (8th Cir. 1974); *Lopez,* 343 F. Supp. 2d at 835. The ten *Platt* factors are: (1) the location of the defendant; (2) the location of the witnesses; (3) the location of the events in issue; (4) the location of the documents and records likely to be used at trial; (5) any disruption of a defendant's business; (6) the expense to the parties; (7) the location of counsel; (8) the accessibility of the place of trial; (9) the docket condition of the respective districts; (10) any other considerations that might affect transfer. *See Lopez,* 343 F. Supp.2d at 835 (enumerating *Platt* factors); *see also Kanner,* 2008 WL 2663414 at *6-8. The Court must balance these factors and assess which factors are of most importance in the case; no single factor is dispositive. *See Kanner,* 2008 WL 2663414 at *5 (*citing United States v. Maldonado-Rivera,* 922 F.2d 934, 966 (2nd Cir. 1990)); *United States v. Valenciano,* No. CR06-4082MWB, 2006 WL 4046179 at *4 (N.D. Iowa 2006)(same).

Prior to analyzing the *Platt* factors, it must be recognized that every litigation, particularly a criminal prosecution, imposes burdens upon a defendant. As such, it is naturally expected that there will be disruption and dislocation to a defendant's normal occupational and

6

personal activities. The burdens imposed and inconvenience suffered vary from case to case and from defendant to defendant. With respect to this case, it is no different from any other. No matter where this trial is conducted, there will be inconvenience to the parties, their executives, their counsel and their witnesses. But mere inconvenience, interference with one's routine occupational and personal activities, and other incidental burdens which normally follow when one is called upon to resist a serious charge do not ipso facto make the necessary showing that a transfer is required in the interest of justice.

As a general rule a criminal prosecution should be retained in the original district. *See United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997). To warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome; and, necessarily, any such determination must take into account any countervailing considerations which may militate against removal. *See United States v. Culoso,* 461 F. Supp. 128, 136–137 (S.D.N.Y. 1978), *aff'd,* 607 F.2d 999 (2nd Cir. 1979). Indeed, a defendant must demonstrate a substantial balance of inconvenience to himself if he is to nullify the prosecuting attorney's proper choice of venue. *See United States v. Luros*, 241 F. Supp. 160, 174-177 (N.D. Iowa).

Here, Defendant Haning analyzes the various *Platt* factors and concludes that the great weight of the factors favors a transfer to the Northern District of Texas. The Government, however, disagrees and responds to each of the factors identified by Defendant Haning as follows:

### a. Location of Defendant

Defendant Haning argues that the Northern District of Texas is the more appropriate venue because he is a lifelong resident of Texas and that much of the conduct alleged in the Indictment occurred at WE's facility in Rosser, Texas. The Indictment, however, alleges a wide-ranging conspiracy involving the Defendant and others. And, while at the moment, Defendant Haning is the only defendant charged, the Government anticipates that a superseding indictment may be filed that could include other individuals and entities. Presently, other entities and individuals are charged in a related matter pending in this district, some of which are located within the Eastern District of Missouri.

### b. Location of Witnesses

Defendant Haning argues that most of the witnesses for this matter are located in Texas. Defendant Haning points to possible witnesses such as employees of the Rosser facility, as well as members of the Office of the Texas State Chemist who investigated the Rosser facility. While Defendant Haning correctly points out that these are potential witnesses, they are not the only witnesses, nor do they represent the majority of potential witnesses. For example, none of the pet food manufacturers identified in the Indictment are located in Texas. Pet Food Manufacturer A is located in Indiana. (Doc. 2, ¶11). Pet Food Manufacturer B is located in Connecticut. (Doc. 2, ¶12). Pet Food Manufacturers B-1 through B-3 are located in Kansas. *Id.* Pet Food Manufacturer B-4 is located in Pennsylvania. *Id.* And, Pet Food Manufacturers B-5 and B-6 are located in Minnesota. *Id.* Moreover, DI and its employees are located in the Eastern District of Missouri. Finally, agents from the Federal Bureau of Investigation ("FBI"), the United States Postal Inspection Service ("USPIS") and the United States Food and Drug Administration

8

("USFDA") will be witnesses at any future trial, and they are all located in this district. This factor does not weigh in favor of a transfer.

### c. Location of Events at Issue

Defendant Haning argues that the events at issue occurred mostly in Texas because the facility that adulterated, mislabeled and misbranded protein ingredients is located in Rosser, Texas. However, the Indictment alleges the actions of various individuals, which took place in multiple jurisdictions, including the Eastern District of Missouri. For example, Defendant Haning seeks to downplay the role of the broker and distributor located within this district. The sending and receipt of emails by individuals located in the Eastern District of Missouri (specifically at DI) is an event significant to the Government's case. Of course, the payments originating from this district for adulterated products is equally significant. In addition, the documents used in the mislabeling and misbranding, *i.e.*, Bills of Lading and Certificates of Analysis, often originated in the Eastern District of Missouri. This factor likewise does not warrant a transfer.

