UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:18-CR-00139-RWS-NAB |
| WILLIAM DOUGLAS HANING, | ) ) ) |
| Defendant. | ) |

**MOTION TO DISMISS INDICTMENT, OR IN THE ALTERNATIVE,
TO DISQUALIFY PROSECUTION TEAM**

Defendant William Douglas Haning ("Haning"), by and through his counsel, Justin K. Gelfand, William S. Margulis, Arthur S. Margulis, and Ian T. Murphy and the law firm of Margulis Gelfand, LLC, respectfully moves this Court to dismiss the indictment or, in the alternative, to disqualify Assistant United States Attorneys Charles Birmingham, Gilbert Sison, and Kyle Bateman (hereinafter, the "Prosecution Team").

*Introduction*

This motion arises because this case is being prosecuted by three attorneys purportedly acting in their capacities as "Special Attorney[s] to the United States Attorney General." (Doc. 1). Each of these attorneys is a full-time Assistant United States Attorney (AUSA) in the Eastern District of Missouri. However, because the U.S. Attorney's Office in the Eastern District of Missouri is recused from this case, the Department of Justice has attempted to circumvent the recusal by giving three AUSA's the title "Special Attorney to the United States Attorney General" for the limited purpose of this prosecution. As such, these prosecutors are purportedly handling this case not in their capacities as AUSA's for an office that is recused, but as "special attorneys"

appointed by the United States Attorney General and removable only by the United States Attorney General.[1]

This raises serious problems. The first—a problem of a constitutional magnitude—is that the current Acting Attorney General has been appointed in violation of the Appointments Clause of the Constitution. The second—a problem that exists separate and apart from the Appointments Clause—is that conferring a new title on AUSA's who remain AUSA's in the U.S. Attorney's Office which is recused from the case does not somehow make the conflict of interest requiring recusal in the first place disappear.

Under the Appointments Clause, no person may assume the power of a principal officer of the United States unless that person has been appointed to that office by the President with the advice and consent of the Senate. U.S. Const. art. II, § 2. On November 7, 2018, President Trump installed Matthew Whitaker ("Whitaker") as Acting Attorney General. However, because he was not appointed to that office by the President with the advice and consent of the Senate, Whitaker holds that authority improperly and in direct contravention of the Appointments Clause.

This is particularly important in this case because the statutory authority to appoint "special attorneys" vests the "Attorney General" with the authority to "appoint attorneys to assist United States Attorneys when the public interest so requires." 28 U.S.C. § 543. However, each attorney appointed as a special attorney "is subject to removal" only "by the Attorney General." *Id*. As such, the members of the Prosecution Team—if they really are to be deemed "special attorneys" instead of AUSA's—cannot be removed from their position other than by the Attorney General, but the Acting Attorney General is currently holding that office in violation of the Appointments

---

[1] The indictment (Doc. 1) and certain pleadings also contain the name of Timothy Garrison, United States Attorney for the Western District of Missouri. U.S. Attorney Garrison has not signed any pleading, has not appeared in court on this case, and has had no contact with the defense. Furthermore, the members of the Prosecution Team have not represented themselves to be Special Assistant United States Attorneys for the Western District of Missouri.

2

Clause. Complicating matters further for the Government, federal law requires that the "Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543…in the discharge of their respective duties." 28 U.S.C. § 519. And the litigation of all cases in which the United States is a party "is reserved to officers of the Department of Justice, under the direction of the Attorney General" in the absence of a statute creating an exception. 28 U.S.C. § 516.

Thus, as it stands, this case is being prosecuted by "Special Attorney[s] to the United States Attorney General" under a statutory framework in which the Attorney General is required to "supervise all litigation" and "direct all United States attorneys, assistant United States attorneys, and special attorneys." Doc. 1; 28 U.S.C. §§ 516, 519. But where the Acting Attorney General has been appointed in violation of the Appointments Clause, he lacks the authority to prosecute this case. As such, it naturally follows that the special attorneys purportedly working under his supervision and direction also lack the authority to prosecute this case. This case should, therefore, be dismissed. At a minimum, and in the alternative, the Prosecution Team should be disqualified from further prosecution of this case.

