**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **No. 4:18-CR-00139-RWS-NAB** |
| | ) |
| **WILLIAM DOUGLAS HANING,** | ) |
| | ) |
| **Defendant.** | ) |

**MOTION TO DISMISS SUPERSEDING INDICTMENT OR, IN THE ALTERNATIVE,**
**TO DISQUALIFY PROSECUTORS BIRMINGHAM, SISON, AND BATEMAN**

Defendant William Douglas Haning ("Haning"), by and through his counsel, Justin K. Gelfand, William S. Margulis, Arthur S. Margulis, and Ian T. Murphy and the law firm of Margulis Gelfand, LLC, respectfully moves this Court to dismiss the superseding indictment. (Doc. 83). In the alternative, Haning moves to disqualify Assistant United States Attorneys (AUSAs) Charles Birmingham, Gilbert Sison, and Kyle Bateman (hereinafter, the "EDMO Prosecution Team").[1]

*Introduction*

This is the second motion of this nature filed in this case. Since Haning filed his first motion and since the Government responded in opposition, the Government filed a superseding indictment. (Doc. 83). The superseding indictment does not contain the name or title of Acting

---

[1] With respect to the make-up of the prosecution team, the Government has articulated inconsistent positions in this case. In the same pleading, the Government stated Birmingham, Sison, and Bateman constituted "the entire prosecution team" (Doc. 79 at 21), but when addressing a different argument, the Government defined the prosecution team as "the United States Attorney for the Western District of Missouri, the attorneys and staff in the Western District of Missouri that work for the United States Attorney in the Western District of Missouri, and…the persons appointed as Special Attorneys" (*Id*. at 22). The superseding indictment makes no reference whatsoever to the Western District of Missouri. (Doc. 83). To be clear, if this Court determines that Acting Attorney General Matthew Whitaker was validly appointed and that he and his "special attorney[s]" have the authority to continue prosecuting this case, Haning only seeks disqualification of the three prosecutors who are full-time employees of the U.S. Attorney's Office in the Eastern District of Missouri.

Attorney General Matthew Whitaker ("Whitaker"), or the name or title of any United States Attorney; it contains only the names of the members of the EDMO Prosecution Team. (*Id.*)

This motion arises because this case is being prosecuted by three attorneys purportedly acting in their capacities as "Special Attorney[s] to the United States Attorney General." (Docs. 1 and 83). The original indictment contained the name and title of the then-Attorney General, Jefferson Sessions. (*See* Doc. 1). The superseding indictment contains only the names of the EDMO Prosecution Team, each of whom remains a full-time AUSA in the Eastern District of Missouri. (*See* Doc. 83). The Department of Justice purports to have implemented an "Office-Wide Recusal of the Eastern District of Missouri from the investigation and prosecution" of this case (and related cases) (*see* Doc. 75-1); however, the three EDMO AUSAs have been given the title "Special Attorney to the United States Attorney General" solely for purposes of this prosecution (and related cases) while maintaining their full-time employment and regular activities as AUSAs in the Eastern District of Missouri. As such, these employees of the United States Attorney's Office which is recused from this case are purportedly handling this case as "Special Attorneys" acting under the direction and supervision of the Attorney General and the United States Attorney for the Western District of Missouri (whose authority over this case, by law, arises solely under the direction and supervision of the Attorney General). Consistent with this premise, the "Formal Notice" issued by the Department of Justice requires that "any Special Attorney assigned the matter or case should sign any pleadings or documents using the signature block of the Western District of Missouri, with the addition of the Attorney General's name preceding that of the United States Attorney." (Doc. 75-1) (citing USAP 3-2.170.001(6)(C)(2)(b)(3)). The superseding indictment plainly fails to comply with this mandate. (*See* Doc. 83).

2

This unique and troubling set of circumstances raises serious concerns. The first—a problem of constitutional magnitude—is that the current Acting Attorney General, Whitaker, was installed in his office in violation of the Appointments Clause of the United States Constitution. The second—a problem that exists separate and apart from the Appointments Clause issue—is that conferring a new title on AUSAs who remain AUSAs in an office which has been recused from this case does not somehow make the conflict of interest requiring recusal in the first place disappear. As it stands—and as set out *infra*—the members of the EDMO Prosecution Team have an *actual* conflict of interest with respect to this case.

Haning addressed these issues in a motion filed with this Court. (Doc. 72). The Government responded in opposition (Doc. 79)—effectively copying and pasting the response of the Solicitor General to a motion raising similar challenges before the United States Supreme Court. But in doing so, the Government failed entirely to respond to the unique issues regarding the Appointments Clause presented by this case in light of the office-wide recusal and designation of the EDMO Prosecution Team as Special Attorneys. (*See* Doc. 79). However, before Haning could reply to the Government's response, and before this Court issued a ruling, the Government brazenly doubled down: the superseding indictment does not purport to be filed in the name of Acting Attorney General Whitaker, Western District United States Attorney Timothy Garrison ("Garrison"), or Eastern District United States Attorney Jeffrey Jensen ("Jensen"). (Doc. 83). This raises the stakes.

