1                UNITED STATES OF AMERICA
             EASTERN DISTRICT OF MISSOURI
2                  EASTERN DIVISION

3  UNITED STATES OF AMERICA,     )
                            )
4          Plaintiff,      )
                            )
5     vs.               )  No. 4:18-CR-139 RWS/NAB
                            )
6  WILLIAM DOUGLAS HANING,      )
                            )
7          Defendant.      )

8

          TRANSCRIPT OF EVIDENTIARY HEARING
9

      BEFORE THE HONORABLE NANNETTE A. BAKER
10        UNITED STATES MAGISTRATE JUDGE

11              January 2, 2019

12  APPEARANCES:

13  For Plaintiff:     Mr. Phillip Eugene Porter
                   Ms. Kathleen D. Mahoney
14                  OFFICE OF U.S. ATTORNEY
                  400 E. Ninth Street, Suite 5510
15                  Kansas City, MO  64106

16                  Mr. Charles S. Birmingham
                  OFFICE OF U.S. ATTORNEY
17                  111 S. 10th Street, 20th Floor
                  St. Louis, MO  63102
18

19  For Defendant:     Mr. Justin K. Gelfand
                   Mr. Arthur S. Margulis, Sr.
                   Mr. William S. Margulis
20                  Mr. Ian Talbot Murphy
                  MARGULIS AND GELFAND, LLC
21                  8000 Maryland Avenue
                  Suite 420
22                  St. Louis, MO  63105

23  RECORDED BY:       SUSAN R. MORAN, RMR, FCRR
                  Official Court Reporter
24                  111 South 10th Street
                  St. Louis, MO  63102
25                  (314) 244-7983

1              (The following proceedings were held in open court

2    on January 2, 2019 at 1:31 p.m.:)

3              THE COURT:  We are on the record now in the matter

4    of United States of America versus William Douglas Haning.

5    This is Cause No. 4:18-CR-139.

6              We have several things to cover today.  We do have a

7    Motion to Dismiss Indictment Or, In the Alternative, To

8    Disqualify Prosecution Team.  There is also a Motion to

9    Compel.  We also have a Motion to Quash subpoenas that the

10   defendants had issued for witnesses.

11             I think because of the issue regarding the subpoenas

12   and the testimony, we should probably cover that first.  Does

13   that seem like the better way before we go on to the other

14   motions?  Does that make sense?

15             MR. GELFAND:  Yes, Your Honor.

16             THE COURT:  All right.  So what I was able to

17   determine is that the defendants, you sent subpoenas, emailed

18   subpoenas, is that correct, to --

19             MR. GELFAND:  We emailed subpoenas and a *Touhy*

20   regulations letter to the government.  We cc'd not only the

21   EDMO based prosecutors but also Mr. Porter and I believe

22   Ms. Mahoney in the Western District of Missouri.  As set out

23   in the *Touhy* regulations letter, we maintain then as we do

24   now that based on an abundance of law that we cited in our

25   response that we filed last night that the *Touhy* regulations

1    do not legally apply to criminal cases where the United

2    States is a voluntary party.  We cited an abundance of law.

3            But more specifically the government appeared to be

4    taking the position, Your Honor, that compliance with the

5    *Touhy* regulations meant, A, that they were the gatekeepers

6    for relevancy and scope, which the law clearly says that

7    that's a function of the Court in the ordinary course to rule

8    on a question-by-question basis with testimony.

9            And, B, they maintained that we had to file an under

10   oath affidavit signed under the penalties of perjury as to

11   every question that we were going to ask every one of these

12   witnesses.  There's no law at all that supports those

13   contentions, and there is law that rejects those contentions

14   that we cited an abundance of.

15           And they've had more than sufficient time to comply

16   to the extent they believe it's necessary with the *Touhy*

17   regulations.  They noted in their letter, Your Honor, that

18   notwithstanding their objections they would have their

19   witnesses present and available to testify to whatever the

20   Court permits.  We believe that these witnesses have very

21   relevant testimony as to facts that remain in dispute.

22           We have no intention of exceeding the subjects set

23   out in the *Touhy* regulations letter notwithstanding our

24   belief that it doesn't apply.  And obviously the Court, as in

25   any case, Your Honor, you know can rule on any

1    contemporaneous legal objections as to any issue, including

2    relevance, to the extent that the prosecution believes that's

3    appropriate.

4         But we intend to cover with these witnesses,

5    obviously provided the Court would allow us, topics directly

6    related to actual conflicts of interest, recusal procedures

7    that were followed or not followed in the Eastern District of

8    Missouri.  And these are directly relevant based on the

9    statutes and case law that governs this issue.

10        And so with respect to the subpoena issue, as a

11   practical matter we're fully -- we believe that Mr. Haning

12   has a due process right to call all relevant witnesses.

13   There's an abundance of law that says that.  And as a

14   practical matter the government's position seems to be, look,

15   there's no evidence at least for the disqualification prong

16   of our motion, that there's no evidence to establish an

17   actual conflict of interest and/or to attack essentially what

18   they believe their recusal processes were.  That's because we

19   haven't yet had an opportunity to put on evidence, and that's

20   what we're here to do.  The Court obviously set it for an

21   evidentiary hearing.  We're fully prepared and expecting to

22   proceed today in that capacity.  And we have witnesses under

23   subpoena to do just that.

24        THE COURT:  All right.  And the witnesses that you

25   are subpoenaing, are those the only witnesses that you have

1    with regard to this evidentiary hearing?

2              MR. GELFAND:  No, Your Honor, we have one other

3    brief witness who is Randy Mullendore.  He's an attorney at

4    the law firm of Husch Blackwell.  They have provided some

5    records that I anticipate he will authenticate and lay a

6    business records foundation for and provide just a brief

7    amount of basically additional testimony related to those

8    records.

9              THE COURT:  Okay.  All right.  With the —— with

10   regard to the witnesses that you have subpoenaed, can you

11   tell me what you anticipate those witnesses would be

12   testifying to.  And then I want to hear from the government

13   about what their objections are.

14             MR. GELFAND:  Yes, absolutely, Your Honor.  Your

15   Honor, we intend to introduce testimony and ask questions

16   about the general nature of —— for the prosecutors, that is,

17   the general nature of their employment as full-time Assistant

18   United States Attorneys in the Eastern District of Missouri.

19   Could I ask out of an abundance of caution that those

20   witnesses, that we can invoke the rule on witnesses here for

21   this portion of ——

22             THE COURT:  Okay.  So who is here that you would ——

23             MR. GELFAND:  I believe it would be Mr. Birmingham,

24   and I don't know if any of the other AUSAs are present.

25             THE COURT:  For the record, Mr. Sison is no longer

1   with the U.S. Attorney's Office or working as a Special

2   Attorney.  Is he --

3            MR. PORTER:  He still has two more days, Your Honor.

4            THE COURT:  He has two more days.  Lucky for him.

5   So it would be Mr. Sison.

6            MR. GELFAND:  And Mr. Bateman.

7            THE COURT:  And Mr. Bateman.

8            MR. GELFAND:  And then there's two agents.  I don't

9   know whether we'll call them, but they are under subpoena.

10           THE COURT:  Okay.  All right.  And you want to

11  invoke the rule at this point about what you anticipate them

12  testifying about?

13           MR. GELFAND:  We would like to.  It's not the end of

14  the world if we don't.

15           THE COURT:  Okay.  At this point I'm going to allow

16  them to remain just for this portion.

17           MR. GELFAND:  Okay.  But we want to ask questions

18  that directly relate to conflicts of interest related to

19  Mr. Jensen, who the evidence will establish represented

20  Mr. Haning prior to obviously our representation of

21  Mr. Haning.  Mr. Jensen is obviously the United States

22  Attorney.  We anticipate the evidence will establish that he

23  decides whether these full-time AUSAs receive promotions,

24  receive case assignments, receive bonuses, receive salary

25  increases or raises or maintain continued employment.  In

1    other words, facts that go directly to conflicts of interest

2    based on vis-a-vis their full-time employment as AUSAs.

3         We also intend to introduce testimony related to

4    procedures that were used to implement what the Department of

5    Justice calls an office-wide recusal.

6         And based even on the government's position, there

7    are six employees of the Eastern District of Missouri and

8    only six employees who putting aside the phrase "office-wide

9    recusal" are essentially not subject to the office-wide

10   recusal.  And we intend to ask questions related to who else

11   has access to files, knowledge of the filing of sealed or ex

12   parte pleadings, who has participated in conversations.  We

13   intend to explore the conflict that arises from Mr. Jensen's

14   representation and direct communications that Mr. Jensen had

15   with the government including specifically with

16   Mr. Birmingham on three separate dates in 2016 in connection

17   with this particular case.  We intend to ask questions that

18   are directly related to the recusal processes that even the

19   government argues this Court should essentially uphold, where

20   files are stored, who has access to those files, how they are

21   maintained.  Basically who has played a role.

22        We intend to inquire about certain pleadings and

23   signature blocks on those pleadings that are directly

24   relevant to facts at issue in this case.  And we, subject to

25   the Court's ruling on the Motion to Compel, we would

1    anticipate inquiring in a very limited fashion about the

2    authority and title under which grand jury subpoenas were

3    issued.  The government in this case, as the Court may

4    recall, has claimed that the one subpoena that we do have

5    access to was, quote, isolated and aberrant, end quote.  We

6    don't believe that it was, and that's why we filed a Motion

7    to Compel.  The facts are what they are.  And the Court

8    obviously needs the facts.

9           THE COURT:  And I'm going to discuss that Motion to

10   Compel as well.

11          MR. GELFAND:  And then the other issues that we

12   intend to get into deal with the chain of command that's been

13   applied in this case, not with respect to any decisions or

14   communications or privileged or confidential info about, for

15   example, you know, strategy related to why wire fraud, we're

16   not going anywhere near that, but relevant questions about

17   who is ultimately directing and supervising this prosecution.

