IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No.   4:18-CR-00139-RWS-NAB |
| WILLIAM DOUGLAS HANING, | |
| Defendant. | |

**GOVERNMENT'S OBJECTION ON SEPARATION OF POWERS GROUNDS TO PROCEEDINGS TO DISQUALIFY ASSISTANT UNITED STATES ATTORNEYS (OBJECTION #1)**

The United States of America, by and through William P. Barr, Attorney General for the United States, Timothy A. Garrison, United States Attorney for the Western District of Missouri, and Charles S. Birmingham, Special Attorney to the United States Attorney General, respectfully submits the following objection[1] on separation of powers grounds and submits the following in support of said objection.

Because the basis upon which the defendant seeks to disqualify Assistant United States Attorneys from the Eastern District of Missouri from participating in this case is improper and contrary to settled law, the government objects to the Court's further consideration of the defendant's motion to disqualify said prosecutors.  (Docs. 72, 88).   As a matter of law, and absent articulation of an actual conflict, the Judicial Branch should respect and otherwise not interfere with Executive Branch's appointment of any Assistant United States Attorney from the Eastern District of Missouri and accept that those Assistant United States Attorneys, duly appointed as Special Attorneys to the United States Attorney General, are, in fact, authorized to "file

---

[1] The government, in support of this objection incorporates by reference "Objection #2", "Objection #3", and "Objection #4", filed this date by the Government, as if fully set forth herein.

informations, and to conduct in the Eastern District of Missouri any kind of legal proceeding, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates which United States Attorneys are authorized to conduct."   (Government's Attachment 1).

As a matter of the law, the Court should now deny defendant's motion to disqualify duly authorized counsel from representing the government in this matter.  To the extent the Court is inclined to do otherwise and intends to consider granting relief contrary to law, the government objects as follows:

For the past four months, the defendant has mistakenly led the Magistrate Judge into believing that the Court has the authority to disqualify from this case and, presumably, this entire matter, any and all Assistant United States Attorneys from the Eastern District of Missouri based on an imputed (as opposed to an actual) conflict.  Furthermore, for the past four months, the defendant has mistakenly led the Magistrate Judge into believing that the Court has the authority to disqualify from this case and, presumably, this entire matter, any and all Assistant United States Attorneys from the Eastern District of Missouri irrespective of whether any such Assistant United States Attorney have been expressly appointed and authorized to prosecute this case by the Associate Deputy Attorney General of the United States of America.  Every controlling precedent informs this Court that it cannot grant the relief the defendant seeks without violating the principle of separation of powers.

Simply put, this Court does not have authority to disqualify an otherwise non-conflicted Assistant United States Attorney from the Eastern District of Missouri because the appointed United States Attorney for the Eastern District of Missouri has a conflict of interest.  Moreover, the government does not require, as the defendant maintains, the Court's "permission" to authorize

an Assistant United States Attorney from the Eastern District of Missouri to continue prosecuting the case. (Government's Attachment 2). Any evidentiary hearing predicated on the erroneous notion (that this Court has such authority and the government needs such permission) also violates the principle of separation of powers.

The principle of separation of powers constrains this Court from disqualifying any Assistant United States Attorney from the Eastern District of Missouri that does not have an actual conflict. In The Federalist, No. 51 (James Madison), Madison commented:

> In order to lay a due foundation for that separate and distinct exercise of the different powers of government, which to a certain extent is admitted on all hands to be essential to the preservation of liberty, it is evident that each department should have a will of its own; and consequently should be so constituted that the members of each should have as little agency as possible in the appointment of the members of the others.

In *Morison v. Olson*, 487 U.S. 654, 677 (1988), the U.S. Supreme Court stated:

> As a general rule, we have broadly stated that "executive or administrative duties of a nonjudicial nature may not be imposed on judges holding office under Article III of the Constitution. (Citation omitted). The purpose of this limitation is to help insure the independence of the Judicial Branch and to prevent the judiciary from encroaching into areas reserved for the other branches. (Citation omitted).

The principle of separation of powers, and binding Eighth Circuit precedent, prohibits this Court from disqualifying any Assistant United States Attorney from the Eastern District of Missouri based upon an imputed conflict. There is no specific assertion before this Court that United States Attorney Jeff Jensen has involved himself in the criminal prosecution of the defendant. Instead, the defendant seeks to disqualify Assistant United States Attorneys and personnel from the Eastern District based on an imputed conflict. Any such disqualification would be contrary to law and violate the principle of separation of powers.

