## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 4:18-CR-00139-RWS-NAB |
| | ) | |
| WILLIAM DOUGLAS HANING, | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO STRIKE GOVERNMENT PLEADINGS
## FILED IMPROPERLY WITHOUT LEAVE OF COURT

Defendant William Douglas Haning ("Haning"), by and through undersigned counsel, respectfully moves this Court to strike Government pleadings improperly filed without leave of this Court. Specifically, Haning respectfully requests that this Court strike the pleadings docketed at ECF 126, 127, 128, and 129.

### I.    Background

On February 14, 2018, Haning was charged in an indictment with 31 counts. (Doc. 1). Count 1 charged him with conspiracy in violation of 18 U.S.C. § 1349. (*Id.*). Counts 2 through 31 charged him with wire fraud in violation of 18 U.S.C. § 1343. (*Id.*). Haning pleaded not guilty to all counts.

Following the issuance of the initial indictment, the parties engaged in significant motion practice, culminating in a motion to dismiss the indictment or, in the alternative, to disqualify the prosecution team filed on November 13, 2018. (Doc. 72). On November 28, 2018, the Government filed its response in opposition. (Doc. 79). The very next day, the Government sought, and the grand jury returned, a superseding indictment, adding 19 felony counts. (Doc. 82).

The pending superseding indictment charges Haning with one count of conspiracy in

violation of 18 U.S.C. § 1349, thirty-two counts of wire fraud in violation of 18 U.S.C. § 1343, nine counts of mail fraud in violation of 18 U.S.C. § 1341, seven counts of money laundering in violation of 18 U.S.C. § 1957, and one count of conspiracy in violation of 18 U.S.C. § 371. (Doc 82). Haning, again, pleaded not guilty to all counts.

Haning filed a revised motion to dismiss the superseding indictment or, in the alternative, to disqualify the Eastern District of Missouri prosecution team ("EDMO prosecution team"). (Doc. 88). Since then, this Court has held two evidentiary hearings on this motion—one on January 2, 2019 and one on February 6, 2019.

At the conclusion of the February 6, 2019 hearing, this Court asked the parties to brief the issue of whether the Government could lawfully refuse to authorize the testimony of Charles S. Birmingham ("Birmingham") notwithstanding the Court's conclusion that he possesses testimony relevant to Haning's pending motion. (*See* Feb. 6, 2019 Evid. Hearing Tr. at 149-50). This Court expressly stated that the briefing was limited to a brief by the Government, a response by Haning, and a reply by the Government. (*Id.*).

Because the Government did not comply with this mandate and, instead, filed four pleadings beyond those authorized by this Court, Haning respectfully requests that this Court strike the Government's pleadings docketed at ECF 126, 127, 128, and 129.

## II.    Discussion

In Haning's revised motion to dismiss or, in the alternative, to disqualify the EDMO prosecution team, he argued, *inter alia*, that each individual member of the EDMO prosecution team had an actual conflict of interest as they report directly to United States Attorney Jeffrey Jensen—Haning's former attorney on this very case—on a daily basis. (*See* Doc. 88 at 18-19).

Based on what was known at the time, Haning argued that simply conferring the title

"Special Attorneys to the United States Attorney General" on members of the EDMO prosecution team, did not alleviate the actual conflict of interest each had, given their ongoing subordinate relationship to Jensen. (*Id.* at 18-20). Specifically, Haning argued:

> Giving the members of the EDMO Prosecution Team a new title solely for purposes of this case does not somehow change the fact that each remains an AUSA in the United States Attorney's Office which is supposedly subject to an "office-wide" recusal; each directly reports to Jensen on a daily basis in all other cases and employment capacities, each is compensated as an AUSA, each is eligible for promotion within that office, and each is simultaneously an AUSA in every other capacity of his professional life—except for this case. During the pendency of this case, these AUSAs have regularly appeared in federal court in their capacities as AUSAs in this district—and they continue to do so. Signing pleadings using a different title for purposes of this case should not be all that is required to fall outside of an office-wide recusal.

(*Id.* at 19-20).

Notwithstanding Haning's argument that simply conferring a new title upon the EDMO prosecution team did not eliminate the actual conflict of interest, Haning also noted that the superseding indictment did not comply with the "office-wide recusal" notice (*Id.* at 21-22), and that at least one grand jury subpoena in this case had been issued by Birmingham in his capacity as an Assistant United States Attorney for the Eastern District of Missouri—rather than in his purported capacity as a Special Attorney to the United States Attorney General. (*Id.* at 22-23).