### d. Location of Documents and Records

Defendant Haning argues that the relevant documents and records are located in Texas. While that is true, Defendant Haning also correctly notes that certain records and documents are located at WE's corporate headquarters in California. Relevant documents are also located at DI, which is located within this district. In fact, relevant documents and records are located all over the country. That being said, the Government has compiled relevant documents and records from a number of sources. And, the Government, as part of its discovery obligations, intends to provide that discovery to Defendant Haning. Thus, there is no need to transfer this case to the

Northern District of Texas simply because some relevant documents and records are located in Texas.

   e.  **Disruption of Defendant's Business**

Defendant Haning argues that he is presently assisting as the director of marketing for his wife's business, which is a home healthcare and hospice business with approximately 25 employees. Defendant further notes that this business will be substantially disrupted if the case is not moved to the Northern District of Texas. However, the discovery in this case is quite voluminous, and a trial in this matter will probably not take place for some time. This should give Defendant Haning and his family sufficient time to accommodate his absence if he should proceed to trial. Defendant Haning has not identified anything outside of the typical burdens associated with defending a criminal case that would justify a transfer of this matter.

   f.  **Expense to Parties**

Defendant Haning argues that a trial in this district will cause him significant and unnecessary expense. However, "it is not the size of the additional expense but the defendant's ability to bear that expense that is the relevant consideration in questions of transfer. *See Luros*, 243 F. Supp. at 175 (*citing United States v. White*, 95 F. Supp. 544 (D. Neb. 1951)). Here, Defendant Haning has not identified any inability in bearing such an expense. In fact, Defendant Haning noted that he has hired the services of multiple counsel in the Fort Worth area. That being said, none of Defendant Haning's attorneys in Texas have entered their appearance in this case.

   g.  **Location of Counsel**

Defendant Haning argues that because of this case he has been forced to retain the services of three attorneys located in Fort Worth, Texas. Defendant Haning further notes that the

current prosecutors are designated as "Special Attorneys to the United States Attorney General" and therefore may not be tied to the Eastern District of Missouri. Specifically, three prosecutors from the Eastern District of Missouri have been so designated, and even though said prosecutors are not supervised by the Eastern District of Missouri, they nonetheless reside within the district. This represents a countervailing consideration which also counsels against transfer.

### h.   Relative Accessibility of Place of Trial

Defendant Haning argues that if he is required to defend the trial in the Eastern District of Missouri, he will have to uproot his entire life and spend significant periods of time away from his family and business and incur substantial and unnecessary expenses. However, this factor relates to the accessibility of the place of trial, rather than expense which is covered in another factor. The Eastern District of Missouri is easily accessible by air, especially from a major city such as Dallas, Texas. Because Dallas, Texas, serves as a major airport hub, it is relatively easy to find non-stop flights to and from the Eastern District of Missouri. Defendant Haning has not identified any specific problems with the accessibility of the Eastern District of Missouri, and as such, this factor does not weigh in favor of transfer.

### i.   Docket Condition of Each District Involved

Defendant Haning acknowledges that this factor neither favors nor disfavors transfer to the Northern District of Texas, and the Government concurs.

### j.   Any other considerations which might affect transfer

Defendant Haning has not raised any other considerations which might affect transfer. However, the Government notes that there is already a related case pending in the Eastern District of Missouri. The matter is styled as *United States v. Henry Rychlik, et al.*, No. 4:17-CR-00100-NAB. This case has charged the corporate entities identified in the current Indictment

11


(WE and DI), as well as individuals employed by said entities, with introducing adulterated and/or misbranded food into interstate commerce in violation of Title 21, United States Code, Sections 331(a) and 333(a)(1). Additionally, a related civil case styled as T*he Blue Buffalo Company, Ltd. v. Wilbur-Ellis Company LLC, et al.*, No. 4:14-CV-00859-RWS, is pending in this district. Some of the entities identified in the Indictment, *i.e.*, WE, DI and Custom Ag, are parties in this civil case.

### III. CONCLUSION

To summarize, none of the *Platt* factors weigh in favor of transfer. Defendant Haning has not shown that the interests of justice require deviation from the "general rule" that "a criminal prosecution should be retained in the original district." *United States v. Estrada,* 880 F.Supp.2d 478, 485 (S.D.N.Y.2012). It would not be in the interest of judicial economy to burden another court with the trial of this case, or even with the trial of just Defendant Haning by himself. As such, this Court should decline to exercise its discretion to transfer this case to the Northern District of Texas.

Dated:  March 21, 2018.

                Respectfully submitted,

                JEFFERSON SESSIONS
                United States Attorney General
                TIMOTHY GARRISON
                United States Attorney
                WESTERN DISTRICT OF MISSOURI


                */s/Gilbert C. Sison*
                CHARLES S. BIRMINGHAM, #47134MO
                GILBERT C. SISON, #52346MO
                Special Attorneys to the United States Attorney General
                Assistant United States Attorney
                111 South 10th Street, Room 20.333
                St. Louis, Missouri 63102
                (314) 539-2200

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was distributed through the Court's CM/ECF system on March 21, 2018, to the following attorneys of record:

Arthur S. Margulis – art@margulisgelfand.com

William S. Margulis – bill@margulisgelfand.com

Justin K. Gelfand – justin@margulisgelfand.com

Ian T. Murphy – ian@margulisgelfand.com

***Attorneys for Defendant, William Douglas Haning***

/s/Gilbert C. Sison