*Relevant Background*

Since October 6, 2017, Jeffrey Jensen ("Jensen") has served as the United States Attorney for the Eastern District of Missouri. Each member of the Prosecution Team is presently employed as a full-time Assistant United States Attorney in the Eastern District of Missouri. Jensen and the Office of the United States Attorney for the Eastern District of Missouri are recused from this case. The genesis of the recusal is that, prior to assuming the role of United States Attorney, Jensen represented Haning and Wilbur-Ellis, Haning's former employer and a witness in this case.

On February 14, 2018, Haning was charged in an indictment with thirty-one counts. (Doc. 1). Count one charges a conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and Counts two through thirty-one each charge wire fraud in violation of 18 U.S.C. § 1343. (*Id.*). Haning has pled not guilty to every count and intends to proceed to trial. In pleadings filed throughout this litigation, the prosecutors have identified themselves both as "Special Attorney[s] to the United States Attorney General" (for instance, in the indictment, Doc. 1) and as "Assistant United States Attorney[s]" (for instance, in the Government's response to Haning's motion to transfer venue, Doc. 26).

Throughout the pendency of this case, the Government has simultaneously maintained that the U.S. Attorney's Office remains recused from this case and that AUSA's Birmingham, Sison, and Bateman are acting in their capacities as "special attorneys to the United States Attorney General."

### I. Because Whitaker Was Installed as Acting Attorney General in Violation of the Appointments Clause, This Prosecution Should Not Proceed Under His Supervision and Direction

#### A. *The Attorney General Must Be Appointed by the President with the Advice and Consent of the Senate*

Article II, Section 2 of the Constitution provides:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President along, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2.

The appointment of Executive branch officers, therefore, falls into two categories: principal and inferior. Principal officers—such as the Attorney General of the United States—require a nomination by the President and confirmation by the Senate. *Id.*

"The Senate's advice and consent power is a critical structural safeguard of the constitutional scheme." *N.L.R.B. v. SW General, Inc.*, 137 S.Ct. 929, 935 (2017) (internal quotations and citations omitted). The appointment of principal officers "raises grave constitutional concerns because the Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate." *Id.* (Thomas, J., concurring). This process is "more than a matter of etiquette or protocol; it is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997). "[T]he Clause bespeaks a principle of limitation by dividing the power to appoint the principal federal officers…between the Executive and Legislative Branches." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 884 (1991). For this reason, the Supreme Court has expressly recognized that the "structural principles embodied in the Appointments Clause do not speak only, or even primarily, of Executive prerogatives." *Id.* at 880. Rather, the Appointments Clause protects the interests "of the entire Republic." *Id.*

The Attorney General of the United States is unquestionably a principal officer. Appointment, therefore, requires nomination by the President and confirmation by the Senate.

> B. *Whitaker Was Not Appointed by the President with the Advice and Consent of the Senate*

On November 7, 2018, President Trump installed Whitaker—who, until then, was the Chief of Staff to Attorney General Jefferson Sessions—as the Acting Attorney General of the United States. This occurred after President Trump effectively forced the resignation of Attorney

General Jefferson Sessions. Whitaker was not confirmed by the Senate to serve in his role as chief of staff.

This Court may take judicial notice of these facts. Fed. R. Evid. 201. Or this Court may hold an evidentiary hearing at which these facts will be proven.

### C.  The Installation of Whitaker as Acting Attorney General Was Unconstitutional

In 2017, the Supreme Court considered whether the appointment of the general counsel of the National Labor Relations Board without Senate confirmation was legal. *N.L.R.B.*, 137 S.Ct. at 943-944. The Supreme Court held the appointment unlawful on statutory grounds—*i.e.* because it violated the Federal Vacancies Reform Act of 1998 (FVRA). *Id*. at 934, 943-944. Justice Thomas agreed with the majority's holding, but wrote a concurring opinion in which he emphasized that, even if the appointment were consistent with the FVRA, the Constitution's Appointments Clause nevertheless would have prohibited the appointment. *Id.* at 948 (Thomas, J., concurring). "The Clause," he explained, "like all of the Constitution's structural provisions, is designed first and foremost not to look after the interests of the respective branches, but to protect individual liberty." *Id*. at 949. As Justice Thomas foreshadowed, federal courts "inevitably will be called upon to determine whether the Constitution permits the appointment of principal officers pursuant to the FVRA without Senate confirmation." *Id*. This motion raises this precise question.