Under the Appointments Clause, no person may assume the power of a principal officer of the United States unless that person has been appointed to that office by the President with the advice and consent of the Senate. U.S. Const. Art. II, § 2, Cl. 2. On November 7, 2018, President Donald Trump installed Whitaker as Acting Attorney General after forcing the resignation of

3

Attorney General Jefferson Sessions. However, because he was not appointed to that office by the President with the advice and consent of the Senate, Whitaker holds that authority improperly and in direct contravention of the Appointments Clause. At no other time in history has the President forced out the Attorney General—a principal officer—and replaced him with a non-confirmed appointee, refusing to submit him or anyone else to the Senate for confirmation.

This is particularly important here because the Government claims that members of the EDMO Prosecution Team are "Special Attorneys" pursuant to 28 U.S.C. § 515; but that statute provides prosecutorial authority only "when *specifically directed by the Attorney General*" (emphasis added). A separate statute, 28 U.S.C. § 543, vests the Attorney General with the authority to "appoint attorneys to assist United States Attorneys when the public interest so requires" and each attorney appointed as a Special Attorney "is subject to removal" only "by the Attorney General." Federal law requires that the "Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543…in the discharge of their respective duties." 28 U.S.C. § 519. And the litigation of all cases in which the United States is a party "is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516.

Thus, as it stands, this case is being prosecuted by Special Attorneys to the United States Attorney General under a statutory framework in which the Attorney General is required to direct and supervise this prosecution. (*See* Docs. 1 and 83); 28 U.S.C. §§ 515, 516, 519, 543. But where the Acting Attorney General has been installed in violation of the Appointments Clause, he lacks the authority to prosecute this case. As such, it naturally follows that the Special Attorneys

4

purportedly working under his supervision and direction also lack the authority to prosecute this case.

*Relevant Background*

Since October 6, 2017, Jensen has served as the United States Attorney for the Eastern District of Missouri. Each member of the EDMO Prosecution Team is employed as a full-time AUSA in the Eastern District of Missouri and each operates in that capacity on a daily basis in his other cases. Jensen and the Office of the United States Attorney for the Eastern District of Missouri are recused in what the Department of Justice itself has officially declared is an "office-wide recusal" from this case. (Doc. 75-1)—and for good reason: prior to becoming the United States Attorney, Jensen and his former firm—Husch Blackwell—represented both Haning and Wilbur-Ellis, Haning's former employer, which is a witness in this case and a defendant in a related matter. *See United States v. Wilbur-Ellis et al.*, 4:17-cr-00100-NAB (E.D. Mo.).[2]

On February 14, 2018, Haning was charged in an indictment with thirty-one counts. (Doc. 1). Consistent with the mandate of the Department of Justice's Official Notice (Doc. 75-1), the initial indictment contains the name of Attorney General Jefferson Sessions and his title, then the name of United States Attorney for the Western District Timothy Garrison and his title, and then the names of the Special Attorneys. (*See* Doc. 1). In pleadings filed throughout this litigation, the prosecutors have identified themselves both as "Special Attorney[s] to the United States Attorney General" (for instance, in the initial indictment, Doc. 1) and as "Assistant United States Attorney[s]" (for instance, in the Government's response to Haning's motion to transfer venue, Doc. 26).

---

[2] The Government's response to Haning's motion (Doc. 72) acknowledges Jensen's representation of Wilbur-Ellis, but is curiously silent about Jensen and his former firm's representation of Haning. (*See* Doc. 79). Indeed, the facts set out *infra* tell an important story that underscores the actual conflict of interest requiring disqualification of the EDMO Prosecution Team.

The superseding indictment—in stark contrast—brazenly omits the name or title of any United States Attorney and/or Attorney General. (*See* Doc. 83).

**I.     Because Whitaker Was Installed as Acting Attorney General in Violation of the Appointments Clause, This Prosecution Should Not Proceed Under His Supervision and Direction**

      *A.  The Attorney General Must Be Appointed by the President with the Advice and Consent of the Senate*

Article II, Section 2, Clause 2 of the United States Constitution provides:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President along, in the Courts of Law, or in the Heads of Departments.

The appointment of Executive branch officers, therefore, falls into two categories: principal and inferior. Principal officers—such as the Attorney General of the United States—require nomination by the President and confirmation by the Senate. *Id.*

"The Senate's advice and consent power is a critical structural safeguard of the constitutional scheme." *N.L.R.B. v. SW General, Inc.*, 137 S.Ct. 929, 935 (2017) (internal quotations and citations omitted). The appointment of principal officers "raises grave constitutional concerns because the Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate." *Id.* (Thomas, J., concurring). This process is "more than a matter of etiquette or protocol; it is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997). "[T]he Clause bespeaks a principle of limitation by dividing the power to appoint the principal federal officers…between the Executive and Legislative Branches." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 884 (1991). For these reasons, the Supreme Court has expressly recognized

that the "structural principles embodied in the Appointments Clause do not speak only, or even primarily, of Executive prerogatives." *Id.* at 880. Rather, the Appointments Clause protects the interests "of the entire Republic." *Id.*

These heavy words could not be more applicable to the Constitutional crisis of today. The Attorney General is unquestionably a principal officer. Appointment, therefore, requires nomination by the President and confirmation by the Senate. But, for the first time in history, the President has circumvented that structural system of checks and balances by forcing the resignation of an Attorney General and appointing his replacement without submitting his name to the Senate for confirmation.