18   What, if any, role Mr. Whitaker has had.  What, if any, role

19   Mr. Garrison has had.  What, if any, role Mr. Porter has had

20   prior to his appointment as a Special Attorney 16 days ago on

21   December 17th of 2018.

22          And then we also intend to ask questions that deal

23   directly with five federal statutes that govern the authority

24   to prosecute.  We've cited these statutes in literally every

25   pleading where they were applicable from our initial Motion

1    to Dismiss to the Motion to Dismiss filed after the

2    superseding indictment to the reply.  And the government to

3    this day, you know, has essentially called our argument

4    silly, you know, meritless, et cetera, but they haven't

5    actually literally responded to the fact that they appear to

6    be knowingly and intentionally violating these five federal

7    statutes.

8            There's factual evidence that we need to elicit in

9    the absence of stipulations so that the Court has a thorough

10   and full record.  And obviously the Court can apply the law

11   as the Court deems fit based on the facts, but we need to get

12   the facts out there.  And right now sitting here today with

13   respect to our motion, there is no evidence for the Court to

14   apply the law to, that's why we have hearings.

15           THE COURT:  All right.  Thank you.  Who would like

16   to respond on behalf of the government?

17           MR. PORTER:  I would, Your Honor.  May it please the

18   Court.

19           THE COURT:  Yes.

20           MR. PORTER:  Your Honor, we didn't have the pleasure

21   of introducing ourselves at the outset.  My name is Gene

22   Porter.  With me at counsel table is Kate Mahoney, and you

23   know Mr. Birmingham.

24           The Motion to Quash is premised on a very simple and

25   straightforward inescapably true conclusion.  Under the

1    *Sigillito* case, the only basis for disqualification based on

2    a conflict of interest is an actual conflict, one of a

3    financial or personal interest.

4         The only individual who has such a conflict has been

5    recused from the case, and as they well know has not

6    participated in the case since he became the United States

7    Attorney, and that's Mr. Jensen.

8         In the pleadings that we filed with respect to the

9    Motion to Dismiss Or, the Alternative, Motion to Disqualify,

10   we made it abundantly clear that there is a conflict-free

11   supervisory structure in place.  Mr. Birmingham has no actual

12   conflict based on a pecuniary or personal interest.  He

13   didn't represent Mr. Haning.  Ms. Mahoney didn't.  I didn't.

14   Mr. Bateman didn't.  And certainly Mr. Sison didn't.  There

15   is no actual conflict of interest.  And under the *Sigillito*

16   case, that's all that matters.

17        These other things that they are talking about --

18   and it's helpful to finally quite frankly get some

19   understanding of where they think this is going.  Because you

20   know how we learned about the subpoenas?  In an email.  And

21   the email said, "Please see attached."  And attached was the

22   letter that set out their demand for the production of those

23   witnesses.

24        We responded one day later and explained to them

25   that the *Touhy* regulations do, in fact, apply.  We cited the

11

1    specific one that applies when the United States is a party.

2    The case law they rely upon predates the *Touhy* regulation

3    that governs when the United States is a party.  And we asked

4    them, we didn't say you have to have an affidavit sworn, we

5    used exactly the language that is used in the regulation

6    itself.  And it says -- excuse me, we direct your attention

7    to 28 U.S.C. 16.23 (sic).  The applicable *Touhy* regulation

8    for the authorization of witness testimony from a Department

9    of Justice employee in cases where the United States is a

10   party.  There's a separate *Touhy* regulation that applies when

11   the United States is not a party.  This one applies when the

12   government is a party.

13        And the verbatim language of 16.23, subsection (c)

14   of the 28 CFR is:  "...oral testimony is sought by a demand

15   in a case or matter in which the United States is a party..."

16   We are a party.  "...an affidavit, or, if that is not

17   feasible, a statement by the party seeking the testimony or

18   by the party's attorney setting forth a summary of the

19   testimony sought must be furnished to the Department attorney

20   handling the case or matter."  We asked for that.

21        Ten days, radio silence.  Nothing.  Not a single

22   peep.  Now, if they really believed that this was an

23   appropriate exercise to engage in, why did they wait till

24   today to give you this outline?  Why did they make no effort

25   whatsoever to engage?

12

1          Our letter on December the 20th, which they got by

2     email on December 20th, said, "If it would help to more

3     efficiently discuss ways in which the scope of the requested

4     testimony can be limited and defined, we are of course

5     available to informally discuss this matter at your

6     convenience by phone or otherwise, the holiday season

7     notwithstanding."  Why did they ignore us?  Who are they

8     trying to ambush?  Who are they trying to fool?

9          The general nature of the employment of those three

10    AUSAs in the Eastern District of Missouri, we all know what

11    that answer is.  They work there.  But Mr. Jensen has no

12    authority to supervise them in this case.  And that's the

13    only relevant conflict inquiry is this case.  The *Sigillito*

14    case teaches us that because Steve Holtshouser continued to

15    work in the U.S. Attorney's Office in the Eastern District of

16    Missouri under the auspicious of the presidentially appointed

17    U.S. Attorney at that time, and he also prosecuted Martin

18    Sigillito.

19          THE COURT:  In this case, though, did the

20    supervising United States Attorney actually represent anyone

21    in the *Sigillito* case previously?

22          MR. PORTER:  No.

23          THE COURT:  And you think that's not relevant?

24          MR. PORTER:  Not relevant at all.  Under the recusal

25    process, the Attorney General has the authority to delegate

1    the ability of a U.S. Attorney in another district to

2    prosecute in a district where that U.S. Attorney is not a

3    resident.  By regulation that authority has been delegated by

4    the Attorney General to the Acting -- excuse me, to the

5    Assistant Deputy Attorney General.  At the time of the

6    *Sigillito* case that was a guy named Margolis.

7         Now, at the time of these recusals it was a guy by

8    the name of Scott Schools.  Since then two other people have

9    sat in that chair operating under that authority to consider

10   how to frame and create a conflict-free ability to prosecute

11   a case in a district where everyone agrees Mr. Jensen can't.

12   That's not a material matter that's in dispute.

13        THE COURT:  Here's the situation I think.  I think

14   that we have a lot of the regulations and procedures have

15   been set out in the briefing.  But from the standpoint of

16   this Court making a determination regarding their --

17   regarding the defendant's motion to disqualify, the motion to

18   dismiss indictment or disqualify the attorneys, we still need

19   to have a factual -- I still need some facts.  And while a

20   lot of the procedures are set forth, until we get some

21   testimony, I don't know which procedures were followed and

22   how they were followed.  So I would say that with regard to

23   having some testimony, I think that it would be helpful to

24   the Court to have some limited testimony regarding the

25   procedures in this case, the procedures of just even though

14

1   it's been set out in your pleadings, I don't have factual

2   information, and so I would like to have some of that.  And I

3   don't -- that's why I wanted to know what exactly they were

4   hoping to receive testimony on.

5            MR. PORTER:  Your Honor, we had the same question,

6   and we asked it of them on December 20th.  Because the reason

7   that was important was because we were going to be expected

8   to be here today.

9            THE COURT:  Right.

10           MR. PORTER:  Under the *Touhy* regulations until they

11  provide to the government the summary that they gave you

12  today, we can't go through the process that's required to

13  authorize testimony.  None of those people have been

14  authorized to testify today because we were unable to get

15  this information ahead of time.  And the authority to

16  authorize that testimony comes from the U.S. Attorney.

17           THE COURT:  Comes from which U.S. Attorney?

18           MR. PORTER:  The Western District of Missouri U.S.

19  Attorney, Mr. Tim Garrison, my boss, because he's in charge

20  of the case.  The case was assigned to the Western District

21  of Missouri U.S. Attorney.  And under the *Touhy* regulations

22  as the one who has authority for the case, he's the one who

23  makes the decision on whether or not to authorize testimony

24  pursuant to the *Touhy* regulations.

25           We asked them, tell us.  And there is no authority

1    that we've been able to -- I mean, he's not here, so whatever

2    they wanted to accomplish today, they shot themselves in the

3    foot.  And the failure to provide this in advance means that

4    we can't comply with the *Touhy* regulations because they

5    failed to do what they are required to do under the

6    regulation.

7           THE COURT:  Okay.  Mr. Gelfand, with regard to that,

8    you've heard -- I would like to hear some testimony on this

9    issue, but is it your position the *Touhy* regulations do not

10   apply?

11          MR. GELFAND:  It's a combination of two positions.

12   No. 1, we do not believe the *Touhy* regulations apply at all

13   in a criminal case where the U.S. is a voluntary party.  And

14   we cited an abundance of law, by the way, that does not

15   predate the *Touhy* regulations.  *Touhy* was a case in the

16   1950s.  And we cited cases as recently as a Colorado district

17   court case in 2017.

18          More importantly, though, Your Honor, directly to

19   Mr. Porter's comment, they actually reference in their motion

20   to quash our *Touhy* regulations letter, Doc. 99-1, where we

21   say -- they claim this is an ambush, they have no way of

22   knowing any of this.  We cite, I'm quoting verbatim, "...the

23   procedures utilized in connection with the office-wide

24   recusal of the United States Attorney's Office for the

25   Eastern District of Missouri, the witness's knowledge of EDMO

1    personnel who have participated in this case, and facts that

2    directly bear on actual conflicts of interest as set out in

3    more detail in Haning's pleadings."

4           What we did, and candidly it's been my practice ever

5    since I've been on the defense side is we always maintain

6    legally, I believe correctly, that the *Touhy* regulations do

7    not require us to do all these things, but we still provide

8    the summary that's required to avoid just this kind of game

9    candidly by the prosecution.  This Court set an evidentiary

10   hearing.  Everything I just said falls within one of those

11   categories, Your Honor.  And to the extent that the Court

12   thinks there's a question or whatever it may be, a topic that

13   should be covered because of relevance or because of some

14   other objection, that's why we have evidentiary hearings with

15   a judge.  Obviously the Court could rule.

16          The irony with the government's position, as the

17   Court correctly pointed out, is that there is no record for

18   the Court to even uphold their position.  There's an email

19   that they've attached from -- I don't know if it's Jaime or

20   Jaime Pena, I believe, but whatever the name is is in the

21   email that purports to name the Western District of Missouri

22   U.S. Attorney or his successor essentially in charge of this

23   case.  I don't want to put the cart before the horse, but one

24   of the things in our motion to compel, which we only learned

25   a couple weeks ago, was that Mr. Garrison has actually not

17

1    been appointed a Special Attorney.