Defendant asserts only the conclusory claim that there is an "inherent" conflict for those

3

Assistant United States Attorneys to be involved in the prosecution. (Government's Attachments 3 and 4). The inherent conflict arises from the fact that the United States Attorney has an actual conflict. In other words, the defendant seeks to impute the United States Attorney's conflict to other Assistant United States Attorneys in the Eastern District of Missouri and thereby disqualify all of them from the case.

It is undisputed that Jeff Jensen, the United States Attorney for the Eastern District of Missouri, has an actual conflict in this matter. (Government's Attachment 5). It is equally undisputed that the Executive Branch recused the United States Attorney for the Eastern District of Missouri from being involved in the matter. (Government's Attachment 5). In addition, and more importantly, the Executive Branch exercised its exclusive and discretionary authority to simultaneously appoint line prosecutors from the Eastern District of Missouri as Special Attorneys and explicitly and unambiguously authorized those Assistant United States Attorneys (and designated support staff) to investigate and prosecute the case (as they had for the two years prior to Jeff Jensen's appointment). (Government's Attachment 6). The defendant maintains, however, that any Assistant United States Attorney from the Eastern District of Missouri, even ones expressly appointed by the United States Attorney General to work on the case, are subject to disqualification by the Judicial Branch even if they themselves have no actual conflict.[2]

---

[2] The Government filed charges against corporate defendant Wilbur-Ellis Company (Government's Attachment 7) and was prosecuting Wilbur-Ellis at the time of the United States Attorney's appointment. The Government immediately recused the United States Attorney from the matter because he had formerly represented Wilbur-Ellis Company. (Government's Attachment 8). The defendant in this case was an officer and manager of Wilbur-Ellis during the events giving rise to this investigation and prosecution. (Government's Attachment 9).

Last year, the defendant repeatedly informed this Court that "until January 2018, Wilbur-Ellis paid Haning's legal fees and costs of defense in this case consistent with an indemnification agreement. In January of 2018, Wilbur-Ellis refused to continue funding Haning's legal fees or costs of defense. Given the complexity of this case, the very serious allegations and potential consequences, the extremely voluminous discovery, and the benefits of continuity of counsel (**undersigned counsel has represented Haning for several years in this matter**),

Thus, the defendant's motion to disqualify falls squarely within the line of case where a defendant has sought to disqualify an entire United States Attorney Office on the grounds that one member of that office has an actual conflict. There is no precedent to support such relief.[3] The Defendant generally seeks the disqualification of the entire United States Attorney's Office for the Eastern District of Missouri and specifically seeks the disqualification of those Assistant United States Attorneys specifically designated and appointed by executive authority to prosecute the case. The improper relief the defendant seeks has been before the Court for four months and

---

defending this case will require a substantial amount of time, expenses associated with electronic discovery platforms and vendors, and consultation with expert witnesses." (Government's Attachment 10) (Emphasis added).

Thus, it certainly appears defense counsel was content to receive money from Wilbur-Ellis throughout the government's investigation and prosecution and demanded that Wilbur-Ellis continue to pay for his defense after the appointment of the current United States Attorney. Defendant now objects to the prospect that his former employer, and the former employer of multiple family members, will be a "witness against Haning" at trial. (Government's Attachment 11).

The defendant stated that the "EDMO Prosecution Team has built a case against Haning that relies heavily (and unjustifiably) on the credibility of Wilbur-Ellis. This creates an actual conflict of interest for the EDMO Prosecution Team - because a decision to believe that Jensen's former client, Wilbur-Ellis, misled or lied to the Government would require these three prosecutors to reject Jensen's former client's statements and, presumably, to reject Jensen's representations made while in the role of his client's advocate." P.19

So the record is clear, Wilbur-Ellis is not a person, it is a company. Beyond calling the custodian of records for the defendant's former employer, the Government has no idea what in the world the defendant means by referring to Wilbur-Ellis Company as a witness against him. What is clear to the Government, however, is that it was <u>not</u> the occasion of Wilbur-Ellis's local counsel being appointed United States Attorney that brought this "actual conflict" to the forefront of defendant's mind. Instead, the conflict only bubbled to the surface for the defendant after Wilbur-Ellis refused to keep paying his criminal defense attorneys.