The Government filed a response in opposition to Haning's motion. (Doc. 92). Haning filed a reply in support. (Doc. 95). In his reply, Haning noted, among other things, that he had requested from the Government redacted copies of the other grand jury subpoenas issued in this case. (*Id.* at 16).

Haning then filed a motion to compel production of the redacted grand jury subpoenas, along with documents related to the appointment of the Western District United States Attorney as a Special Attorney to the United States Attorney General. (Doc. 96). Haning explained the

significance of the grand jury subpoenas:

> These subpoenas are directly relevant to the pending motion because if they were obtained by any member of the EDMO Prosecution Team in his capacity as an AUSA in the Eastern District of Missouri, it will be clear that the Government has not complied with the purported office-wide recusal that was allegedly approved for this case. Moreover, if this is so, it will be clear that the members of the EDMO Prosecution Team have failed to act, as they were allegedly required to, as Special Attorneys to the United States Attorney General with respect to this case—and acted (in a very meaningful way) as EDMO AUSAs.

(Doc. 96 at 5-6)

Haning's argument has always been, among other things, that evidence demonstrating that the Government has failed to comply with the "office-wide recusal" it voluntarily put in place further evidences *an actual and personal conflict of interest* for the individual members of the EDMO prosecution team. In addition to reporting directly to Jensen on every other case besides this one, their failure to implement the "office-wide recusal" in this case demonstrates this case is being handled no differently than any other case in their office. If that is so, the EDMO prosecution team should be disqualified from this matter due to their ongoing conflict of interest which is entirely unresolved by the unimplemented "office-wide recusal."

The Government filed a response in opposition to Haning's motion to compel. (Doc. 98). The Government then filed a motion to quash the subpoenas served by Haning on members of the EDMO prosecution team for their testimony at the evidentiary hearing scheduled by this Court to occur on January 2, 2019. (Doc. 99). Haning responded in opposition. (Doc. 100). Haning noted, notwithstanding his compliance with the *Touhy* regulations, that the regulations do not provide the Government with a mechanism for shielding facts from a defendant and from this Court where the United States is a voluntary party to a federal criminal case. (*Id.* at 2-3).

At the January 2, 2019 evidentiary hearing, the Government stated that the EDMO prosecution team was not authorized to testify. (*See* Jan. 2, 2019 Evid. Hearing Tr. at 14).

However, Birmingham stipulated on the record that every grand jury subpoena issued by the Government in this case had been issued by him in his capacity as an Assistant United States Attorney for the Eastern District of Missouri—*not* as a Special Attorney. (*Id.* at 46). This Court stated on the record that it "want[ed] to be able to hear from Mr. Bateman and Mr. Birmingham about how the office-wide recusal process is working within the office." (*Id.* at 56-57). This Court then set this matter for a second evidentiary hearing on February 6, 2019 at which said testimony could be elicited.

The day before the second evidentiary hearing, the Government filed several declarations in an attempt to avoid allowing Haning to call the witnesses this Court had already ruled that he could call at the hearing. (*See* Docs. 106-109). No declaration was filed by, or on behalf of, Birmingham.

At the February 6, 2019 evidentiary hearing, Phillip Eugene Porter ("Porter") testified. However, Porter explained that Birmingham had, again, not been authorized to testify. (*See* Feb. 6, 2019 Evid. Hearing Tr. at 39). At the hearing, various topics with respect to how the "office-wide recusal" was implemented were explored. (*See id.*). Generally, among other things, questions were asked and testimony was given by Porter with respect to: where the physical files associated with this case were stored and who had access to them; whether a firewall existed with respect to the electronic file; whether anyone other than those exempted from the "office-wide recusal" had access to any information connected to this case; whether ECF notices were provided to non-exempted Eastern District of Missouri personnel; whether pleadings had been filed in connection with this case under Jensen's authority; whether the EDMO prosecution team utilized shared printers and/or shared receptionists; and whether the decision to leave the United States Attorney General's and the United States Attorney for the Western District of Missouri's names off the

5

superseding indictment was an intentional decision. (*See id.*). Porter was, unsurprisingly, unable to answer all of these questions as he does not work in the Eastern District of Missouri. Accordingly, near the end of the hearing, this Court concluded that Mr. Birmingham's testimony was necessary and sensibly stated:

> as much as I don't want to continue this hearing ... I want some briefing on the issue of whether the Touhy regulations do apply here and what the authority is for the government not allowing Mr. Birmingham to testify.
>
> And you can -- I want briefing on both sides regarding this before I make a decision on this because right now I do not feel like I have enough information for this particular decision.