Because Trump's installation of Whitaker as Acting Attorney General was done without the advice and consent of the Senate, Whitaker holds the authority of Attorney General improperly and in direct contravention of a Constitutional provision which the Supreme Court has determined "is among the significant structural safeguards of the constitutional scheme" and which "is designed first and foremost…to protect liberty." *Edmond*, 520 U.S. at 659; *N.L.R.B.*, 137 S.Ct. at 949 (Thomas, J., concurring).

### *D. Federal Law Requires that this Prosecution Proceed Under the Attorney General's Supervision and Direction*

In the absence of a statute to the contrary (there is none), "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefore, is reserved to officers of the Department of Justice, *under the direction of the Attorney General.*" 28 U.S.C. 516 (emphasis added). Similarly, "*the Attorney General shall supervise* all litigation to which the United States, an agency, or officer thereof is a party, *and shall direct* all United States attorneys, assistant United States attorneys, and special attorneys appointed under [28 U.S.C. § 543] in the discharge of their respective duties." 28 U.S.C. § 519 (emphasis added). Furthermore, the "*Attorney General may appoint* attorneys to assist United States attorneys when the public interest so requires" *and* "[e]ach attorney appointed under this section *is subject to removal by the Attorney General.*" 28 U.S.C. § 543 (emphasis added). Collectively, these statutes singularly and unavoidably task the Attorney General with the responsibility to supervise litigation involving the United States, to direct special attorneys in the discharge of their respective duties, and to appoint special attorneys subject to removal only by the Attorney General himself.

Indeed, the Department of Justice's Office of Legal Counsel has repeatedly recognized the importance of the Attorney General in these statutory functions. *See* John Harmon, Litigating Authority of the Office of Federal Inspector, Alaska Natural Gas Transportation System, 4B U.S. Op. Off. Legal Counsel 820, 1980 WL 20994 (1980) ("Section 519 in terms imposes *a mandatory duty on the Attorney General to supervise all litigation* involving the United States, except as otherwise authorized by law") (emphasis added); *see also Theodore Olson*, The Attorney General's Role as Chief Litigator for the United States, 6 U.S. Op. Off. Legal Counsel 47, 54, 59, 1982 WL 170670 (1982) ("While the Attorney General may delegate some litigating authority…,

7

*he may not delegate the ultimate responsibility which is by law vested exclusively in the Attorney General*") (emphasis added).

No statute exempts the Haning prosecution from this statutory scheme. In fact, this case appears to fall squarely within this statutory framework as each member of the Prosecution Team is purportedly acting in his capacity as a "Special Attorney to the United States Attorney General." (Doc. 1). To the extent that is actually true, each member of the Prosecution Team is therefore acting exclusively within the confines of a statutory scheme in which the Attorney General is singularly required to "supervise all litigation" and "direct all United States attorneys, assistant United States attorneys, and special attorneys." Doc. 1; 28 U.S.C. §§ 516, 519. This framework raises serious, unprecedented constitutional problems.

As he was installed as Acting Attorney General in violation of the Appointments Clause, Whitaker lacks the power to prosecute this case—much less to supervise it, direct it, or to remove special attorneys. Taken to its logical extreme, this means that the Prosecution Team is subject to removal only by a person improperly holding a position in contravention of a constitutional provision that speaks directly to who can hold that position.