### B.   Whitaker Was Not Appointed by the President with the Advice and Consent of the Senate

On November 7, 2018, President Trump installed Whitaker—who, until then, was the Chief of Staff to Attorney General Sessions—as the Acting Attorney General of the United States. This occurred after President Trump forced the resignation of Attorney General Sessions. Whitaker was not confirmed by the Senate to serve in his prior role as Chief of Staff.

This Court may take judicial notice of these facts. *See* Fed. R. Evid. 201. Or this Court may hold an evidentiary hearing at which these facts will be proven.

### C.   The Installation of Whitaker as Acting Attorney General Was Unconstitutional

In 2017, the Supreme Court considered whether the appointment of the general counsel of the National Labor Relations Board without Senate confirmation was legal. *N.L.R.B.*, 137 S.Ct. at 943-44. The Supreme Court held the appointment unlawful on statutory grounds—*i.e.* because it violated the Federal Vacancies Reform Act of 1998 ("FVRA"). *Id.* at 934, 943-44. Justice Thomas agreed with the majority's holding but wrote a concurring opinion in which he emphasized that even if the appointment was consistent with the FVRA, the Appointments Clause nevertheless

would have prohibited the appointment. *Id*. at 948 (Thomas, J., concurring). "The Clause," he explained, "like all of the Constitution's structural provisions, is designed first and foremost not to look after the interests of the respective branches, but to protect individual liberty." *Id*. at 949. As Justice Thomas foreshadowed, federal courts "inevitably will be called upon to determine whether the Constitution permits the appointment of principal officers pursuant to the FVRA without Senate confirmation." *Id*. This motion raises this precise question.

Because President Trump's installation of Whitaker as Acting Attorney General was done without the advice and consent of the Senate, Whitaker holds the authority of Attorney General improperly and in direct contravention of a Constitutional provision the Supreme Court has determined "is among the significant structural safeguards of the constitutional scheme" and which "is designed first and foremost…to protect liberty." *N.L.R.B.*, 137 S.Ct. at 949 (Thomas, J., concurring); *see also Edmond*, 520 U.S. at 659.

The Government has never suggested—and no President in history has ever advanced the position—that the President may cause the resignation of a principal officer and evade Senate confirmation by personally selecting a replacement while expressly disavowing any intention of nominating a permanent successor. The purported "temporary" nature of the Whitaker installation is irrelevant; after all, the Government's view of the law would allow the President to appoint an Acting Attorney General every six months without ever subjecting him or her to Senate confirmation. In support of its position—both at the Supreme Court and in its verbatim pleading filed with this Court, the Government relies on (1) an 1898 Supreme Court case involving a vice-consul who stepped into the position of consul-general when the consul-general fell gravely ill and travelled by boat back to the United States; and (2) broad assertions about the Nation's history.

(*See Michaels v. Whitaker, et al.*, 18-496, Memorandum for Respondents in Opposition to Petitioner's Motion to Substitute; Doc. 79). This Court should reject both arguments.

## A. The *Eaton* Case

In *United States v. Eaton*, 169 U.S. 331 (1898), the Supreme Court rejected an Appointments Clause challenge to the position of vice-consul. At that time, the Government had a consul-general who performed diplomatic functions in foreign countries—a principal officer confirmed by the Senate. Congress recognized that the consul-general could become ill at a time when sending a replacement was time-consuming and dangerous. Thus, Congress provided for "the designation in advance" of a vice-consul empowered to carry out the consul-general's responsibilities in the event of an exigency. *Id*. at 339. Even when the vice-consul performed the consul-general's duties, he remained the consul-general's "subordinate." *Id*.

In *Eaton*, the consul-general in Siam (now Thailand) became gravely ill and left by boat for the United States. Eaton served as vice-consul during this exigent vacancy, but the Government did not want to pay Eaton for his service in this capacity (the vice-consul was only entitled to payment when he performed the consul-general's duties). In a challenge regarding whether the Government had to pay Eaton, the Supreme Court determined that vice-consuls were inferior officers. *Id*. at 343-44. In doing so, the Court approved the practice at the time that any individual serving the functions of a consul-general temporarily—even a consul's son following the consul's death—was permissible. *Id*. at 344.