2         If *Sigillito* is so important as they claim, the

3    Eighth Circuit in *Sigillito* says that the U.S. Attorney was a

4    Special Attorney.  That's a real thing.  There's an oath

5    that's required.  It's under 28 U.S.C. 515.  They have

6    literally refused to acknowledge any of these issues while

7    simultaneously saying we're not prepared to let you call our

8    witnesses.  And I think it's ridiculous.  We're here for an

9    evidentiary hearing and we're prepared to proceed.

10        THE COURT:  So your position is that they asked you

11   for specific information and your position is that you

12   provided the information that you've just given the Court

13   today about the testimony that you're seeking?

14        MR. GELFAND:  With being very clear on the

15   chronology, we provided the -- we had already provided the

16   information before they sent us a letter.  Candidly, Your

17   Honor, they wrote in their letter basically, give us question

18   by question what you're going to ask each of these witnesses.

19   We did not see that as a good faith -- and they said they are

20   going to resist every way of us calling these witnesses.  And

21   they also said with respect to any of our discovery requests,

22   we're not even going to essentially talk to you guys until we

23   show up in court on January 2nd.

24        And so suffice it to say our position internally and

25   externally was that the *Touhy* regs don't require us to do

1   anything.  But we've complied with them.  And they had that.

2   They've had it for several weeks.  Everything I just quoted

3   verbatim is not only in our letter, it's in their own

4   pleading and our own pleading, cited to their pleading but we

5   quoted it in a block quote on page 5 of our pleading that we

6   filed.

7           THE COURT:  Okay.

8           MR. PORTER:  Your Honor, you can read the

9   correspondence for yourself.  And you know exactly what they

10  represented in there.  It was nothing close to what he set

11  out here before you today.  There has been no attempt to try

12  to deal with this as ladies and gentlemen, as officers of the

13  court.

14          THE COURT:  They have informed you of some of the

15  subject matter that they wish to delve into in that

16  correspondence.

17          MR. PORTER:  To be precise, they say:  "We reserve

18  the right to question each witness about any issues relevant

19  at the evidentiary hearing about which the witness has

20  firsthand knowledge including but not limited to."  All

21  right.  So now they've opened the gate, wherever they want to

22  go subject to anything they decide they want to do.  That's

23  not good faith compliance with the regulation.  It goes on to

24  say:  "...procedures utilized in connection with the

25  office-wide recusal of the United States Attorney's

1    Office..."  We -- that evidence is the recusal memo itself.

2    Mr. Birmingham wasn't a party to that recusal process.  He

3    doesn't have any knowledge of it.  I do because I was the

4    U.S. Attorney's Office point of contact for that recusal when

5    it was being implemented.  And so you want to put me on the

6    stand, and I'll testify, I'll tell you as an officer of the

7    court how that process unfolded.  If you need that

8    information to help you assess things, I can give that to

9    you.  Mr. Birmingham, Mr. Sison, Mr. Bateman, none of the

10   other support staff people know anything about how that

11   process unfolded.  They weren't part of the discussions with

12   the Department of Justice in terms of that matter.

13          They say they want to talk about the witnesses'

14   knowledge of EDMO personnel that participated in this case.

15   There are only six, and they are identified in the recusal

16   notice.  That's it.  We have implemented -- and you may

17   recall, Your Honor, that Mr. Haning brought this issue up.

18          THE COURT:  Oh, I recall.

19          MR. PORTER:  And Mr. Birmingham went painstakingly

20   through that process with you.  There is a supervisory chain

21   of command in place that involves the U.S. Attorney's Office.

22   We gave them a checklist of procedures to follow.  This is

23   not anything that is unusual or untoward or anything bizarre.

24   We do this regularly and routinely within the Department of

25   Justice.  He responds to the Western District of Missouri in

1      this case and no one else.

2              And the only individuals who have to be appointed as

3      Special Attorneys are the Assistant U.S. Attorneys who appear

4      in the district.  In order to represent the United States,

5      and if you look at the recusal notice itself, it says the

6      U.S. Attorney's Office for the Western District of Missouri

7      is appointed to take over this case.  And it was at that time

8      Acting U.S. Attorney Thomas Larson.  It's now our

9      presidentially appointed U.S. Attorney Tim Garrison.

10             The case is ours.  We step into the shoes and are

11     able to do in this case anything that an Eastern District

12     U.S. Attorney would be able to do in this case.  We don't

13     have to go hand and mouth to the Department of Justice to get

14     permission to do anything.  It's our case.

15             THE COURT:  So the authority -- and I did have a

16     question about the authority of U.S. Attorney Garrison.  Your

17     position is that the Western District of Missouri has the

18     power to prosecute this case in the Eastern District using

19     these Special Attorneys, correct?

20             MR. PORTER:  That is correct.

21             THE COURT:  And how did -- so your position is

22     Mr. Garrison did not need to be sworn in as any type of a

23     Special Attorney in order for this to take place, it's just

24     the office was designated by the Department of Justice to be

25     able to do this?  Is that --

1          MR. PORTER:  Short answer, yes.

2          THE COURT:  Okay.

3          MR. PORTER:  If you look at the notice itself,

4    Judge, which was filed in this case as Exhibit 1 on Document

5    No. 79:  "THIS IS FORMAL NOTICE that Scott Schools, Associate

6    Deputy Attorney General has approved the recusal of the U.S.

7    Attorney's Office for the Eastern District of Missouri from

8    the case, including the investigation and prosecution

9    of..." -- and then it cites the case.  The ADAG authorizes

10   this recusal in accordance with the applicable U.S.

11   Attorneys' Manual.  Schools has assigned this matter to the

12   Western District of Missouri and, pursuant to 28 U.S.C.

13   515(a), directs and authorizes Acting U.S. Attorney Thomas

14   Larson or his successor to conduct any kind of legal

15   proceedings, civil or criminal including grand jury

16   proceedings and proceedings before magistrate judges, which

17   the United States Attorney for the Eastern District of

18   Missouri is authorized by law to conduct regarding this

19   matter and all related matters.

20          Once that is in place we've stepped into the shoes

21   of the Eastern District U.S. Attorney.  Nothing else is

22   needed.

23          And then if you read down it says:  "All Assistant

24   United States Attorneys subsequently assigned to this matter

25   must first be appointed as Special Attorneys in order to

1    appear on behalf of the government in the Eastern District of

2    Missouri."

3            I never intended to be here today, but because this

4    issue was raised and because it has been made so much of a

5    Chicken Little "sky is falling" issue, in order to assure you

6    that the supervisory structure was in place, to assure you

7    that this is being done consistently, appropriately, and with

8    no conflicts of interest, I took the extra step of getting

9    myself appointed so I could be here today to answer any

10   questions you have.

11           As Mr. Birmingham told you in front of Mr. Haning

12   back in that Diversified hearing, we have instituted a

13   supervisory review and approval process.  He went through an

14   entire litany of things that explained what it is and how

15   that supervisory structure has been put in place.  And if you

16   look at the pleading or the transcript of that, I don't know

17   if you've had a chance.

18           THE COURT:  Yes, I have.

19           MR. PORTER:  The suggestion that somehow

20   Mr. Birmingham and Mr. Sison and Mr. Bateman are running

21   around as rogues secretly being directed by Jeff Jensen is

22   ridiculous.  It's absolutely ridiculous, and insulting on top

23   of that.  Everything that is required to be done in order to

24   ensure an actual conflict-free prosecution has been done.

25           Now, he said he wanted to talk about conversations

1    between Jensen and Birmingham in 2016.  That's not in his

2    letter.  Nowhere.

3                THE COURT:  Okay.

4                MR. PORTER:  Nowhere.  He says where are the files

5    stored, U.S. played a role.  Nowhere is that in his letter.

6    This is stuff they are holding onto because they want to

7    ambush the government at this hearing.  They talk about the

8    authority and the title for the grand jury subpoenas.  We

9    don't care.  We told you in response to the Motion to Compel,

10   assume that every single one of them was that way, it still

11   doesn't matter.

12               THE COURT:  I am, by the way, going to assume that

13   every one of them was that way.

14               MR. PORTER:  Because the title on that is not

15   significant or relevant from a legal standpoint.  You know

16   from all of the pleadings that have been filed in every one

17   of these related cases, and if you go back through and look

18   at them, you have time after time after time, government's

19   entry of appearance signed by Mr. Birmingham and Mr. Sison as

20   Special Attorney to the Attorney General.  You go back and

21   you look at the one that was filed by Mr. Bateman, same way.

22   They are all here.

23               There is no question -- well, there is no good faith

24   question about under what authority those subpoenas were

25   issued.  And we all know that at most, at most is a

1    heightened form of arguing form over substance.  There are no

2    facts to suggest they don't exist.  And no amount of

3    questioning by Mr. Birmingham or Mr. Sison or Mr. Bateman is

4    going to change that.

5           They want to know the chain of command.  We've told

6    them what the chain of command is.  We have explicitly

7    affirmed for them what the chain of command is.  They

8    don't -- so what, they say.  They don't believe it.

9           THE COURT:  You gave them that information how?

10          MR. PORTER:  In our pleadings, Judge.

11          THE COURT:  Okay.

12          MR. PORTER:  When we responded to their motion to

13   dismiss and disqualify, we told them explicitly.  I'm

14   standing here as an officer of the court.  And for them to

15   say, oh, that's not good enough, we got to put a witness on

16   for that.

17          THE COURT:  Right.

18          MR. PORTER:  That's wasting your time, Judge.  It's

19   absolutely wasting your time.

20          So we could have had this conversation informally

21   without taking up your time.  They chose not to.  And in our

22   way of thinking that's not on us; that's on them.

23          THE COURT:  Mr. Gelfand.

24          MR. GELFAND:  There's a lot there.  I'm trying to

25   stay particularly --

25

1          THE COURT:  Before we -- I want to cover one thing.

2     With regard to the issue, it seems that the defendant is

3     attempting to make the case that because Mr. Birmingham,

4     Mr. Sison, and Mr. Bateman work in the -- are Assistant

5     United States Attorneys for the Eastern District of Missouri

6     and Jeff Jensen is the United States Attorney in the Eastern

7     District of Missouri, that somehow there is a conflict

8     because they've been appointed Special Attorneys in this

9     case.  Is that correct?  Because Mr. Jensen has the ability

10    to perhaps promote or something along those lines, that he

11    might somehow be able to impact their life through promotions

12    or raises, that sort of thing.  Is that right?