Notably, the defendant has simply asked the Court to assume Wilbur-Ellis and Doug Haning interests are conflicted. As evidenced by the proceedings in the parallel civil case (Government's Attachments 12 and 13), the criminal prosecution and conviction of Wilbur-Ellis's former officers and managers do not necessarily benefit the United States Attorney's former client. The opposite is more likely true. The Government points to the dynamics of the relationship between the defendant and his former employer to provide some context to one of the defendant's more absurd suggestions. Specifically, the defendant strongly suggested and implied that line AUSAs from the Eastern District of Missouri would turn a blind eye to less than credible evidence in order to curry favor from Jensen. A review of Government's Attachments 12 and 13 will help reveal the absurdity of at least one aspect of the defendant's conflict analysis.

[3] The defendant has attempted to obscure this case from governing precedent by attaching legal import to the voluntary recusal and the discretionary internal procedures the Executive Branch elected to put in place to avoid even the appearance of conflict. The defendant's hope is that if in some manner, however trivial, the Executive Branch did not comport with its own voluntary recusal protocols that that could somehow form the basis for disqualification of any and all personnel from the United States Attorney's Office for the Eastern District of Missouri.

the requested relief, if granted, first requires the Court to act contrary to law.

The Court would necessarily be acting contrary to law if it disqualified any Assistant United States Attorney or the entire United States Attorney's Office for the Eastern District of Missouri because the United States Attorney has an actual conflict. The defendant revealed his intent to persuade this Court to violate the principle of separation of powers at the outset. "To be clear, Haning is seeking to disqualify the Prosecution Team because, if the U.S. Attorney's Office is recused as it purports to be, there is no compelling reason why these particular AUSA's should be **permitted** to continue prosecuting this case." (Government's Attachment 2) (Emphasis added).

The Eight Circuit considers the holding in *United States v. Bolden*, 353 F.3d 870 (10th Cir. 2003), "strong precedent" contrary to the disqualification of an entire United States Attorney's Office. *United States v. Radosh*, 490 F.3d 682, 686 (8th Cir. 2007). Simply put, "disqualification of an entire U.S. Attorney's Office is unprecedented." *United States v. Cope*, 2006 WL 196966 at * (Jan. 24, 2006). In support of its objection, the government respectfully submits that a substantive review of *Bolden* and related cases is now necessary and that the defense does the Court a disservice by glossing over their precedential import and words of caution. The government now offers a more detailed summary of the binding and unambiguous precedent that should dispose of the defendant's motion and conclude these proceedings.

### *U.S. v. Bolden*

Based on separation of powers grounds, the United States Court of Appeals for the Tenth Circuit in *U.S. v. Bolden* found the District Court's order disqualifying an entire United States Attorney's Office improper and, under the collateral order doctrine, immediately appealable. In so doing, the Tenth Circuit first set forth its jurisdiction to hear the appeal as follows:

6

> *We are strongly influenced by the fact that we can only rarely - if ever - imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office. "[t]he disqualification of Government counsel is a drastic measure..." and even "where it is shown that an Assistant United States Attorney is subject to a conflict of interest, the proper remedy [generally] is to remove that individual, not all of the attorneys in the district, from the case."  Thus, because disqualifying an entire United States Attorney's office is almost always reversible error regardless of the underlying merits of the case, a reviewing court will rarely have to delve into the underlying claim to conclude that the disqualification was unwarranted.*
>
> *Here, the district court disqualified the prosecutor - indeed the entire USA's office. Such an order implicates separation of powers concerns... the current appeal - and most appeals from the disqualification of an entire United States Attorney's office - will raise separation of powers injuries that will allow a court to evaluate the order without reaching the issue of prejudice.*
>
> *The Constitution grants the Executive the power to "take care that the laws are faithfully executed." U.S. Const. art. II, § 3. Although caselaw is admittedly vague on the exact scope of this power, it is clear that this constitutional provision vests the Executive with substantial discretion in choosing when and how to prosecute cases.*
>
> *Because the alleged injury is grounded in separation of powers, we find that appellate vindication would not effectively remedy the alleged harm... The interests protected by the doctrine simply will not abate during the possibly lengthy resolution of this matter, and appellate vindication cannot undo such an invasion of Executive authority.*

*Bolden,* at 875-878 (citations omitted)

The Tenth Circuit then addressed the merits and held:

> *[B]ecause disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify "a specific Assistant United States Attorney ..., not all the attorneys in the office" … In light of these principles, every circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification.*
>
> *Noting these important principles, we reverse the disqualification order for several reasons... Finally, the district court did not indicate that it even considered the separation of powers concerns implicated by the disqualification order.*

*Bolden,* at 879 (citations omitted)

7

Finally, in analyzing the District Court's misplaced reliance on *United States v. Berger*, 251 F.3d 894, 907 (10th Cir. 2001), the Tenth Circuit stated*:*

> *Reading Berger in context makes clear that its suggestion - that attorneys should consider potential conflicts caused by possible violations of specific ethical rules - does not support dismissing the entire USA's office without basing this action on clearly stated ethical violations for each attorney.[4]*

*Bolden,* at 880.