(*Id*. at 149). The Government asked for two weeks to file its brief. (*Id*.). This Court gave Haning one week to respond. (*Id*. at 149-50). This Court gave the Government three days to file its reply brief. (*Id*. at 150). This Court then expressly stated, "you don't get to respond to the [reply]." (*Id*.).

Stated simply, this Court reasonably put in place explicit limits concerning permissible briefing on whether Birmingham's testimony could lawfully be withheld by the Government. Accordingly, the Government filed its brief concerning its position that the *Touhy* regulations allowed it to lawfully refuse to allow Birmingham to testify. (Doc. 120). Haning responded in opposition. (Doc. 124). And on March 11, 2019, the Government filed a reply in support. (Doc. 125).

Respecting this Court's mandate with respect to permitted briefing on this issue, Haning awaited a ruling by this Court. The Government did not.

On March 20, 2019, the Government filed four pleadings. (*See* Docs. 126-129). Each pleading was styled an "Objection on Separation of Powers Grounds[.]" (*Id*.). Each pleading argued, generally, that this Court lacks the authority to allow Haning to call Birmingham as a witness to determine how the "office-wide recusal" was implemented in this case to determine

whether the EDMO prosecution team has an actual and personal conflict of interest that precludes their ability to prosecute Haning. (*See id*.). The first "objection" attached 14 exhibits. (Doc. 126). The second "objection" attached 2 exhibits. (Doc. 127). The third "objection" has 31 exhibits attached. (Doc. 128). The fourth "objection" attached 4 exhibits. (Doc. 129). Each pleading was electronically signed by Birmingham but filed by Porter. (*See id*.).

Because this Court expressly—and reasonably—limited the parties' ability to engage in unending briefing on this issue, this Court should strike the Government's improperly filed pleadings.

### III.    Conclusion

Based on the foregoing, Haning respectfully requests that this Court strike the Government's pleadings docketed at ECF 126 through 129 as they were improperly filed without leave of Court.

The improper pleadings constitute but the most recent attempt, in a series of attempts, by the Government to avoid its obligation to comply with this Court's rulings. Federal courts have jurisdiction over federal criminal cases. *See* 18 U.S.C. § 3231. This Court has the lawful authority to hear evidence it deems relevant. For this Court to rule that a Government witness possesses relevant testimony in a criminal case where the United States is a voluntary party does not threaten any separation of powers concerns. The Government's so-called "objections" amount to an argument that this Court lacks the jurisdiction to require a Government witness to testify. The Government's stubborn resistance to this Court's reasonable rulings is concerning and constitutes a threat to the checks and balances put in place by the United States Constitution.

The Government is, for some reason, waging war on this Court—the question is why. The parties are engaged in an evidentiary hearing on a pending motion. The Government asks this

7

Court to allow the Government to determine what evidence is and is not relevant and admissible during this hearing. That decision is squarely within this Court's jurisdiction—*not* the Government's.

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Ian T. Murphy*
ARTHUR S. MARGULIS, #16906
WILLIAM S. MARGULIS, #37625
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
art@margulisgelfand.com
bill@margulisgelfand.com
justin@margulisgelfand.com
ian@margulisgelfand.com
**Attorneys for Defendant**

## Certificate of Service

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

> */s/ Ian T. Murphy*
> ARTHUR S. MARGULIS, #16906
> WILLIAM S. MARGULIS, #37625
> JUSTIN K. GELFAND, #62265
> IAN T. MURPHY, #68289
> 8000 Maryland Ave., Ste. 420
> St. Louis, MO 63105
> Telephone: 314.390.0234
> Facsimile: 314.485.2264
> art@margulisgelfand.com
> bill@margulisgelfand.com
> justin@margulisgelfand.com
> ian@margulisgelfand.com
> **Attorneys for Defendant**

9