In the rare but important instances in which the Supreme Court has found a violation of the Appointments Clause, the Court has rejected the notion that individuals should nevertheless remain subject to the actions of those acting without power. *See, e.g., Ryder v. United States*, 515 U.S. 177, 181-184 (1995) (invalidating actions by individuals given authority in violation of the Appointments Clause). As former Acting Solicitor General Neal Katyal (who has argued 37 cases before the Supreme Court) and George Conway, III explained last week in a *New York Times* op-ed, the installation of Whitaker as Acting Attorney General is, in their view, "illegal" and "it means that anything Mr. Whitaker does, or tries to do, in that position is invalid." Neal Katyal and George

8

Conway, III, "Trump's Appointment of the Acting Attorney General is Unconstitutional," *New York Times* (Nov. 8, 2018). Because Whitaker does not have the authority to prosecute this case, special attorneys working expressly under his supervision and direction must therefore also lack the authority to prosecute this case. And the fact that the Attorney General is the only person under federal law who has the power to remove them as special attorneys muddies the statutory and constitutional waters even more.

> E.  Because the Exercise of Power by Whitaker and His "Special Attorneys" Violates the Constitution, the Indictment Must be Dismissed

Where, as here, the Appointments Clause is violated, the law requires the immediate cessation of any further exercise of power improperly conferred. *Ryder*, 515 U.S. at 181-183; *United States v. Providence Journal Co.*, 485 U.S. 693 (1988) (dismissing case for lack of jurisdiction because special prosecutor lacked the statutory authority to represent the United States in a petition for a writ of certiorari); *Landry v. Fed. Deposit Ins. Corp.*, 204 F.3d 1125, 1130-32 (D.C. Cir. 2000) (violation of Appointments Clause constitutes structural error); *N.L.R.B.*, 137 S.Ct. at 935 (reaffirming that Appointments Clause is a "structural safeguard") (internal citations omitted). As this case progresses, the Prosecution Team is continuing to collect evidence, make prosecutorial decisions, decide whether to confer immunity on witnesses, make charging decisions, make plea determinations, and the list goes on. If, indeed, these actions are being supervised and directed by an Acting Attorney General installed in violation of the Appointments Clause and/or by "special attorneys to the Attorney General" acting on his behalf, this violates Haning's constitutional rights. Structural error is "subject to automatic reversal" in the event of a conviction. *Neder v. United States*, 527 U.S. 1, 8 (1999).

As such, this Court should dismiss this case and, in doing so, prevent further invalid action by the Acting Attorney General and the "special attorney[s]" working under him.

## II. In the Alternative, this Court Should Disqualify the Prosecutors

This Court should dismiss this case as no remedy short of dismissal would address the violation of Haning's rights. However, if this Court denies Haning's motion to dismiss, this Court should—at a minimum—disqualify the Prosecution Team because each member is a full-time AUSA in a U.S. Attorney's Office which is recused from this prosecution.

"The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (internal citations omitted). But it is not unprecedented and this case presents a unique and troubling set of circumstances. Federal courts have recognized circumstances where disqualification is not only appropriate, but necessary. *Id.* (citing *Young v. United States*, 481 U.S. 787, 807 (1987)) (finding an actual conflict of interest when prosecutor represented another party benefiting from case); *United States v. Heldt,* 668 F.2d 1238, 1275 (D.C. Cir. 1981) (bona fide allegations of bad faith performance of official duties by government counsel in a civil case); *United States v. Prantil,* 764 F.2d 548, 552-53 (9th Cir. 1985) (prosecutor who will act as a witness at trial).

To be clear, Haning is seeking to disqualify the Prosecution Team because, if the U.S. Attorney's Office is recused as it purports to be, there is no compelling reason why these particular AUSA's should be permitted to continue prosecuting this case.

### A. The Government Has Already Purportedly Recused the U.S. Attorney's Office for the Eastern District of Missouri

This is an unusual case in the context of cases in which defendants have sought to disqualify Assistant United States Attorneys and/or the entire United States Attorney's Office. That is because, in this case, the Government has already acknowledged the need to recuse the United States Attorney. At least on paper, this case is being handled by "Special Attorneys to the United

States Attorney General" under the purported supervision of the Acting Attorney General of the United States: Whitaker.

The reason for the recusal is that, prior to taking over as United States Attorney, Jensen represented Haning at one point and also represented a key witness in this case: Wilbur Ellis, a former target of this investigation and now a witness. As a practical matter, the Department of Justice appropriately recused the U.S. Attorney's Office, but in an unusual attempt to permit some AUSA's in the same district to continue prosecuting the case, the Department of Justice attempted to create an end run by giving them a different title—"Special Attorneys to the United States Attorney General"—for the limited purpose of this prosecution.