This is far from the Constitutional crisis facing the Nation today giving rise to this motion. Whitaker is no vice-consul to Siam who took over after Attorney General Sessions embarked on the long journey home from a foreign land, gravely ill, leaving no Senate-confirmed official behind. Whitaker holds one of the most important and powerful positions in the world—fully

controlling the United States Government's entire prosecutorial apparatus. For Haning, Whitaker controls whether the Government may seek to convict him of a crime and throw him into a cage. In this case, it was the President, not a life-threatening disease, who created the vacancy in the principal office—only to then hand-pick a replacement to serve in that principal office with no involvement of the Senate.

### B.  History

Without any legal authority that is actually on point, the Government broadly asserts that history supports its position (*see* Doc. 79)—but there is not a single time in history when the President forced out a Senate-confirmed principal officer to install a non-Senate confirmed successor outside the applicable department's chain of authority. In stark contrast, a review of the actual history tells a completely different story, placing this case in its proper historical context.

Perhaps the closest parallel is when President Andrew Johnson unsuccessfully attempted to remove and replace a Secretary of War. But it did not work because General Stanton refused to vacate his office. Indeed, President Johnson's actions provided one of the primary bases for the Articles of Impeachment filed against President Johnson. Presumably, the Government is not asking this Court to look to this episode in history to repeat itself. So what else does history teach us?

Twice, the Secretary of the Navy resigned during the War of 1812; in both instances in the midst of war, the President appointed the second-in-command and submitted nominations 5 and 17 days later, respectively. Twice, a cabinet member resigned in protest of the President's policies; in both instances, the President appointed the second-in-command and nominated a successor 2 days later. Once, after President William Henry Harrison unexpectedly died from pneumonia 32 days into his term in office, President John Tyler's entire cabinet resigned at once (with the

exception of Daniel Webster) and President Tyler briefly filled the positions of Secretary of War and Secretary of the Navy with the second-in-command while immediately submitting nominations for permanent replacements within 2 and 30 days, respectively. And in one other instance, a Cabinet official resigned at the beginning of an administration due to mental reservations and the President appointed the Department's second-in-command and submitted a permanent nominee 16 days later. None of these situations involved the Attorney General.

Only once—in 1866—a non-Senate confirmed person served temporarily as Attorney General. James Speed, President Abraham Lincoln's Attorney General, resigned the year after President Lincoln was assassinated in protest of President Andrew Johnson's veto of the Civil Rights Act of 1866, the first legislation following the Civil War intended to protect the rights of African Americans. Congress overrode the veto and the law went into effect—so the President appointed the second-in-command *for six days*. Two years later, when Congress created a Senate-confirmed subordinate to the Attorney General, that second-in-command was the first person confirmed to that position.

History indeed tells a story—but not one that supports the Government's position in this case. Placing the events of today into actual historical context demands intervention by this Court.

D. *Federal Law Requires that this Prosecution Proceed Under the Attorney General's Supervision and Direction*

There is no such thing as a Special Attorney to the United States Attorney General when there is no validly appointed Attorney General. As the prosecutors in this case purport to be acting as Special Attorneys to the United States Attorney General, their authority in that capacity is expressly limited to that which is supervised and directed by the Attorney General. *See* 28 U.S.C. §§ 515, 516, 519, 543. Absent this statutorily-mandated supervision and direction by the Attorney General, a Special Attorney to the United States Attorney General acts with no legal authority.

11

In the absence of a statute to the contrary (there is none), "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefore, is reserved to officers of the Department of Justice, *under the direction of the Attorney General*." 28 U.S.C. 516 (emphasis added). Similarly, "*the Attorney General shall supervise* all litigation to which the United States, an agency, or officer thereof is a party, *and shall direct* all United States attorneys, assistant United States attorneys, and special attorneys appointed under [28 U.S.C. § 543] in the discharge of their respective duties." 28 U.S.C. § 519 (emphasis added). Furthermore, the "*Attorney General may appoint* attorneys to assist United States attorneys when the public interest so requires" and "[e]ach attorney appointed under this section *is subject to removal by the Attorney General*." 28 U.S.C. § 543 (emphasis added). And the statute from which the Government purports to derive its authority in this case—28 U.S.C. § 515—confers prosecutorial authority on others only "when specifically *directed* by the Attorney General" (emphasis added).

Collectively, these statutes singularly and unavoidably task the Attorney General with the responsibility of supervising litigation involving the United States, directing special attorneys in the discharge of their duties, and appointing special attorneys who are subject to removal only by the Attorney General himself. The law is clear: federal law plainly demands that any action taken by a Special Attorney to the United States Attorney General in a federal criminal case be supervised and directed by the Attorney General.

Indeed, the Department of Justice's Office of Legal Counsel has repeatedly recognized the importance of the Attorney General in these statutory functions. *See* John Harmon, Litigating Authority of the Office of Federal Inspector, Alaska Natural Gas Transportation System, 4B U.S. Op. Off. Legal Counsel 820, 1980 WL 20994 (1980) ("Section 519 in terms imposes *a mandatory*

*duty on the Attorney General to supervise all litigation* involving the United States, except as otherwise authorized by law") (emphasis added); *see also Theodore Olson*, The Attorney General's Role as Chief Litigator for the United States, 6 U.S. Op. Off. Legal Counsel 47, 54, 59, 1982 WL 170670 (1982) ("While the Attorney General may delegate some litigating authority… *he may not delegate the ultimate responsibility which is by law vested exclusively in the Attorney General*") (emphasis added).