13          MR. GELFAND:  To an extent, Your Honor.  There is an

14    inherent conflict that applies to those three individuals

15    that does not apply, for example, to Mr. Porter or

16    Ms. Mahoney who are not subordinates to Mr. Jensen.

17          THE COURT:  Wasn't this covered in *Sigillito*?

18          MR. GELFAND:  There was no discovery in *Sigillito*.

19    And the reason why was because no one raised this before the

20    appeal.  There was a weird issue on appeal about what

21    standard of review applies because it wasn't raised.

22          THE COURT:  So they did a de novo review if I

23    recall, correct?

24          MR. GELFAND:  They basically said that under either

25    standard of review the defendant loses.  What's interesting

1    in *Sigillito,* though, based on what Mr. Porter just said, and

2    this addresses another issue so I want to make sure that I

3    answer the Court's question.  Which is in *Sigillito* the

4    Eighth Circuit correctly says that under federal law a U.S.

5    Attorney's authority, for example, Mr. Garrison's

6    authority -- in this case it was the prior Western District

7    U.S. Attorney -- is limited to prosecutions, quote, within

8    his district.  That's Section 547 of Title 28.

9         What the *Sigillito* court says is under 515, though,

10   if, in fact, the U.S. Attorney, in this case Garrison and the

11   AUSAs are Special Attorneys, then they have the authority to

12   prosecute someone outside of their district.  And they go on

13   under subsection (b), authority of the Western District U.S.

14   Attorney to prosecute, and they expressly find, presumably

15   based on facts, although I can't imagine that you made this

16   up, because the U.S. Attorney and the AUSAs is the Western

17   District U.S. Attorney's Office were Special Attorneys in

18   this case they had the authority to prosecute *Sigillito*.  The

19   government's argument in this case now seems to be no, no,

20   no, whoever wrote the email in the recusal notice, which

21   again is still not even in evidence.  But to the extent that

22   the Court gives weight to that email --

23        THE COURT:  It's an exhibit to -- right, it's an

24   exhibit to the pleadings.

25        MR. GELFAND:  It's an exhibit.  We have questions

1    about it.  They haven't followed aspects of it.  But to the

2    extent that the Court just considers that on face value, the

3    fact that they read that -- I actually don't read it the same

4    way they do, but the fact that they read that as saying

5    Garrison doesn't have to be a Special Attorney is an

6    irrelevant conclusion when federal law says, yes, he does.

7         And Section 515 of Title 28 says to become a Special

8    Attorney you have to take an oath.  It actually says, I'm

9    reading verbatim from the statute:  "Shall take the oath

10   required by law."  That's the Section 515 that's cited in

11   their recusal email.

12        THE COURT:  But their position is that Mr. Garrison

13   himself is not and does not need to be a Special Attorney,

14   correct?

15        MR. GELFAND:  That's their position, but there's

16   absolutely no --

17        THE COURT:  Their position is that the Western

18   District in this particular case I guess has been designated

19   to have the same powers as the Eastern District.

20        MR. GELFAND:  Which Congress has never given anyone

21   the authority to do.  I mean, that's what makes this so

22   unique.  And by the way, if *Sigillito* is the ballgame -- I

23   mean, we believe there are factual distinctions that matter,

24   we've always said that with integrity from the start.  But

25   candidly, if they want to bank on *Sigillito* we win this

1    argument because in *Sigillito* the Court said that what

2    mattered was that the equivalent of Mr. Garrison was a

3    Special Attorney, not didn't have to be.  And they are the

4    ones that say the exact same thing happened in *Sigillito* has

5    happened here.

6          The other thing, not to put the cart completely

7    before the horse, is that they've said numerous times, even

8    today they've kind of doubled down saying Jensen hasn't done

9    anything in this case.  Jensen, look at all the pleadings, it

10   says Special Attorney, there's no confusion.  And there is

11   some suggestion that we're basically shooting darts in the

12   dark without any reason to ask these questions.

13         Document No. 30, filed in Case No. 4:18-MJ-3357-NCC,

14   filed the same day as the superseding indictment, Your Honor,

15   in connection with a Mercedes-Benz that was alleged as a new

16   forfeiture allegation in the superseding indictment, this was

17   the seizure warrant, quote, unquote, case number that the

18   clerk's office assigned.  Literally the same day -- they

19   apparently thought long and hard about what signature block

20   they were going to use in the superseding indictment.

21   Jeffrey B. Jensen, United States Attorney, and Kyle T.

22   Bateman, Assistant United States Attorney file a pleading

23   with this court.  If you look at this in every docket in this

24   entire case number, there is nothing to even suggest that a

25   Special Attorney acted in connection with this seizure.

1    There is nothing to suggest that Mr. Garrison or

2    Mr. Whitaker -- and this was when Mr. Whitaker had already

3    been installed as Acting Attorney General -- had acted.

4    There are questions -- there is evidence that the Court needs

5    to have before it to rule on these issues.  They are not just

6    limited to the disqualification issues.

7           This document, Your Honor, we asked for the

8    documents in connection with this case.  We've kind of kept

9    emailing saying email them to us, they can't be that

10   voluminous.  We got them by FedEx about 13 days after this.

11   There were 19 Bates numbered pages.  One pleading was

12   excluded from the package we got from the government, this

13   pleading.

14          There are questions that remain that require the

15   Court to at least permit us as a matter of due process to ask

16   the questions and get the answers.  And then the Court can

17   apply this law.  Because their position seems to be if you

18   look at a single email that's basically the recusal notice,

19   then that's the be all end all, you can just rely on that as

20   if it's evidence, as if it's law.  It's neither.  If they

21   want to put on that evidence, if Mr. Porter wants to testify,

22   we're prepared to cross-examine him.

23          THE COURT:  Okay.  Mr. Porter said he would testify,

24   and I think I would take him up on that.  With regard to

25   the -- with regard to how the conflict that you are alleging

1    in the office, I don't think we need testimony.  Let's put it

2    this way.  I don't need testimony about the fact that

3    Mr. Birmingham, Mr. Bateman, Mr. Sison work as United States

4    Attorneys, Assistant United States Attorneys in the Eastern

5    District of Missouri.  I could even take judicial notice of

6    that.  I know that they do.  And I do know that Mr. Jensen is

7    the United States Attorney and has been.

8         I think that it would be -- and so as far as that

9    conflict, the argument of that conflict, I would not think

10   that I would want to have you put one or all of those Special

11   Attorneys, Assistant U.S. Attorneys on the stand to go into

12   their work in the U.S. Attorney's Office.

13        The information regarding how this recusal took

14   place, it would be helpful for me to have testimony and

15   evidence regarding the recusal process in this case.  So if

16   Mr. Porter is the person who can discuss that process, that

17   would be good.

18        I do have to say that the issue -- I know that the

19   government has made an argument that the issue of the

20   signature blocks is -- well, they don't seem to see it as

21   being as important as the defendants do.  But I need some

22   evidence regarding how this -- how this case is being

23   prosecuted under the Western District.  And I don't

24   understand with regard to the signature block on the most

25   recent superseding indictment why that has changed versus the

1    signature block on the previous indictment.  I need some

2    evidence regarding the procedures and processes in that

3    matter.

4            The other -- the issues regarding the -- I know

5    there was a motion to compel those subpoenas, grand jury

6    subpoenas.  It seems to me that the government is admitting

7    that they -- with regard to those signatures -- I guess the

8    form that's being used, it still uses the United States

9    Attorneys' form, is that right?  I'm not quite sure.  They

10   are asking to see the redacted subpoenas for the grand jury

11   and to see I guess if they all are similar to the one that

12   they have the information regarding whether it states

13   Assistant U.S. Attorney on there or their office.

14           MR. PORTER:  That was, in fact, their request,

15   Judge.

16           THE COURT:  Uh-huh.

17           MR. PORTER:  And our response was, essentially

18   that's irrelevant, it's immaterial.  Assume for the sake of

19   the motion or for any other purpose that they all had that on

20   there because it doesn't matter.  It's a form over substance

21   argument.  And that's where we're at in terms of that

22   process.

23           We've also recognized and told the Court in our

24   responsive pleadings, to the extent that there is room for

25   some third party to potentially be confused, we recognize

1    that possibility or potential for confusion and have given

2    the Court our assurances, again, as officers of the court

3    that we'll make sure that that signature block is used in

4    every single process that goes forward.  And to the extent

5    that that -- but that didn't cause any confusion or prejudice

6    to this defendant in any way.

7              THE COURT:  Okay.

8              MR. PORTER:  It just didn't.  It can't.  And they

9    can cry Chicken Little all day long, "The sky is falling, the

10   sky is falling," but we know that it did not -- there's no

11   subterfuge, there's no ruse, there's no man behind the

12   curtain controlling the Wizard of Oz in front of Dorothy and

13   the Tin Man and the Scarecrow and the Cowardly Lion.  That's

14   what they are suggesting.  And it's just ridiculous.

15             So I'm happy to provide the Court with some evidence

16   regarding the signature block, but the reality is because

17   they didn't comply with the *Touhy* regulations, no one today

18   is authorized to do that.  And while I'm willing to do it

19   because I have the knowledge, I'm the fact witness that can

20   supply it, I don't have authorization to testify either.

21             Now, here's a solution, but it doesn't do any good

22   to just spot issues and not be able to address them.  I'm

23   fully prepared to create an affidavit under oath answering

24   that question or any others the Court has.  And if they want

25   then upon receipt of that affidavit to still suggest we need

1    further evidence, we can come back at another time.  But I

2    can't even give you that affidavit until the *Touhy*

3    regulations have been complied with and I've been authorized

4    to do that.

5         THE COURT:  Mr. Gelfand.  If they don't have

6    authorization at this point --

7         MR. GELFAND:  Well, two things.  First of all,

8    that's their fault.  We complied with the *Touhy* regulations.

9    We completely complied with the *Touhy* regulations.  They are

10   the ones that want to call -- and this sounds weird to phrase

11   it in the first person essentially.  They are the ones that

12   want to call Mr. Porter as a witness.  We're ready to put on

13   our witnesses.  They don't get to say, look, I'm going to

14   testify that these are the procedures and answer the Court's

15   questions and be subject to cross-examination, but I am not

16   authorized to do that.