Again, the Eight Circuit considers the *Bolden* case "strong precedent" contrary to the disqualification of an entire United States Attorney's Office and, thus, strong precedent in support of concluding these proceedings and denying the defendant the improper relief he seeks.

### *United States v. Vlahos*

In *United States v. Vlahos,* 33 F.3d 758 (7th Cir. 1994), the Seventh Circuit echoed many of the concerns and considerations expressed by the Tenth Circuit a decade later regarding improper interference with exclusive Executive Power.

The Seventh Circuit summarized the underlying action taken at the District Court level as follows:

> *On June 24, 1993, Judge Duff rejected the Department of Justice's request that its attorney, Peter Ainsworth, be allowed to serve as prosecutor for the case and also disqualified Assistant United States Attorney Marsha McClellan.  The following day, Judge Duff entered an order disqualifying "the United States Attorney's Office" from prosecuting the criminal contempt charges against Dean Vlahos and U.S. Sales Corporation and appointing a private attorney, Darren Watts of the Chicago firm of Altheimer and Gray, to prosecute the charges.*

*Vlahos,* at 759-.

---

[4]There are no allegations of misconduct or ethical violations before the Court as to any attorney for the Government including undersigned counsel. "The Court:   I am not accusing you of anything… I don't believe they are accusing you of anything."   (Government's Attachment 14).

8

Consistent with *Bolden*, the Seventh Circuit held such action immediately appealable.

> *An order disqualifying government counsel in a criminal case, however, is immediately appealable since such an order conclusively determines whether the challenged counsel will be allowed to prosecute, an issue completely independent of the merits of the action, and since - unlike civil cases - if such an order "is not immediately appealable, it is effectively unreviewable.*
>
> *Moreover, even if the collateral order doctrine were inapplicable, the government would be entitled to mandamus relief, since - as is discussed in greater length infra - the district court exceeded the boundaries of its lawful role by prohibiting the designated representatives of the Executive Branch from prosecuting this criminal contempt action.*

*Vlahos,* at 761-762 (citation omitted)

In reversing the District Court's order, the Seventh Circuit held:

> *Furthermore, the attorney assigned by the United States Attorney's Office to prosecute the contempt charges after the disqualification of Mr. Logan understood the nature of her role and was not under a conflict of interest.   Since the United States assigned an attorney aware of her duties and free of any conflicts of interest, the district court had no reason to disqualify her or her office…*
>
> *The United States Attorney's Office was ready and able to prosecute the criminal contempt charges against Vlahos and U.S. Sales Corporation.   The district court therefore erred when it appointed a private attorney to prosecute those charges.   The order of the district court disqualifying Ms. McClellan and the United States Attorney's Office is vacated.   On remand the case shall be reassigned by the district court to a different judge pursuant to Circuit Rule 36.*

*Vlahos*, at 762-763 (citation omitted).

*United States v. Whitaker*

In *United States v. Whitaker*, 268 F.3d 185 (3rd Cir. 2001), the Third Circuit cautioned against the Judicial Branch using a mistake by the Executive Branch as an excuse for violating the doctrine of separation of powers.

In *Whitaker*, a paralegal from a United States Attorney's Office inadvertently sent a copy of letter intended for victims of scheme in which automobiles were stolen and dismantled by "chop shop" to the defendant being investigated for his alleged participation in scheme.   In response, the District Court disqualified the Assistant United States Attorney Reed and the entire United States Attorney's Office.   On review, the Third Circuit held:

> *It is perfectly clear that the district court had no basis to disqualify the United States Attorney in this case. The undisputed facts are that Reed did not intend that the January 29 letter be sent to Whittaker or any other person who the Government believed had cooperated in an insurance give-up.  Unfortunately, a paralegal in his office did not follow his mailing instructions.  But, as even the district court recognized, Reed acted in good faith.  The worst thing that can be said about Reed in particular and the United States Attorney's office in general is that they were negligent.*
>
> *Significantly, Whittaker makes no claim that his receipt of the January 29 letter in any way prejudiced his defense, such as leading him to destroy exculpatory evidence upon its receipt.   Moreover, the United States did not attempt to gain any tactical advantage from the letter as, for example, attempting to interview Whittaker after sending it.*
>
> *In this regard, we point out that it is not unusual for parties in a judicial proceeding to correct mistakes.  For example, every judge and attorney knows that pleadings and answers to interrogatories often are amended.*

*Whitaker,* at 194.