But a new title solely for purposes of this case does not somehow change the fact that each member of the Prosecution Team remains an AUSA in the U.S. Attorney's Office which is recused, each is compensated as an AUSA, each is eligible for promotion within the U.S. Attorney's Office at the discretion of the U.S. Attorney, and each is simultaneously an AUSA in every other capacity of his professional life—except for this case. During the pendency of this case, these AUSA's have regularly appeared in federal court in their capacities as AUSA's in this district—and they continue to do so. Signing pleadings using a different title for purposes of this case should not be all that is required to fall outside of an office-wide recusal.

### B. *The Government is Handling this Conflict Differently from Others*

It is not uncommon for the Government to prosecute cases under an Acting United States Attorney. In fact, there is precedent in this district.[2] *See, e.g., United States v. Beckham* (4:16-CR-00300-RLW). However, in those instances, the U.S. Attorney is recused but the remaining supervisory infrastructure of the office remains intact and another attorney effectively steps in as

---

[2] This motion is not intended to, and does not, address the constitutionality of the appointment of an individual within the United States Attorney's Office as an Acting United States Attorney, as that is not ripe for litigation in this case.

11

Acting U.S. Attorney for the purpose of that case. Thereafter, the line prosecutors remain supervised by supervisors within their office and there is no question that the case is being handled by the U.S. Attorney's Office in this district but not by the U.S. Attorney himself.

Similarly, there is precedent for the Government's recusal of an entire U.S. Attorney's Office and for a *separate* U.S. Attorney's Office and/or component of the Department of Justice in Washington, D.C. to step in and take over the case. *See, e.g., United States v. Thomas Carroll* (4:16-CR-148-HEA). There, the Government was represented by an AUSA from an entirely different district (the Western District of Missouri), who incidentally had the title "Special Assistant to the United States Attorney General," and by a trial attorney with the Department of Justice's Civil Rights Division in Washington, D.C. From the time of recusal, the U.S. Attorney's Office for the Eastern District of Missouri was not involved in the case and the prosecution was handled by attorneys from different components of the Department of Justice.

In this case, the Government appears to have acknowledged the need to recuse the U.S. Attorney's Office due, at least in part, to the fact that the U.S. Attorney personally represented the defendant and a witness during the investigation of this case. But instead of actually recusing the U.S. Attorney's Office in its entirety, the Government assigned this case to three AUSA's in this district, gave them a different title solely for purposes of this case, and somehow concluded that the conflict of interest requiring recusal has therefore suddenly—and magically—disappeared. The reality is it has not. No defendant should be prosecuted by his prior defense attorney or by those who serve directly under him.

### III.     Conclusion

Based on the foregoing, this Court should dismiss this case. Haning is being prosecuted by special attorneys to an Acting Attorney General who was unconstitutionally installed in violation

of the Appointments Clause. Neither he, nor they, have the power to prosecute Haning even though federal law requires that the Attorney General supervise and direct the prosecution and even though the Attorney General remains the only office holder who can remove attorneys as special attorneys. In the alternative, this Court should disqualify the Prosecution Team because conferring on them a different title for purposes of one case does not somehow change the fact that they remain AUSA's in this district.

To the extent this alternative remedy would require new Government counsel to spend time familiarizing themselves with this case, Haning has no objection to a continuance and this Court has already appropriately declared this a complex case for purposes of the Speedy Trial Act.

Respectfully submitted,

**Margulis Gelfand, LLC**

 /s/ *Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
WILLIAM S. MARGULIS, #37625
ARTHUR S. MARGULIS, #16906MO
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
bill@margulisgelfand.com
art@margulisgelfand.com
ian@margulisgelfand.com

## **Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

                                                */s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
WILLIAM S. MARGULIS, #37625
ARTHUR S. MARGULIS, #16906MO
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
bill@margulisgelfand.com
art@margulisgelfand.com
ian@margulisgelfand.com