No statute exempts the Haning prosecution from this statutory scheme. In fact, this case falls squarely within this statutory framework as each member of the Prosecution Team is purportedly acting in his or her capacity as a "Special Attorney to the United States Attorney General." (Docs. 1 and 83). To the extent that is so, each member of the Prosecution Team is therefore acting exclusively within the confines of a statutory scheme in which the Attorney General is singularly required to "supervise all litigation" and "direct all United States attorneys, assistant United States attorneys, and special attorneys." (Docs. 1 and 83); 28 U.S.C. §§ 515, 516, 519, 543. As applied to this case, this framework raises serious and unprecedented constitutional concerns.

Because he was installed as Acting Attorney General in violation of the Appointments Clause, Whitaker lacks the power to prosecute this case—much less to supervise it, direct it, or to remove the Special Attorneys prosecuting it. Nonetheless, this case is being prosecuted expressly pursuant to Whitaker's authority (unless the prosecutors are violating federal law); the Special Attorneys in this case lack legal authority to act without it. In this way, this case is different from all other federal prosecutions pending throughout the country as the United States Attorney in this district and his entire office are recused and the case is purportedly being prosecuted by Special Attorneys to the United States Attorney General. (Docs. 1 and 83). The United States Attorney for

the Western District of Missouri has no independent statutory or constitutional authority to prosecute Haning in this district. *See* 28 U.S.C. § 547 (giving a United States Attorney the authority to prosecute only "within his district"). Thus, to the extent United States Attorney Garrison's involvement in this case is legally permitted, he too derives his limited authority subject to the Attorney General's direction and supervision.

Against this backdrop, the Government's recent actions in this case are concerning. The superseding indictment omits entirely the name of the Acting Attorney General or the United States Attorney—even though the Government's recusal notice (Doc 75-1) expressly mandates that both names appear on all pleadings, preceding the names of the Special Attorneys. (*See* Doc. 83). The Government has refused to respond to what is the most fundamentally important discovery request a defendant can make: who is directing and supervising this prosecution? (*See* Discovery Request and Response attached hereto as Exhibit 1). Federal law requires the answer to be, in this case, the Attorney General, but the Government has endeavored to hide Whitaker's name or involvement from this case. And the EDMO Prosecution Team filed a superseding indictment—omitting Whitaker's name and title—adding 19 additional felony counts and a forfeiture allegation almost immediately after Haning sought to disqualify these three prosecutors from this case. Either the Special Attorneys are acting pursuant to the supervision and direction of the Acting Attorney General who was installed in violation of the Appointments Clause, or they are acting without Whitaker's supervision and direction and the prosecution is, therefore, in clear violation of federal law. That the Government is caught between a rock and a hard place demands judicial intervention.

Presumably for the purpose of ensuring compliance with federal law, the Government's recusal notice and United States Attorneys' Procedures Section 3-2.170.001(6)(C)(2)(b)(3)

command that "any Special Attorney assigned the matter or case should sign any pleadings or documents using the signature block of the Western District of Missouri, with the addition of the Attorney General's name preceding that of the United States Attorney." (Doc. 75-1). Prior to the filing of Haning's initial motion to dismiss due to the fact that Acting Attorney General Whitaker occupies his office in violation of the Appointments Clause (Doc. 72), all pleadings filed by the Government in this case complied with this mandate. But then something changed.

To be clear, Haning's objections to the manner in which the Government has signed recent pleadings (including the superseding indictment) do not concern a technicality or a clerical error. These are not typos. Rather, Haning has expressly challenged the authority of the prosecutors proceeding against him in this case on structural Constitutional grounds. That the Government would subsequently omit the name and title of the Acting Attorney General from its pleadings— including a superseding indictment charging Haning with 50 felonies—is not only telling; it is legally significant and demands this Court's attention.

In the rare but important instances in which the Supreme Court has found a violation of the Appointments Clause, the Supreme Court has rejected the idea that individuals can be subjected to the actions of those who act without authority. *See, e.g., Ryder v. United States*, 515 U.S. 177, 181-84 (1995) (invalidating actions taken by individuals given authority in violation of the Appointments Clause). As former Acting Solicitor General Neal Katyal and George Conway, III explained in a recent *New York Times* op-ed, the installation of Whitaker as Acting Attorney General is "illegal" and "it means that anything Mr. Whitaker does, or tries to do, in that position is invalid." Neal Katyal and George Conway, III, "Trump's Appointment of the Acting Attorney General is Unconstitutional," *New York Times* (Nov. 8, 2018). Because Whitaker does not have

the authority to prosecute this case, Special Attorneys working expressly pursuant to his direction and supervision also lack the authority to prosecute this case.