17        The Court set an evidentiary hearing.  We are

18   prepared to put on evidence that is in dispute.  They

19   apparently came with this game of exactly what the cases say

20   the government does not get to do.  It violates due process,

21   which is we're the gatekeepers, not the Court.  They can make

22   a phone call to Mr. Garrison if that's what it takes.  That's

23   exactly the procedure that Judge Robinson in the District of

24   Kansas just apparently instituted a couple of months ago in a

25   similar *Touhy* regs game that the government was playing.

34

1           They can get the authorization, quote, unquote, to

2    the extent that it's even necessary.  The grand jury

3    subpoenas, the reason we wanted to see the facts is, No. 1,

4    they actually represented in a pleading after we made this

5    discovery request that the one subpoena we have is, quote,

6    isolated and aberrant, end quote.  If what they are saying

7    now, which notice they actually haven't said --

8           THE COURT:  They haven't, I know.

9           MR. GELFAND:  If what they are saying now is, well,

10   actually it wasn't isolated or aberrant, let's just assume.

11   What are we assuming?  Were there five subpoenas?  Ten

12   subpoenas?  100?  Were they on different days?  Were they all

13   Mr. Birmingham?  Does that matter?  Our whole position in

14   this case like in any other case in any other factual dispute

15   is let's lay out the facts so Your Honor can obviously apply

16   the law to the facts and have a real factual foundation so

17   that if somebody appeals a Report and Recommendation that

18   Judge Sippel applying a de novo review has the full factual

19   record.  I don't even know what we're being asked to assume

20   literally.  Are we being asked to -- instead of being asked

21   to assume anything, why not just lay the facts out.  If they

22   can give us numbers, dates, maybe that gets us one step

23   closer.  It just seems -- it seems a little too cutesy.  We

24   just want you to assume stuff.  We're not going to admit that

25   we apparently misrepresented in a pleading that it was

1    isolated and aberrant.  The only reason we know is because we

2    managed to get our hands on one subpoena.  They didn't

3    disclose any of this, Your Honor, any of this.

4           And so there are questions.  We're prepared to

5    proceed.  I think this is a little bit of a game.  The Court

6    set an evidentiary hearing, set aside several hours of the

7    day, that is clear from the docket.  Maybe that was a

8    coincidence, maybe that was intentional.  Mr. Haning is here

9    from Texas.  And obviously he'll be here again if that's what

10   has to happen.  He's obviously the defendant in the case.

11   But they are here from Kansas City and yet their position is,

12   well, we can't do anything today.

13          There is a lot of facts that we intend to elicit

14   that are relevant and the Court can consider those as the

15   Court wishes.  Maybe some the Court finds important, some the

16   Court doesn't, but we need the facts so that they can be

17   evaluated.  That's what we do.

18          THE COURT:  Yes.

19          MR. PORTER:  One last word, Your Honor.  You know,

20   when you write a letter to opposing counsel and express a

21   willingness to dialogue and you get nothing in response, when

22   you file a pleading on the 27th of December and you drop a

23   footnote on page 1 of that pleading saying, hey, Court, we've

24   got an issue out here with respect to this subpoena that is

25   coming, and you alert the other side what your concerns are,

1   and you still get radio silence, who is playing games?  So

2   I'm at a loss quite frankly to understand this whole --

3          THE COURT:  Can I ask you this.  I don't know that

4   we're going to get into all of the things that the defendant

5   wishes to elicit with regard to testimony.  We do have -- you

6   and counsel are here from Kansas City.  Mr. Haning is here

7   from Texas.  We do have the time set aside with the court

8   reporter.  We have this time for this hearing.  And I would

9   like to get some of this hearing done even if we don't get

10  everything done today.

11         Is it possible for you to get authorization from

12  Mr. Garrison for you to testify about the recusal procedure?

13  Because I would like to have that information.  Information

14  about the recusal procedure and whatever information -- I am

15  concerned about what the authority is for Mr. Garrison to --

16  whether Mr. Garrison -- and you've set it out in the

17  pleadings, but I do have a question about -- the concern has

18  to do with the *Sigillito* case stating that the Western

19  District U.S. Attorney/Special Attorney versus in this case

20  where it does not appear that we have evidence that the

21  Western District U.S. Attorney has been designated a Special

22  Attorney, and so I'd like to clear that up, whether that's

23  necessary or not.  But if I could at least with regard to the

24  recusal procedure get some information there.

25         With regard to those subpoenas for the grand jury,

1    if the government does not wish to turn over the redacted

2    subpoenas just showing what the signature block said then I

3    would at least need something from the government stating

4    whether what the defendants believe is true is that the

5    signature blocks are the same as the one subpoena that they

6    have.  So just some evidence.  It doesn't matter to me

7    whether you turn over the redacted ones or just make an

8    admission that they all have that signature block as opposed

9    to me making the assumption.

10           So at this point I'm saying I am not going to

11    require that Mr. Birmingham or any of the Assistant U.S.

12    Attorneys testify today.  I just want to get the information

13    about the recusal procedure and whatever other witnesses you

14    have regarding Mr. Jensen's activities in this case

15    beforehand.  I don't think anyone -- no one has ever stated

16    that there was not -- that Mr. Jensen's representation of --

17    he actually represented --

18           MR. PORTER:  Wilbur Ellis.

19           THE COURT:  -- Wilbur Ellis.  And I guess at some

20    point the law firm represented Mr. Haning.  I don't know if

21    Mr. Jensen directly represented Mr. Haning.  You've stated

22    that he didn't, but that is something I guess we can get

23    cleared up or maybe something that you want to present

24    evidence about.

25           But the recusal took place.  And so to me the most

1    important thing is was this recusal process done in the

2    correct manner.  That way when I make my decision and it is

3    appealed, we have a record.  So --

4              MR. PORTER:  I'm trying to take notes, Judge.

5              THE COURT:  Yeah.

6              MR. PORTER:  Recusal procedure.

7              THE COURT:  Yes.

8              MR. PORTER:  Signature --

9              THE COURT:  And the signature blocks, yes.

10             MR. PORTER:  Signature block.

11             THE COURT:  Right.

12             MR. PORTER:  The issue with respect to whether the

13   Western District of Missouri U.S. Attorney in the *Sigillito*

14   case was appointed as a Special Attorney.

15             THE COURT:  Yeah, that would be good to know.

16   Because that's an Eighth Circuit case, so I would have to

17   follow it.

18             MR. PORTER:  And those are the three -- as I've

19   written them down, those are the three issues that are of

20   concern to you?

21             THE COURT:  Those are the issues that are of concern

22   to me.

23             MR. PORTER:  And now to come back to your first

24   question about whether I can get authorization from

25   Mr. Garrison today to testify to those things.

1           THE COURT:  Uh-huh.

2           MR. PORTER:  The answer unfortunately is no.

3    Mr. Garrison is in Colorado.  He's on a family vacation with

4    his wife and three children.  He's not even in the district.

5    So can I get that done today?  No.  Can I get it done within

6    a reasonable amount of time?  Absolutely.  And are we

7    prepared to provide the Court with a sworn affidavit that

8    addresses all those and then let them do with it whatever

9    they want or come back for another hearing, of course.

10          But if they had even -- I'm sorry, Judge, I wish we

11   weren't in this place.

12          THE COURT:  Me too.

13          MR. PORTER:  But when we asked for these things and

14   we have to wait until we're in front of you to get the full

15   description of it when this all could have been avoided if

16   there had been a good faith effort to even have a

17   conversation.  I never even had a word with Mr. Gelfand until

18   today when he introduced himself to me.  He's never even

19   bothered to pick up the phone despite the fact that we've

20   offered to have a conversation.  So, I'm sorry, I really wish

21   we weren't here having to go through this.

22          But those three issues; the recusal procedure, the

23   signature block, the status of the U.S. Attorney in the

24   *Sigillito* case, we can address those issues for the Court's

25   satisfaction.

1          THE COURT:  For purposes of the -- oh, yeah, and

2     supervision.  I know that it was set forth in a previous case

3     but it's not of the record in this case, so the chain of

4     command, that would be helpful as well.

5          MR. PORTER:  And if you'll give me just a moment,

6     I'd like to confer with Mr. Birmingham for just a moment with

7     the Court's permission --

8          THE COURT:  Okay.

9          MR. PORTER:  -- on the grand jury subpoena issue.

10         THE COURT:  Yes.

11         MR. WILLIAM MARGULIS:  Do you care if I stand up and

12    stretch, Your Honor?

13         THE COURT:  Everyone can.  How about that.  I would

14    like to myself after an hour.

15         (There was a brief recess.)

16         MR. PORTER:  Here's what I can tell you about the

17    grand jury subpoenas, Your Honor.  It is a preprinted form.

18    It is not a signature block.  What's listed on there is the

19    government attorney who is requesting issuance of the

20    subpoena.

21         THE COURT:  Okay.

22         MR. PORTER:  There is no signature.  The only

23    signature that appears on the subpoena is that of the Clerk

24    of the District Court.  Those forms are preprinted.  They are

25    issued by the Clerk's Office to the U.S. Attorney's Office

1    and then the individual text or description of each

2    subpoenaed item is inserted.  And it's already preprinted

3    with the title Assistant U.S. Attorney on it.

4              THE COURT:  Okay.

5              MR. PORTER:  Also on that subpoena is our internal

6    file number which has been designated as a recusal case

7    internally to ensure quality control and maintenance of that

8    information within the recusal chain of command.  So it's a

9    safeguard, if you will, to ensure that it is not used or part

10   of the rest of the office, only those who are authorized

11   under the recusal to have access to that information.

12             Pat Rockers is one of the support staff members who

13   was exempted from the recusal.  She's the one who has

14   prepared each and every single subpoena.  So they are all

15   going to look the same way.

16             So it's a preprinted form.  It's not a signature.

17   It identifies the attorney who has requested it.  And to

18   ensure that we can internally keep it separate and within

19   that recusal, it's got that recusal internal file number on

20   it.

21             THE COURT:  So all of them were the preprinted forms

22   that said Assistant United States Attorney, correct?