Consistent with the holding in *Vlahos*, the Third Circuit held such a disqualification order immediately appealable.

10

> *Insofar as we are aware, we have not addressed the issue of whether the United States may appeal from an order disqualifying a United States Attorney from prosecuting a criminal case. The United States, however, cites three cases addressing the point, and all conclude that the United States immediately may appeal from such an order. Whittaker does not cite any case holding to the contrary.*
>
> *We carefully have reviewed these cases and have concluded that we should join with them. As the court explained in Rochon[5] after discussing Flanagan:*
>
> *An order disqualifying government counsel in a criminal case, however, is a different matter, for if it is not immediately appealable, it is effectively unreviewable. For example, in this case, if the grand jury declines to issue any indictments, the government could not appeal because the case would be over. If the grand jury does issue indictments and any defendants subsequently are found guilty, the government, of course, would not seek review. If, on the other hand, any defendants were found not guilty, appellate review of the district court's disqualification order would be precluded by the double jeopardy clause. Thus, in the only instance in which the government would want to press an appeal, the district court's decision preventing the [attorney general] from participating in the grand jury investigation is unreviewable.*
>
> *Finally, we point out that if we found that we did not have appellate jurisdiction, we could and would exercise mandamus jurisdiction. The situation here is like that in Vlahos in which the court, after concluding that the collateral order doctrine supported its jurisdiction, indicated that even if it had held differently, it would exercise mandamus jurisdiction because "the district court exceeded the boundaries of its lawful role by prohibiting the designated representatives of the Executive Branch from prosecuting this criminal contempt action."*

*Whitaker*, at 193.

### *In The Matter of the Grand Jury Subpoena of Rochon*

As reflected above, the Third Circuit when it decided *Whitaker* reviewed the Seventh Circuit case of *In The Matter of the Grand Jury Subpoena of Rochon*, 873 F.2d 170 (7th Cir. 1989). The *Rochon* case involved an order disqualifying the United States Attorney General from participating in a grand jury investigation into death threats and other misconduct underlying a

---

[5] *In Re Grand Jury Subpoena of Rochon*, 873 F.2d 170, 173 (7th Cir. 1989)

11

civil rights suit, based on fact that Attorney General had been named as an official capacity defendant in the suit.

In reversing the disqualification order that prevented the Attorney General from participating in a grand jury investigation, the Seventh Circuit underscored the serious implication of the order as it related to the principle of Separation of Powers:

> *The grand jury, of course, is considering whether Rochon's treatment at the Chicago field office should lead to the prosecution of any individual for a violation of federal law.  The disqualification issue, on the other hand, focuses on the question whether the filing of a civil suit against the Attorney General alleging that the investigation into the Chicago field office incidents has been conducted in bad faith requires his disqualification from the investigation. Answering the latter does not require consideration of the former.*
> *Turning to the merits, we begin with the observation that, contrary to the Rochons' suggestion at oral argument, a federal district court order prohibiting the Attorney General of the United States from participating in a grand jury investigation is no small matter, even if the investigation could continue in his absence.  Since initiating a criminal case by presenting evidence before the grand jury is " 'an executive function within the exclusive prerogative of the Attorney General,'… such an order raises sharp separation-of-powers concerns." As the Ninth Circuit has stated, although the " 'grand jury is subject to a supervisory power in the courts, aimed at preventing abuses of its processes or authority,' "*
>
>> *the separation-of-powers principle imposes significant limits on it.  As a threshold matter, a court may not exercise any supervisory power absent "a clear basis in fact and law for doing so." ... Judicial integrity is rarely threatened significantly when executive action does not violate the constitution, a federal statute, or a procedural rule.  A federal court that imposes sanctions on executive conduct that is otherwise permitted by the Constitution, a federal statute or a rule will most likely be invading the executive sphere....*

*United States v. Gatto*, 763 F.2d 1040, 1046 (9th Cir. 1980) (citations omitted)

*Rochon,* at 173-174.