More than 40 years ago, the Eighth Circuit cautioned that the use of Special Attorneys carries with it unique considerations. *See generally United States v. Wrigley*, 520 F.2d 362 (8th Cir. 1975). There, the Eighth Circuit was concerned by the power attendant to the authority to sanction special attorneys to conduct criminal proceedings but felt constrained by federal law to allow it—*because* the Eighth Circuit recognized that it was, by law, the Attorney General exercising power.

> We share many of [the district court's] apprehensions with respect to the widespread use of special attorneys; an apprehension that has not been lessened by the sometimes inept performance in recent years of special attorneys at the district and appellate levels of this Circuit. But we remain convinced that until Congress imposes limitations on the power of the Attorney General, we must accept his right to authorize, absent a violation of the Constitution, special attorneys to conduct any criminal proceeding in a designated judicial district which United States Attorneys are authorized to conduct. Moreover, we are confident that the Attorney General will exercise his power in a responsible manner.

*Id.* at 369–70. Here, the concerns of the Eighth Circuit are amplified. Not only is an unconstitutionally-installed Acting Attorney General purporting to authorize the actions of the Special Attorneys in this case; by flat-out refusing to include his name on the superseding indictment, those Special Attorneys appear to be denying Whitaker's supervision and direction over their actions. Why else omit Whitaker's name and title from the charging document?

### E. Because the Exercise of Power by Whitaker and His "Special Attorneys" Violates the Constitution, the Indictment Must be Dismissed

Where, as here, the Appointments Clause is violated, the law requires the immediate cessation of any further exercise of power improperly conferred. *Ryder*, 515 U.S. at 181-83; *United States v. Providence Journal Co.*, 485 U.S. 693 (1988) (dismissing case for lack of jurisdiction where special prosecutor lacked statutory authority to represent the United States in a petition for

a writ of certiorari even though district judge appointed the special prosecutor to handle the underlying case); *Landry v. Fed. Deposit Ins. Corp.*, 204 F.3d 1125, 1130-32 (D.C. Cir. 2000) (violation of Appointments Clause constitutes structural error); *N.L.R.B.*, 137 S.Ct. at 935 (reaffirming that Appointments Clause is a "structural safeguard") (internal citations omitted). As this case progresses, provided the Government is adhering to federal law, Whitaker is directing and supervising important decisions—including, but not limited to, charging decisions, collection of evidence, whether to confer immunity on witnesses, plea determinations, and so on. Indeed, either the Government has violated federal law in seeking and obtaining a superseding indictment by failing to act pursuant to the direction and supervision of Whitaker, or Whitaker has directed and supervised the prosecution team in filing 50 felony counts against Haning. If, indeed, these actions are being supervised and directed by an Acting Attorney General installed in violation of the Appointments Clause and/or by Special Attorneys to the Attorney General acting on his behalf, this violates Haning's constitutional rights. Structural error is "subject to automatic reversal" in the event of a conviction. *Neder v. United States*, 527 U.S. 1, 8 (1999).

As such, this Court should dismiss this case and, in doing so, prevent further unlawful action by the Acting Attorney General and the Special Attorneys working under him.

## II.    In the Alternative, this Court Should Disqualify the EDMO Prosecution Team

This Court should dismiss this case because no remedy short of dismissal adaquately addresses the violation of Haning's rights. However, if this Court denies Haning's motion to dismiss, this Court should—at a minimum—disqualify the EDMO Prosecution Team because each individual prosecutor is a full-time AUSA in a United States Attorney's Office which is supposedly recused from this prosecution.

17

"The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (internal citations omitted). But disqualification is not unprecedented, and this case presents a unique and particularly troubling set of circumstances. Indeed, federal courts have identified circumstances where disqualification is not only appropriate, but necessary. *Id.* (citing *Young v. United States*, 481 U.S. 787, 807 (1987)) (finding an actual conflict of interest when prosecutor represented another party benefiting from case); *United States v. Heldt,* 668 F.2d 1238, 1275 (D.C. Cir. 1981) (bona fide allegations of bad faith performance of official duties by government counsel in a civil case); *United States v. Prantil,* 764 F.2d 548, 552-53 (9th Cir. 1985) (prosecutor who will act as a witness at trial).

To be clear, Haning seeks to disqualify the EDMO Prosecution Team because, if the United States Attorney's Office is recused as it purports to be, there is no compelling reason why these particular AUSAs should be permitted to continue prosecuting this case.

A. *The Government Has Already Purportedly Implemented an "Office-Wide Recusal"—But Three Members of the Office Remain Prosecutors on this Case*

This is an unusual case in the context of cases in which defendants have sought to disqualify Assistant United States Attorneys and/or an entire United States Attorney's Office. That is because, in this case, the Government has already acknowledged the need to recuse—and has purportedly recused—the United States Attorney's Office. And for good reason.