23             MR. PORTER:  Correct.

24             THE COURT:  So with regard to your suggestion that

25   you would answer the questions that I have in the form of an

1    affidavit, I would rather have you testify live.  So I would

2    like for you to get permission from Mr. Garrison.  And we can

3    set this portion -- continue this portion of the hearing so

4    that you can testify, because I do believe that the

5    defendants should have the opportunity to cross-examine you.

6              MR. PORTER:  I look forward to it, Judge.

7              MR. GELFAND:  Can I clarify one thing on the grand

8    jury, Your Honor?  I don't know if the ELMO is working.

9              THE COURT:  Of course it's working.  Yes, I see it.

10             MR. GELFAND:  Can the Court see the document?

11             THE COURT:  I can.

12             MR. GELFAND:  The portion of the subpoena, we've

13   marked it as Exhibit 5.  Ignore that for purposes of this.

14   I'm a little confused as to what they are saying.  There is a

15   preprinted portion and text on the court form.  But the

16   portion that's inserted is not at all preprinted.  And unless

17   I'm misunderstanding the government's representation, it

18   appears that they inserted Mr. Birmingham's name and

19   Assistant U.S. Attorney, his title, and then the main contact

20   info including the main phone number for the U.S. Attorney's

21   Office.  So if anyone had any questions about the subpoena,

22   they are not calling one of the recused people, they are

23   calling the receptionist who is not recused or who is

24   recused, is not exempt from the recusal.

25             And so there are still questions that remain.  And

1   the other question is how many subpoenas and how many dates

2   are we talking about?  In a weird world where the government

3   is saying let's just make assumptions about all this stuff, I

4   would rather just get all the facts on the table.  If we

5   don't get to see the documents, so be it, but I think those

6   are relevant questions.

7            THE COURT:  You'd like to know the number of

8   subpoenas and the dates of subpoenas.

9            MR. GELFAND:  The numbers of subpoenas and the dates

10  that they were issued.  Or at least the number of dates.

11           THE COURT:  Not the dates, just the number of dates.

12           MR. GELFAND:  Correct.

13           THE COURT:  All right.  Could we get that?  Yes.

14           MR. PORTER:  Excuse me, Judge, I'm sorry.  I'm at a

15  slight handicap because the practice in the Eastern District

16  of Missouri doesn't exactly parallel what I'm familiar with.

17           THE COURT:  So maybe we do need Mr. Birmingham to be

18  able to testify a little bit about some of the practices then

19  when --

20           MR. PORTER:  What Mr. Birmingham is prepared to

21  respond to right now is the issue that Mr. Gelfand just

22  mentioned.

23           THE COURT:  Okay.  The preprinted, his name on

24  there.  Okay.  Mr. Birmingham.

25           MR. BIRMINGHAM:  Good afternoon, Your Honor.  I'm

1    happy to stipulate as to the appearance.  Without getting

2    into any grand jury matters or talking about it I can tell

3    you that most investigations started in late 2015.  Maybe the

4    first subpoena would have been the very end of 2015, January

5    of 2016.  And up until defense motion, the form appears the

6    way it appears as defendant's exhibit.  Meaning a grand jury

7    subpoena typically coming -- that I request would typically

8    take this route.

9            The agents and I would talk about the attachment, in

10   other words, what we are actually looking for.  I don't see

11   the form itself, how it goes out.  It's my understanding that

12   it's a preprinted form, meaning there is a form for the

13   Eastern District of Missouri for a grand jury subpoena.  And

14   it says in the preprinted form, please identify the U.S.

15   Attorney or Assistant U.S. Attorney requesting the form.  And

16   then there's also an additional block which identifies

17   Assistant U.S. Attorney, the address, and the phone number.

18   It doesn't identify Assistant United States Attorney for the

19   Eastern District of Missouri or anyplace else, just that

20   block.

21           What is then added based on -- from each legal

22   assistant is the particular individual requesting it.  So

23   what would be added from my assistant, Pat Rockers, who is

24   part of the recusal carve-out is the name, either myself or

25   Gil Sison or Kyle Bateman, and the case number.  That is all

1     that's added to the form.  And that -- but for purposes there

2     is no signature.  So I don't see the form.  My only

3     discussion would be on the substance, what are we actually

4     requesting from any individual witness.  And that's going to

5     be the same in any case.  So that's the procedure.

6            In terms of wondering how does it appear on any

7     particular one over the course of the case, up until this

8     issue was raised, until we represented in a filing that we

9     would endeavor to make sure that that Special Attorney

10    designation appeared wherever we were looking for, the Court

11    and the government stipulates it appears in that fashion.  So

12    to the extent that there is grand jury subpoenas where I've

13    requested them, it's going to designate the requesting

14    individual as Charles S. Birmingham, Assistant United States

15    Attorney.

16           THE COURT:  So can you provide to the defendant the

17    number of subpoenas that have that particular information in

18    them, the number of dates.  So he's asking for the number of

19    dates and the number of subpoenas, correct?

20           MR. GELFAND:  Yes.  And we're happy to limit it to

21    after the recusal.

22           THE COURT:  I'm sorry?

23           MR. GELFAND:  With Mr. Birmingham's clarification if

24    the investigation obviously predating the recusal, we're

25    happy to limit to after that.

1          THE COURT:  Okay.  So after the recusal, for those

2   subpoenas after the recusal.

3          MR. BIRMINGHAM:  I'm happy to stipulate before and

4   after.

5          THE COURT:  Okay.

6          MR. BIRMINGHAM:  It's a complex case with multiple

7   subpoenas.  So I would say between 2016 and the recusal date

8   where the Eastern District of Missouri was recused where I

9   was appointed a Special Attorney, there are probably an equal

10  number before that date and after.  So I would say 50 to 100

11  both before and after that time frame, with the most -- I'm

12  hesitant to get into grand jury matters, but there is -- the

13  Court is safe in assuming that there is investigative steps

14  taken both before the Motion to Dismiss and after the

15  government made its response on this particular issue.  So

16  the government so stipulates.

17         THE COURT:  Also, Mr. Porter, one of the other -- in

18  discussing the authority of the Western -- of Mr. Garrison,

19  you stated you would look into what actually happened in the

20  *Sigillito* case.  But what I guess my real question is, why it

21  is that your office believes that it is not necessary to have

22  Mr. Garrison designated as a Special Attorney.  And I think

23  that would be part of the subject matter of the inquiry when

24  you return to testify.

25         MR. PORTER:  Your Honor, I've added that to the

1    list --

2            THE COURT:  Okay.

3            MR. PORTER:  -- of why Mr. Garrison does not have to

4    be appointed as a Special Attorney to the list about the

5    recusal procedure, the signature block, the status of the

6    U.S. Attorney in the Western District in the *Sigillito* case,

7    and our supervisory chain of command.

8            THE COURT:  Yes.

9            MR. PORTER:  Those are the issues I will ask

10   Mr. Garrison to authorize.  And we will be able to provide an

11   answer.

12           THE COURT:  Okay.

13           MR. PORTER:  I'm going to assume the best, Your

14   Honor, that the authorization will be given and that we're

15   not going to come back here at a subsequent date to hear

16   something else.  But I'm not the decision maker, I can't make

17   a promise, but that's going to be my hope.

18           THE COURT:  Well, I would hope that you would let us

19   know that the authorization has been given before we set it

20   for a continuation of the hearing.

21           MR. PORTER:  Of course.

22           THE COURT:  Okay.

23           MR. PORTER:  Of course.  And it's never been my

24   practice to not try to communicate with the Court or with

25   opposing counsel.

1          THE COURT:  All right.

2          MR. GELFAND:  So to clarify, are we prevented from

3     calling Mr. Birmingham, Mr. Bateman, and Mr. Sison on issues

4     other than --

5          THE COURT:  What issues?  I mean, I really -- I

6     guess my problem is I'm just not quite sure what issues they

7     would be able -- what I would need testimony on.

8          MR. GELFAND:  I think we're talking about the same

9     general topics, but I think that, you know, one of the issues

10    that the Court has raised is the issue of essentially how has

11    the recusal process played out practically.  Because I think

12    everyone can agree that having a memo regardless of what

13    weight the Court gives that that says the following is

14    supposed to happen doesn't necessarily mean that it has

15    happened.  And when it comes to specifics of, you know, where

16    -- I don't know what Mr. Porter personally has firsthand

17    knowledge of or doesn't, where documents are stored, where --

18    who has access to these documents, who in this office as

19    opposed to Kansas City has --

20         THE COURT:  They have six people designated.

21         MR. GELFAND:  But that doesn't mean they are the

22    only six people who've either received information about this

23    case or otherwise.  And I think that it's Mr. Haning's right

24    to ask those questions.  And if the answers are as simple as,

25    no, I've never discussed this, the receptionist in the U.S.

1    Attorney's Office has never done anything in connection with

2    this case because it's an office-wide recusal, then I think

3    that we should be permitted to ask those questions and get

4    those answers.  Because right now all we're told is that six

5    people are essentially carved out, to borrow their phrase, of

6    the recusal, but as a practical matter they haven't followed

7    many of the terms of the recusal notice.  And so we know that

8    for sure.  Now the question is to what degree and does that

9    matter.  They are just facts that I think we are entitled to

10   elicit.  They are very narrowed, they are limited.

11          But at least for *Touhy* regulations purposes I'd hate

12   to be in a position where I guess the government,

13   notwithstanding that it's our motion, is putting on

14   Mr. Porter as their witness at the continuation of this

15   hearing.  And to the extent that he lacks firsthand knowledge

16   about something that one of these other witnesses says --

17          THE COURT:  So the only thing you would want to --

18   because my thought was one of the things you wanted to talk

19   with the Special Attorneys about had to do with their

20   relationship basically with Mr. Jensen and the office and

21   whether there was a conflict still -- an actual conflict with

22   Mr. Jensen being the U.S. Attorney in the Eastern District,

23   and they being Special Attorneys who are also working in the

24   Eastern District.  So you do not want -- you are not

25   intending to get into that, correct, just how the recusal

1    process is being carried out in the office?

2          MR. GELFAND:  And communications with anyone other

3    than these six people, if anyone, yes.  I mean, if the Court

4    is saying that -- and I appreciate that, but we started with

5    the premise that it's an evidentiary, it's a blank slate,

6    it's our motion.  If we've got to establish that they are

7    full-time AUSAs and Mr. Jensen decides that they get raises,

8    we think those facts at least matter, they are relevant.