12

The Third Circuit went on to find:

> *To begin with, neither the Rochons nor the district court argue that Mr. Thornburgh's putative conflict of interest would violate any specific constitutional provision, statute, or rule and, as noted above, separation-of-powers principles preclude us from intruding on the Attorney General's executive prerogative in the absence of such a violation.  On the other hand, existing authority supports the government's position that the Rochons must establish that Mr. Thornburgh has a personal interest in the outcome of the civil litigation to justify his disqualification from the criminal investigation.*
>
> *In sum, disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary" … and in this case it is not.   To the contrary, there simply is no basis in fact and law on which to ground the Attorney General's disqualification from participation in the grand jury investigation of the Rochons' charges of racial harassment on the part of FBI employees.   Because the Rochons have failed completely to establish that Mr. Thornburgh's participation in the criminal investigation will violate some constitutional provision, statute, or rule, we hold that the district court exceeded its powers in prohibiting the Attorney General from performing his executive function.*

*Rochon,* at 176.

### *United States v. Silva-Rosa*

In *United States v. Silva-Rosa*, 275 F.3d 18 (1st Cir. 2001), the First Circuit Court of Appeals affirmed a District Court that refused to grant a defendant's motion to disqualify Navy Officers from serving as prosecuting attorneys on Separation of Powers grounds.   In doing so, the First Circuit distinguished the facts from *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987):[6]

> *Young* is inapposite for at least one conspicuous and significant reason:   the *Young* Court challenged the propriety of a court-appointed prosecutor.   In contrast, the instant case involves prosecutors whom the Attorney General appointed to serve as Special Assistant United States Attorneys.   The Attorney General is authorized to make these appointments under 28 U.S.C. § 543(a), and "[t]his authorization

---

[6] In support of his motion, the defendant cites *Young* as well.

13

contains no limitation on the persons whom the Attorney General may appoint." *United States v. Allred*, 867 F.2d 856, 871 (5th Cir.1989).

*Silva-Rosa*, at 21-22.

After distinguishing *Young*, the Appellate Court ruled:

*In essence, then, appellants are asking this Court to dictate to the executive branch whom it can appoint to serve as its prosecutors. Such a position would expand the power of judicial officials to such a degree as to trigger weighty separation of powers concerns. Appellant's argument thus takes us far outside the scope of Young, where the doctrine of separation of powers was not even implicated. We, therefore, find appellants' reliance on Young to be misguided and decline their invitation to over-extend our authority and trample on the executive branch's seemingly exclusive discretion.*

*Silva-Rosa*, at 22.

### *United States v. Basciano*

Other District Courts have typically heeded the warnings found in clear and binding precedent. For example, in 2011, the United States District Court for the Eastern District of New York denied a Motion to Disqualify an entire United States Attorney's Office in *United States v. Basciano*, 763 F. Supp. 2d 303 (E.D. N.Y. 2011). The District Court held:

> An entire U.S. Attorney's Office should only be disqualified, if ever, when special circumstances demonstrate that the interest of justice could only be advanced by this drastic remedy. Basciano argues that special circumstances exist here, listing instances of purported Government misconduct and suggesting that these instances were motivated by the Office's belief that Basciano attempted to murder AUSA Andres. (See Def. Pretrial Mem. at 15–18; Transcript of Oral Argument on June 26, 2009 ("Arg.Tr.") at 24–37.) The court does not set out Basciano's various challenges to the Government's conduct here, but having reviewed them carefully, the court finds that none of them assert any particular act of bad faith or unethical conduct. They fail to rise to the level of creating the special circumstances required for recusal. Basciano has not shown that the Office possesses anything more than "the appropriate interest that members of society have in bringing a defendant to justice with respect to the crime with which he is charged."

*Basciano,* at 314.

WHEREFORE, because the principle of separation of powers constrains this Court from disqualifying any Assistant United States Attorney from the Eastern District of Missouri that does not have an actual conflict and further constrains the Court from conducting proceedings to do so, the government objects.

Dated: March 20, 2019

Respectfully submitted,

WILLIAM P. BARR
United States Attorney General

TIMOTHY A. GARRISON
United States Attorney
Western District of Missouri

PHILLIP EUGENE PORTER
Special Attorney to the
United States Attorney General

*/s/ Charles S. Birmingham*
CHARLES S. BIRMINGHAM
Special Attorney to the
United States Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2019, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Phillip Eugene Porter*
PHILLIP EUGENE PORTER
Special Attorney to the
United States Attorney General

15