The genesis of the recusal is that, prior to being appointed United States Attorney, Jensen and his law firm represented Haning and Wilbur-Ellis, a former target of this investigation and now a prosecution witness. The Government's silence about Jensen's and his firm's prior representation of Haning underscores that Jensen's representation of both Haning and a witness

18

against Haning creates an actual conflict of interest for these three prosecutors who—in every other case—report directly to Jensen on a daily basis.

During the course of Jensen's and his firm's simultaneous representation of both Haning and Wilbur-Ellis, Jensen's legal team acknowledged a separate conflict of interest (between Haning and Wilbur-Ellis) and they withdrew from Haning's case while continuing to represent Wilbur-Ellis. The EDMO Prosecution Team has built a case against Haning that relies heavily (and unjustifiably) on the credibility of Wilbur-Ellis. This creates an *actual* conflict of interest for the EDMO Prosecution Team—because a decision to believe that Jensen's former client, Wilbur-Ellis, misled or lied to the Government would require these three prosecutors to reject Jensen's former client's statements and, presumably, to reject Jensen's representations made while in the role of his client's advocate.

To be clear, Haning is not taking issue with any actions taken by Jensen. Rather, Haning takes issue with Jensen's subordinates' prosecution of a case against a defendant Jensen and his law firm represented that involves a witness that Jensen and his law firm also represented. This creates not only an appearance of impropriety; it creates an actual conflict of interest that would not exist for federal prosecutors outside of the United States Attorney's Office for the Eastern District of Missouri.

Giving the members of the EDMO Prosecution Team a new title solely for purposes of this case does not somehow change the fact that each remains an AUSA in the United States Attorney's Office which is supposedly subject to an "office-wide" recusal; each directly reports to Jensen on a daily basis in all other cases and employment capacities, each is compensated as an AUSA, each is eligible for promotion within that office, and each is simultaneously an AUSA in every other capacity of his professional life—except for this case. During the pendency of this case, these

19

AUSAs have regularly appeared in federal court in their capacities as AUSAs in this district—and they continue to do so. Signing pleadings using a different title for purposes of this case should not be all that is required to fall outside of an office-wide recusal.

### B. The Government is Handling this Conflict Differently from Others

It is not uncommon for the Government to prosecute cases under an Acting United States Attorney. In fact, there is precedent in this district.[3] *See, e.g., United States v. Beckham*, 4:16-CR-00300-RLW (E.D. Mo.). However, in those instances, the United States Attorney is recused but the remaining supervisory infrastructure of the office remains intact and another attorney effectively steps in as Acting United States Attorney for the purpose of that case. Thereafter, the line prosecutors remain supervised by supervisors within their office and there is no question that the case is being handled by the United States Attorney's Office but not by the United States Attorney him or herself.

Similarly, there is precedent for the Government's recusal of an entire United States Attorney's Office and for a *separate* United States Attorney's Office and/or component of the Department of Justice in Washington, D.C. to step in and take over. *See, e.g., United States v. Thomas Carroll*, 4:16-CR-148-HEA, (E.D. Mo). There, the Government was represented by an AUSA from a different district (the Western District of Missouri), who had the title "Special Assistant to the United States Attorney General," and by a trial attorney with the Department of Justice's Civil Rights Division in Washington, D.C. From the date of recusal, the United States Attorney's Office for the Eastern District of Missouri was not involved in the case and the prosecution was handled by attorneys from different components of the Department of Justice.

---

[3] This motion is not intended to, and does not, address the constitutionality of the appointment of an individual within the United States Attorney's Office as an Acting United States Attorney, as that is not ripe for litigation in this case.

In its response to Haning's initial motion, the Government criticized Haning for not looking to *United States v. Sigillito*, 4:11-CR-168-LRR (E.D. Mo). (*See* Doc. 79) ("Haning argues there is no precedent for the type of conflict-free supervisory structure installed in this case. This assertion completely overlooks at least one such precedent, and one that would not have been difficult for Haning to identify because the precedent occurred within a fairly recent and highly publicized prosecution in this district").

*First*, the defendant in *Sigillito* did not—as the Government argues—raise this same issue. Indeed, as the Government itself argued in that case, "Although he possessed all the facts upon which his motion is based well before the trial in this case, Sigillito chose not to file such a motion or raise this issue prior to trial, during trial, or even post-trial." *Sigillito*, Doc. 438 at 1. Furthermore, the conflict that led to recusal in *Sigillito* was a far cry from the conflict here. In that case, a supervisory AUSA's cousin was a testifying witness. *See United States v. Sigillito*, 759 F.3d 913, 928 (8th Cir. 2014). In this case, the United States Attorney's former client is the defendant, the United States Attorney's other former client is a witness against the defendant, and the EDMO Prosecution Team report directly to the United States Attorney on every other case.

*Second*, the *Sigillito* case did not arise in the context in which the President appointed an Attorney General in violation of the Appointments Clause. *See id*.