9          If the Court is basically saying, look, I'm going to

10   take judicial notice or the government is not caring about

11   them, fine, we don't need to spend any more time on that.

12         But I think the issues that directly relate -- I

13   don't know what knowledge Mr. Porter has about these issues.

14   I don't want to be in a position based on what I've observed

15   today where we say, Judge, I think -- and maybe this won't

16   happen, but, Judge, I think Mr. Birmingham is the next

17   witness, and they are like *Touhy* regs.  And so I would like

18   them to get authorization.

19         THE COURT:  Okay.  All right.  Mr. Porter.

20         MR. PORTER:  I think you now -- with that statement,

21   it's crystal clear that they want to go fishing.  We've

22   already told them what the chain of command is.  We've told

23   them.  And Mr. Birmingham, when the Diversified hearing cited

24   for you in the record all of the things that we've already

25   instituted for that chain of command.  That's not good

1    enough.  As an officer of the court his statement to you

2    isn't good enough.  He doesn't need to be a witness.  I

3    frankly don't need to be either.  But I'm more interested in

4    making sure you have what you want in order to rule this

5    motion.  And I know what the contours are.  You've been kind

6    enough to explain what's of concern to you.  I appreciate

7    that.  And I'm going to do everything in my power to be able

8    to provide that information.

9          THE COURT:  I am going to deny your request to have

10   Mr. Birmingham testify about the procedures within the

11   office.  He is an officer of the court.  And we have

12   information in the pleadings stating who in the office is

13   authorized to or has been carved out in this case.  And I am

14   going to take that at face value.

15         MR. GELFAND:  Can I make two proffers?

16         THE COURT:  Sure.

17         MR. GELFAND:  I'm going to submit to the Court, Your

18   Honor, just by way of proffer, both of which -- well, all of

19   which I believe are technically documents the Court can take

20   judicial notice of anyway.

21         THE COURT:  All right.

22         MR. GELFAND:  The first is premarked as Government

23   Exhibit 9.  We would like permission to call Kyle Bateman as

24   a witness to testify about this pleading that he filed making

25   representations as an officer of this court that he's acting

1    as an Assistant U.S. Attorney under the authority of Jeffrey

2    Jensen as United States Attorney for this district in

3    connection with seizure warrants directly related to the new

4    forfeiture allegation in the superseding indictment.  It was

5    filed November 29th, 2018, the exact same day as the

6    superseding indictment.  And I believe that Mr. Haning is

7    entitled to ask Mr. Bateman about this pleading.

8           Because what we keep hearing from the government is,

9    well, we're officers of the court, look, we're not doing any

10   of these things that they are claiming.  What it appears,

11   there's literally not a single document in this case number,

12   the MJ case number that would even suggest that Special

13   Attorneys were handling this matter, that Mr. Garrison was

14   involved, that Mr. Whitaker was involved, that Mr. Porter or

15   Ms. Mahoney were involved.  There is pleadings that clearly

16   not only suggest but represent that Mr. Jensen and

17   Mr. Bateman as an AUSA for the Eastern District of Missouri

18   acted in connection with that.

19          That's the most recent significant thing to happen

20   in this case.  This was filed, Your Honor, after we raised

21   this issue.  That's an important issue.

22          THE COURT:  Okay.

23          MR. GELFAND:  I would like permission to call

24   Mr. Bateman and inquire about that.

25          The second issue is premarked as Exhibit 2.  This

1    I'm not entirely sure --

2         MR. PORTER:  By the way, Your Honor, they may be

3    premarked, but they didn't share those with us in advance of

4    the hearing, so you and I are learning about these together

5    for the first time.

6         MR. GELFAND:  With all due respect to Mr. Porter,

7    this was filed by the government as a pleading, and

8    Mr. Porter presumably supervised the filing of this.

9         MR. PORTER:  I'm talking about this statement, this

10   is premarked as an exhibit.  They may have marked it as

11   exhibit --

12        THE COURT:  You have not shown them the exhibits?

13        MR. GELFAND:  The marked version.  I mean, this is a

14   pleading the government filed.

15        MR. PORTER:  They never -- did not have the courtesy

16   of seeing that at any time.

17        MR. GELFAND:  With all due respect it should have

18   been disclosed to us.  We had to get it from the clerk's

19   office, and the government filed the case.

20        MR. PORTER:  With all due respect it was disclosed

21   to them.

22        THE COURT:  Okay.

23        MR. GELFAND:  Not by the government.  To be crystal

24   clear the government has never shown us that document.

25             This set of documents, which we'll provide

1   Mr. Porter a copy of it, it's a list of ECF filings in this

2   case.  It's not intended to represent the totality of ECF

3   emails that would drive us all completely insane.  What's

4   significant about this is that if we look under

5   Mr. Birmingham's name, we see that Mr. Milton McDaniel gets

6   copies of every pleading in this case.  If we look at

7   Mr. Sison's name, we see that Erica Wall gets copies of every

8   pleading in this case.  If we look at Mr. Bateman's name, we

9   see that Danielle Floyd, Milton McDaniel, Stephanie Haar,

10  these are all full-time employees of the U.S. Attorney's

11  Office that are receiving ECF notices of every filing.  That

12  includes knowledge that filing -- if they are ex parte

13  filings, for example, you know, a new motion or something

14  dealing with bond, if they are sealed filings.  These people

15  are getting knowledge of this case that we don't have and

16  that the general public doesn't have when they should be

17  subject to less information vis-a-vis the recusal.

18          We have a good faith basis to inquire about these

19  things.  And these are facts that are inconsistent with them

20  saying we're officers of the court, we've got this list of

21  six people.  And these are what we want to actually elicit

22  testimony about.  They matter when it comes to an office-wide

23  recusal and the office is approaching this case no

24  differently than any other case than they have in this

25  district.

55

1          THE COURT:  I think he has a point.  It's my docket

2     text order that went out, so I sent it to all of those people

3     apparently through ECF.  But --

4          MR. PORTER:  Anyone, anyone logging onto CM/ECF

5     would have access to that information through CM/ECF.  This

6     is not getting access to anything that's not generally

7     publicly available to anyone in the world.

8          Does this suggest, is the inference here that

9     somehow Milton McDaniel or Erica Wall or Stephanie Haar

10    participated in the process that led to you issuing a docket

11    text order?  Of course not.

12         And is the -- what is the logical or even reasonable

13    inference that's drawn from the fact that someone gets a

14    CM/ECF notice?

15         THE COURT:  Do you have a firewall, which I'm

16    assuming that is the point of this office-wide recusal?  If

17    you have a firewall, you probably should not have additional

18    people other than the five people or six people who are named

19    as part of the carved out group getting notices.  Because if

20    they are getting these notices, I don't know what else they

21    are getting.  But if that's how it's set up -- I mean, it

22    just has to do with how it's set up in the office for the

23    notifications to take place.  And it would seem that if we're

24    talking about the process of this recusal, this office-wide

25    recusal, how does the office-wide recusal work in the office?

1    You are in Kansas City.  So it may be the fact that

2    Mr. Birmingham or Mr. Bateman would be able to explain a

3    little more clearly how this recusal process has been working

4    in their office.

5          And I don't know that you would be the person who

6    would be able to discuss that.  And I do understand, yes,

7    anyone can get access to the ECF files.  But I guess the

8    problem or the issue that I'm having here is we have a

9    mistaken or wrong signature block here.  We have a set of

10   subpoenas that are going out that have information that was

11   not correct.  If the attorney is supposed to be a Special

12   Attorney, he should be designated as a Special Attorney and

13   not an attorney for the Eastern District of Missouri.

14         It's the number of things that call into question

15   how this office-wide recusal is working.  I guess that's my

16   concern that Mr. Gelfand is bringing up.  And so to -- I

17   don't think that it is unfair for the defendant to have an

18   ability to inquire when he has filed a Motion for

19   Disqualification for him to inquire about how this recusal is

20   taking place.

21         And so given what he has proffered regarding the

22   unsealing order in the MJ case and how things are being

23   disseminated through ECF, I am going to change my mind and

24   say that I want to be able to hear from Mr. Bateman and

25   Mr. Birmingham about how the office-wide recusal process is

1    working within the office.

2              MR. PORTER:  Judge, I understand -- let me take a

3    moment if the Court will permit.

4              THE COURT:  No problem.

5              (There was a conference held off the record between

6    Mr. Porter and Mr. Birmingham.)

7              MR. PORTER:  I understand the Court's change of

8    mind.

9              THE COURT:  Yes.

10             MR. PORTER:  And since you've shown a willingness to

11   change your mind, perhaps you'll change it again.

12             THE COURT:  Okay.

13             MR. PORTER:  The relevant conflict of interest

14   issue, Judge, is not the appearance.  The *Sigillito* case said

15   appearances are not enough.  It's an actual conflict.  And

16   there is no reasonable inquiry into Mr. Bateman or

17   Mr. Birmingham to show that they have an actual conflict,

18   financial, personal, or otherwise that would preclude them

19   from being able to represent the United States as a Special

20   Attorney under the supervision of individuals who are also

21   conflict free.

22             THE COURT:  Here's the situation, though.  The

23   office, it has been deemed that there is a conflict because

24   Mr. Jensen is the United States Attorney.  And then there was

25   a decision to recuse the office.  I guess the question is, is

58

1    the office -- is there actually -- is the firewall there, is

2    the recusal -- the process of the recusal actually taking

3    place?  Are the guidelines being followed?

4            I understand your position.  I think I would just

5    like the information.  And it's limited.  It's limited to the

6    issue of the recusal.  Because if there's been a decision to

7    carve out these individuals, except that there's really not a

8    carve out, then, you know, is it -- is this really -- I guess

9    the question is, has the office actually been recused?

10   Because we've established that there is a conflict, otherwise

11   the recusal wouldn't have taken place.

12           MR. PORTER:  And the individual who had the conflict

13   has been recused.

14           THE COURT:  Okay.  So in that case then why carve

15   out six people?  Why not just carve out one and just say he

16   has nothing to do with this?  You know, I mean, there was a

17   decision made to --

18           MR. PORTER:  I can speak to that issue --

19           THE COURT:  Okay.

20           MR. PORTER:  -- when I have authorization to do so.

21           THE COURT:  Okay.  Anyway, I didn't change my mind.

22           MR. PORTER:  Okay.  I understand what my marching

23   orders are in terms of the conversation I need to have with

24   Mr. Garrison.

25           THE COURT:  Thank you.

1          What do you have next?  Are you putting on a

2     witness?