*Third*, the Government's assertion that "the exact same recusal protocol used in this case also was implemented in the *Sigillito* case" (Doc. 79 at 23) is difficult to reconcile with the Government's actions in this case. In *Sigillito*, the indictment contained the name and title of Attorney General (Eric Holder, Jr.) and the name and title of United States Attorney for the Western District of Missouri (Beth Phillips). *See Sigillito*, Doc. 2. In this case, the superseding

indictment contains only the names of the members of the EDMO Prosecution Team. (*See* Doc. 83).

In this case, the Government has acknowledged the need to recuse the United States Attorney's Office because Jensen and his law firm personally represented Haning and a witness against Haning during the investigation of this case. But instead of actually carrying out the "office-wide recusal" that the Government claimed it was implementing, the Government assigned this case to three AUSAs in this district, gave them a different title solely for purposes of this case, and somehow concluded that the conflict of interest requiring recusal has therefore suddenly—and magically—disappeared. It has not. No defendant should be prosecuted by his former attorney, by the attorney who represented a witness against him in this case, or by those who serve directly under him.

### III.   New Evidence Reveals the United States Attorney's Office for the Eastern District of Missouri Conducted the Grand Jury Investigation That Led to the Superseding Indictment

Setting aside, momentarily, the Appointments Clause violation and the fact that the EDMO Prosecution Team has an actual conflict of interest requiring disqualification, it turns out the recused United States Attorney's Office for the Eastern District of Missouri actively conducted the grand jury investigation that led to the superseding indictment.

On September 21, 2018, Charles S. Birmingham—in his capacity as "Assistant U.S. Attorney," *not* in his capacity as "Special Attorney"—requested and obtained a grand jury subpoena that was served on a witness. (*See* Grand Jury Subpoena attached hereto as Exhibit 2). The subpoena commanded the witness to appear in this district on October 10, 2018 and to bring documents. (*See id*). The subpoena itself expressly states: "The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests

this subpoena, are: **CHARLES S. BIRMINGHAM**, Assistant U.S. Attorney" followed by the main address and main telephone number of the United States Attorney's Office for the Eastern District of Missouri. (*See id*.) (bold and capitalized lettering in original). The subpoena references a "USAO #" next to AUSA Birmingham's name, title, and contact information. (*See id*.). The subpoena clearly sought documents related to Haning.

As a matter of law and practice, prosecutors directly request, and cause to be served on witnesses, grand jury subpoenas. *See, e.g., In re Grand Jury Proceedings: Subpoenas Duces Tecum*, 827 F.2d 301, 302 (8th Cir. 1987) ("On April 16, 1986, *the United States Attorney caused* two grand jury subpoenas *duces tecum* to be served on employees of appellant Western Union Telegraph Company"). In this instance, the subpoena was requested by an AUSA acting in his capacity as an AUSA—not by the Western District of Missouri United States Attorney's Office and not by a "Special Attorney to the United States Attorney General." Furthermore, the contact information on the subpoena was the main address of the United States Attorney's Office and the main phone number for the United States Attorney's Office—meaning no precautions were taken to insulate correspondence about this case from the remainder of the United States Attorney's Office which is supposedly recused "office-wide."

Haning anticipates that identical grand jury subpoenas were issued under the authority of the United States Attorney. In public pleadings—including the superseding indictment—the members of the EDMO Prosecution Team have taken pains to sign pleadings using the title, "Special Attorney to the United States Attorney General," apparently under the theory that it signifies that those AUSAs are acting under the authority of the Attorney General and not in their capacities as AUSAs in the Eastern District of Missouri. But in private—when actually conducting the investigation culminating with the issuance of the superseding indictment—the prosecution

23

team is utilizing the title, "Assistant U.S. Attorney" and is acting under the authority of the United States Attorney.

**IV.    Conclusion**

Based on the foregoing, this Court should dismiss this case. Haning is being prosecuted by Special Attorneys to an Acting Attorney General who was unconstitutionally installed in violation of the Appointments Clause. Neither the Acting Attorney General, nor his Special Attorneys, have the power to prosecute Haning even though federal law requires that the Attorney General supervise and direct the prosecution and even though the Attorney General remains the only office holder who can remove Special Attorneys. In the alternative, this Court should disqualify the EDMO Prosecution Team because conferring onto them a different title for purposes of a single case does not somehow change the fact that they remain AUSAs in this district, that they have an actual conflict of interest, and that the recused United States Attorney's Office has actively participated in the federal grand jury investigation that led to the superseding indictment.

Respectfully submitted,

**Margulis Gelfand, LLC**

 _/s/ Justin K. Gelfand_
JUSTIN K. GELFAND, #62265
WILLIAM S. MARGULIS, #37625
ARTHUR S. MARGULIS, #16906MO
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
bill@margulisgelfand.com
art@margulisgelfand.com
ian@margulisgelfand.com

**<u>Certificate of Service</u>**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will

provide notice of filing to all counsel of record.

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, #62265
WILLIAM S. MARGULIS, #37625
ARTHUR S. MARGULIS, #16906MO
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
bill@margulisgelfand.com
art@margulisgelfand.com
ian@margulisgelfand.com