3          MR. GELFAND:  I'm happy to, Your Honor.

4          THE COURT:  Okay.  We can take a break beforehand.

5          MR. GELFAND:  Only if the court reporter --

6          THE COURT:  We'll take a break.  It says 3:05 on

7     here.  Why don't we take like a ten-minute break and come

8     back at 3:15.

9          MR. GELFAND:  Sure.

10          (Court in recess from 3:05 p.m. until 3:16 p.m.)

11          THE COURT:  Mr. Gelfand, you may call your witness.

12          MR. PORTER:  Your Honor, before we proceed may I be

13     briefly heard?

14          THE COURT:  Sure.

15          MR. PORTER:  If I can hand this up to the Court.

16          THE COURT:  Okay.

17          MR. PORTER:  On Wednesday of last week we received

18     that document from Mr. Murphy of the Margulis Gelfand firm.

19          THE COURT:  Okay.

20          MR. PORTER:  And it was represented as billing

21     records that they had received from the Husch Blackwell law

22     firm in response to a request from Husch on behalf of their

23     former client Mr. Haning.  They then also included a proposed

24     two-page factual stipulation and asked us for an agreement

25     for the stipulated admissibility of the document you have in

1    front of you as well as the factual stipulation that they

2    proposed.

3            That same day we responded and asked them to

4    identify the name of the Husch Blackwell witness that they

5    represented was under subpoena, because they told us that the

6    reason they sought the stipulation was to avoid the need to

7    call the Husch Blackwell witness.  So we said, okay, tell us

8    the name of the Husch Blackwell witness you have under

9    subpoena, identify the name of the person at Husch Blackwell

10   that produced the billing records that were provided to you

11   so that we might be able to do our own due diligence prior to

12   entering into any such stipulation.

13           The response that we got two days later was, "We are

14   under no obligation to provide the information you've

15   requested and at this time we decline to do so."

16           Well, I'm not in a habit of wasting a court's time,

17   Your Honor.  So we then had the opportunity to have a

18   conversation with the general counsel for Husch Blackwell who

19   did provide us with some of the information that we had asked

20   the defense to provide that they said basically go pound

21   sand, we're not telling you anything, we don't have to, we're

22   not going to.

23           So we then proposed to the defense a stipulation

24   regarding business records and expressed our willingness to

25   stipulate to the admissibility of those very billing records

1    saying that we would agree that they are admissible without

2    calling a witness, without laying a foundation, without proof

3    of authentication.  They were admissible under one or more

4    cited exceptions to the hearsay rule and that we wouldn't

5    object to them on the grounds of hearsay, best evidence, or

6    lack of authentication.  We would, however, reserve the right

7    to object to admission based on relevance, materiality, or

8    some other evidentiary objection excluding hearsay, best

9    evidence, or authentication.  They said, "No thanks, we want

10   to call our witness."

11          The billing entries are from the time period of

12   February of 2016 when Mr. Jensen was, in fact, a lawyer at

13   Husch Blackwell, not a fact in dispute.  Don't need any

14   evidence to support that.  Everyone says it's true.  And

15   there is no relevance to a Husch Blackwell witness to get on

16   the stand and say that very thing.

17          So despite our best efforts to try and make this

18   quick and easy and painless and get right to the heart of

19   things, there is no relevant testimony that Randall

20   Mullendore can offer because those billing records speak for

21   themselves.  And they don't say anything about the substance

22   of the conversation.  They don't say anything about what was

23   going on.  And in any case they predate Mr. Jensen becoming a

24   U.S. Attorney.  So the only possible relevance is to show

25   that he has a conflict.  And we've addressed the conflict

1    issue by the recusal.  So where are we going and what are we

2    doing?

3              THE COURT:  Would you like to respond, Mr. Gelfand?

4              MR. GELFAND:  Sure.  To be clear, the email response

5    that Mr. Murphy -- and obviously I was cc'd, I think everyone

6    on the universe was cc'd on everything in this case.  But the

7    email response that Mr. Murphy received requested among other

8    things copies of privileged communication.  Quote:  Please

9    produce the letter issued to William Haning by Husch

10   Blackwell that informed Haning that Husch Blackwell could

11   not, slash, would not continue representing him.  And then

12   the government is unable to consider entering into the

13   proposed factual stipulation until basically we get this

14   among other things.

15             And so we did in good faith, because we do respect

16   obviously the Court's time, but also the witness from Husch's

17   time.  We engaged in a series of conversations.  As I

18   understand it the general counsel from Husch spoke with me

19   quite a bit over the holiday weekend, spoke with Mr. Porter.

20   And the bottom line is we proposed stipulations that are more

21   than just the business records, not much more, maybe three or

22   four more questions more.  And the government was unwilling

23   to stipulate, which is their absolute right.  And so we

24   called our witness.  He's here to testify.  We anticipate his

25   direct will take approximately three minutes, if that.  And

1   we do believe that it's relevant.  I mean, the government's

2   argument that essentially we should be prohibited from ever

3   putting on evidence in this case is I don't think an

4   appropriate objection in this context.

5           THE COURT:  All right.  I will allow you to call

6   your witness.

7           MR. GELFAND:  Thank you.  Your Honor, Mr. Haning

8   calls Randy Mullendore.

9           MR. DYROFF:  Your Honor, if I may approach the

10  lectern?

11          THE COURT:  Yes.

12          MR. DYROFF:  I'm Dave Dyroff, I'm the aforementioned

13  general counsel at Husch Blackwell.  Mr. Mullendore's –– or

14  my firm's prior representation of Mr. Haning included also as

15  you've previously noted Wilbur Ellis Company and some other

16  defendants, so we have some concerns about privilege and

17  confidentiality depending on where the questions go, so I'm

18  here to represent the witness in that regard.

19          Counsel for Wilbur-Ellis is also here.  I think he

20  wins the award, he came from San Francisco.

21          In any event, I just wanted to make my appearance

22  known for the record.

23          THE COURT:  Thank you very much.  And what's the

24  counsel for Wilbur-Ellis's name?

25          Long trip?  Can you tell me what your name is?

1           MR. DYROFF:  You okay?

2           MR. MYERS:  Yeah.  Marty Myers, the general counsel

3     of --

4           MR. MULLENDORE:  Marty, I think you need to sit

5     down.

6           THE COURT:  Yeah.  Are you -- is he okay?

7           MR. MULLENDORE:  I don't think so.

8           THE COURT:  I don't think so either.  Let's go off

9     the record.

10          (Court in recess from 3:24 p.m. until 3:50 p.m.)

11          THE COURT:  We are back on the record in this case.

12    And due to the illness of the gentleman from -- representing

13    Wilbur-Ellis and everything that has happened this afternoon,

14    I'm just going to go ahead and continue this hearing until

15    February 6th at 9:30 in the morning.  And I'm just making

16    sure -- yeah, that should work.

17          And so at that time we will expect that Mr. Porter,

18    Mr. Birmingham, and Mr. Bateman will be able to provide

19    testimony.

20          If you all work out whether Mr. Mullendore really

21    needs to testify, I would suggest if you guys like talk to

22    each other.

23          MR. PORTER:  We've tried to, Judge.

24          MR. GELFAND:  We'll see what they say, Your Honor.

25          THE COURT:  Maybe you should try a little bit more,

65

1    okay.  I mean, seriously if there are things that you can get

2    resolved without having to have an argument here in court, it

3    would be helpful to all of us.  But specifically it sounds

4    like whatever you wanted to present regarding Mr. Mullendore

5    is relatively limited.  And if there's something -- if

6    there's a way for you to work out a stipulation, if you can

7    do that, that would be nice.

8         MR. GELFAND:  We will certainly make efforts towards

9    that.

10        MR. DYROFF:  That is certainly something I would

11   appreciate as well, Your Honor.  Thank you for that

12   suggestion.

13        THE COURT:  Put everything behind and just try to

14   come to -- I mean, really in good faith.  You know, I hear

15   both of you saying, okay, they are playing games, they are

16   playing games.  Well, in my opinion maybe there's a bit of

17   game playing on both sides from my perspective who is someone

18   who spent almost 20 years doing this.  So I would ask that

19   you try to work through everything and get it narrowed down

20   so that we can -- so I can get a record here and then get an

21   opinion out in this case.  All right.

22        I have the briefing on the other issue which

23   involves the authority of the Acting Attorney General.  I

24   will just tell you, Mr. Gelfand, I am somewhat persuaded by

25   the decision that came out of Texas, especially because the

1   President has nominated someone to be Attorney General.  I do

2   look at this as being a temporary assignment.  I'm going

3   to -- I will address it, but I'm just letting you know where

4   I'm going on that one.

5           So I think our issue in this case has to do with

6   whether or not there is any reason to disqualify counsel in

7   this case.  And that's what I'm going to be mostly

8   addressing.

9           Is there anything else we need to address while

10  everyone is still here?

11          MR. PORTER:  Not on behalf of the government, Your

12  Honor.

13          MR. GELFAND:  Not on behalf of Mr. Haning.

14          THE COURT:  Thank you.

15          MR. GELFAND:  Thank you.

16          MR. MARGULIS:  Thank you, Your Honor.

17          THE COURT:  And thank you all for your help with the

18  gentleman who was ill.  And, Mr. Gelfand, apparently you have

19  skills we weren't aware of.

20          MR. GELFAND:  I was an EMT in a past life.

21          THE COURT:  Well, thanks for your help.

22          MR. GELFAND:  No problem.

23          (Court in recess at 3:54 p.m.)

24

25

C E R T I F I C A T E

I, Susan R. Moran, Registered Merit Reporter, in and for the United States District Court for the Eastern District of Missouri, do hereby certify that I was present at and reported in machine shorthand the proceedings in the above-mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes.

I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys in this action, nor financially interested in the action.

I further certify that this transcript contains pages 1 - 67 and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

IN WITNESS WHEREOF, I have hereunto set my hand at St. Louis, Missouri, this 9th day of January, 2019.


_____
/s/ Susan R. Moran
Registered Merit Reporter