UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CR-00139-RWS-NAB |
| | ) | |
| WILLIAM DOUGLAS HANING, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SUPERSEDING INDICTMENT AS IT SEEKS TO PROSECUTE HANING FOR ALLEGED COMMERCIAL SPEECH PROTECTED BY THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

Defendant William Douglas Haning ("Haning"), by and through undersigned counsel, respectfully offers this reply in support of his motion to dismiss the superseding indictment as it seeks to prosecute alleged commercial speech that is protected by the First Amendment to the United States Constitution. (Doc. 133).

### I.  Relevant Background

Haning is charged in a pending superseding indictment with one count of conspiracy in violation of 18 U.S.C. § 1349, thirty-two counts of wire fraud in violation of 18 U.S.C. § 1343, nine counts of mail fraud in violation of 18 U.S.C. § 1341, seven counts of money laundering in violation of 18 U.S.C. § 1957, and one count of conspiracy in violation of 18 U.S.C. § 371. (Doc 82). Haning has pleaded not guilty to all counts.

On April 4, 2019, Haning filed a motion to dismiss the superseding indictment as it seeks to prosecute him, not for unlawful conduct but, rather, based on the content of alleged commercial speech in violation of the First Amendment to the United States Constitution. (*See* Doc. 133). On April 13, 2019, the Government filed its response in opposition. (Doc. 144).

## II. Discussion

### A. This Court Need Not Decide Any Facts to Rule on this Motion

The Government argues that because the elements of the statutes at issue are alleged in the superseding indictment, Haning's motion to dismiss should be denied. (*See* Doc. 144). The Government mischaracterizes Haning's motion as one raising an affirmative defense and an as-applied challenge to the constitutionality of the statutes at issue in the superseding indictment. (*See id.*).

While each count of the superseding indictment alleges the elements of the statutes charged, the superseding indictment should be dismissed by this Court as each count fails to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). Haning's motion does not, at least at this stage of the proceedings, present this Court with either an affirmative defense or an as-applied challenge to the constitutionality of any statute. Rather, Haning's motion simply asks this Court to dismiss all counts of the superseding indictment because, even accepting as true all the allegations, it fails to charge a single cognizable offense. *Id.*

The Government mistakenly contends this Court would need to make factual findings to rule on this motion. (*See* Doc. 144 at 7). This is simply not so. The allegations in the superseding indictment amount to nothing more than various allegations that Haning sold lawful poultry products, identified as poultry products, to recipients that wanted to purchase poultry products. (*See* Doc. 82). Under this framework, the Government cannot obtain a conviction and, therefore, dismissal of the superseding indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) is appropriate.

In an attempt to avoid this truism, the Government argues it is entitled to its day in court to attempt to persuade a jury that certain terms carry certain meanings in the feed and pet food

industry separate and apart from their literal English definitions. (Doc. 144 at 10). What this position overlooks, however, is that First Amendment analysis in this realm focuses on the truth of the speech, *not* the supposed understanding of the listener. Regardless of whether certain terms carry certain meanings in a specific industry, speech that is literally and objectively true simply cannot serve as the basis for a criminal prosecution.

The Government concedes the superseding indictment constitutes an attempt to prosecute commercial speech as opposed to unlawful conduct—precisely because the Government correctly acknowledges it is not unlawful to sell the poultry products at issue in this case. (Doc. 144 at 11) ("the Government alleges that Haning's statements were false and misleading, and it will be for a jury to decide whether the Government proves that allegation"). Objectively true speech is afforded substantial First Amendment protection, regardless of how a listener may have interpreted it. *See, e.g., Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1239 (11th Cir. 2017) ("evidence about what consumers believe to be skim milk's attributes does not make the Creamery's representation that it is selling skim milk misleading; '[u]nfamiliarity is not synonymous with misinformation'"). At best, the Government alleges Haning operated in a sphere in which listeners ascribed certain meanings to certain terms and that, therefore, Haning's alleged speech to those listeners was false and misleading. However, First Amendment jurisprudence makes clear that the United States cannot regulate, much less criminalize, objectively true speech, absent a substantial interest. *See Ocheesee Creamery*, 851 F.3d at 1233; *United States v. Caronia*, 703 F.3d 149 (2d Cir. 2012).

A motion to dismiss an indictment can unquestionably be ruled upon before trial if it involves questions of law rather than fact. *See* Fed. R. Crim. P. 12(b)(3)(B)(v); *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986); *United States v. Korn*, 557 F.2d

3

1089, 1090 (5th Cir. 1977); *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976); *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974). Here, even accepting all of the factual allegations in the superseding indictment as true, Haning's commercial speech was objectively true and, therefore, cannot serve as the basis for a criminal conviction. What the Government fundamentally misses in its response is that the indictment must be considered within the context of the First Amendment. To reach this conclusion, this Court would not need to decide a single fact. Instead, this Court would merely need to determine a question of law: whether objectively true speech can serve as the basis for a criminal conviction. Because the First Amendment protects the right to truthful commercial speech, this Court should grant this motion.

      B.  <u>The Government Refuses to Engage with Haning's Argument</u>

  In his motion to dismiss, Haning notes that where, as here, commercial speech does not concern unlawful activity and is not false or inherently misleading, it is afforded substantial protection under the First Amendment to the United States Constitution. (*See* Doc. 133 at 2) (citing *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 638 (1985) ("Commercial speech that is not false or deceptive and does not concern unlawful activities, however, may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest"); *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980)).

  Haning further explains that challenges to restrictions on commercial speech are evaluated according to the rubric set forth by the Supreme Court in *Central Hudson*. (*See* Doc. 133 at 3). And Haning notes that criminal regulatory schemes warrant even greater scrutiny. (*Id.*) (citing *United States v. Caronia*, 703 F.3d 149, 163 (2d Cir. 2012)).

  In response, the Government argues, "*Central Hudson* is beside the point. Because the

4

indictment sufficiently alleges that Haning committed fraud, the First Amendment does not prohibit his prosecution." (Doc. 144 at 11). But the Government's conclusory response entirely misses the point.

Rather than arguing that Haning's alleged speech was *not* objectively true (an argument the Government could not make with a straight face), the Government argues that this Court must accept as true the allegations that Haning's alleged objectively true commercial speech is transformed into something else due to the alleged audience of entities in the feed and pet food industry. (*See* Doc. 144 at 12) ("the terms "chicken meal," "chicken meal (low ash)," and "turkey meal" refer to premium products that do not include feathers or poultry by-products and are therefore more expensive; that the terms "chicken meal by-product" and "turkey meal by-product" refer to products that do not includes feathers and are therefore more expensive; that Haning blended cheaper feathers and poultry by-products into the food that he later represented to be "chicken meal," "chicken meal (low ash)," "turkey meal," "chicken by-product meal," and "turkey by-product meal").

A private trade association does not have the authority to transform objectively true speech into false speech—indeed, even a state legislature lacks this authority. *See Ocheesee Creamery*, 851 F.3d at 1233. And the Government's refusal to engage in the requisite *Central Hudson* analysis and its requirement that the Government satisfy intermediate scrutiny is telling. Where a state legislature cannot redefine *skim milk* to mean something other than *skim milk* just because lawmakers in the state wanted the term to mean something else, a private trade association similarly cannot redefine *chicken meal* to mean something other than *chicken meal*. *See id*. But that is exactly what the Government seeks to do—not only in a regulatory capacity as in *Ocheesee Creamery*, but in a criminal prosecutorial capacity.

5

Moreover, the Government attempts to brush aside the Second Circuit's decision in *Caronia*, arguing that the case was in a different procedural posture as the district court had already denied the motion to dismiss on First Amendment grounds and that the appellate court drew its facts "primarily from the trial record." (*See* Doc. 144 at 10) (quoting *Caronia*, 703 F.3d at 155 n.4). The Government argues, "[t]hat is the proper procedure here." (*Id.*). The Government seems to incorrectly imply that the Second Circuit's decision was, in any manner, premised on a need to develop a factual record. To the contrary, the district court, while ultimately denying the defendant's motion to dismiss, engaged in a full analysis of the *Central Hudson* factors before trial. *See United States v. Caronia*, 576 F. Supp. 2d 385, 396 (E.D.N.Y. 2008), *vacated and remanded,* 703 F.3d 149 (2d Cir. 2012). And the Second Circuit did not fault the district court for doing so. Rather, the Second Circuit engaged in its own *Central Hudson* analysis and concluded that the *Central Hudson* factors weighed in favor of finding that the defendant's promotion of off-label drug use *was* protected by the First Amendment and vacated and remanded the conviction. *See Caronia*, 703 F.3d 149, 164 (2d Cir. 2012). Neither the district court nor the Second Circuit concluded that the defendant's motion to dismiss on First Amendment grounds constituted an affirmative defense or an as-applied constitutional challenge to the statutes at issue, or that a ruling would invade the province of the jury, as the Government asks this Court to conclude in Haning's case. *Caronia*, at a minimum, stands for the premise that the district court should conduct a *Central Hudson* analysis in addressing this motion—and that is precisely what Haning requests of this Court. *See id.*

To be clear, Haning's position is not that the First Amendment shields fraud—his position is that his alleged commercial speech was objectively true. As such, the Government's attempt to side-step the *Central Hudson* analysis is a sleight of hand aimed at convincing this Court it cannot

6

now rule on Haning's motion. And in conducting that analysis, the question is not whether Haning's alleged speech was truthful through the lens of a private trade association's version of English, but whether it was truthful through the lens of English.

C. At a Minimum, this Court Should Defer Ruling on this Motion Until Trial

This Court should grant this motion to dismiss because Haning has a constitutional right to engage in commercial speech that is objectively true. However, in the alternative, and only if this Court does not determine that Haning is entitled to dismissal of the superseding indictment, Haning respectfully requests that, rather than definitively denying Haning's motion, this Court instead defer a denial of this motion until trial.

The Government discusses *United States v. Turner*, 842 F.3d 602 (8th Cir. 2016) at length in its response. (*See* Doc. 144 at 8-9). The Government accuses Haning of "invit[ing] the Court to commit the same reversible error that the district court committed in *Turner*." (*Id.* at 9). While *Turner* involved a significantly different situation (the defendant argued the statute at issue was unconstitutionally vague in violation of the Fifth Amendment), Haning does not invite this Court to commit any error. Indeed, it appears the Government does so.

In *Turner*, the district court denied the defendant's motion to dismiss. *Turner*, 842 F.3d at 604. The Eighth Circuit reversed. *Id.* The Court noted, "Courts may consider evidence beyond the pleadings to make factual findings in pretrial orders." *Id.* at 605. "Indeed, Rule 12 contemplates that district courts may sometimes make factual findings when ruling on pretrial motions and requires that the court 'state its essential findings on the record.'" *Id.* (quoting Fed. R. Crim. P. 12(d)). The Court continued, "Courts may not, however, make factual findings when an issue is 'inevitably bound up with evidence about the alleged offense itself.'" *Id.* (quoting *United States v. Grimmett*, 150 F.3d 958, 962 (8th Cir. 1998)). "The relevant question is thus not what evidence

7

the court relied upon in its ruling, but rather what type of factual finding it made." *Id.*

In *Turner*, the Eighth Circuit held that the district court had to necessarily rule on whether the defendant had engaged in "regular drug use" at the time he possessed a firearm. *Id.* The Court determined that the facts surrounding the commission of the alleged offense would assist with that determination and that, therefore, the motion could not be ruled upon before trial. *Id.* Here, of course, this Court would not need to engage in any factual analysis to rule on the pending motion. At most, this Court would only need to determine, *inter alia*, that it is objectively truthful to refer to a "meal" consisting entirely of poultry parts as "poultry meal." In other words, if the Government's allegation were that Haning called food consisting entirely of cows "poultry meal," Haning would have no First Amendment argument. However, where, as here, the Government's allegation is that Haning called food consisting entirely of poultry "poultry meal," this Court has the ability—indeed, the responsibility—to find that such speech cannot be criminalized because it is objectively true.

However, were this Court inclined to deny this motion, Haning respectfully requests that this Court instead defer ruling until trial, pursuant to Rule 12(d). In *Turner*, after the district court denied the defendant's motion to dismiss, the Eighth Circuit reversed, concluding, "the district court erred by definitively ruling on the motion at that point instead of informing Turner that it would defer a ruling until trial. Pretrial motions should be ruled on unless there is 'good cause to defer a ruling.'" *Id.* (quoting Fed. R. Crim. P. 12(d)). Good cause exists and a decision should be deferred if disposing of the pretrial motion requires making factual determinations that "fall[] within the province of the ultimate finder of fact." *Turner*, 842 F.3d at 605 (quoting *United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994)).

8

      D.    <u>In the Alternative, this Court Should Conclude that Haning's First Amendment Defense is Relevant at Trial</u>

Throughout its response, the Government asserts that it is entitled to its day in court to attempt to prove, beyond a reasonable doubt, that a "meal" consisting of "chicken" parts, is not "chicken meal"; a "meal" consisting of "chicken" parts, is not "chicken meal (low ash)"; and a "meal" consisting of "turkey" parts, is not "turkey meal." (*See* Doc. 82 at ¶ 3(a)) ("chicken meal, chicken meal (low ash), and turkey meal are dry rendered poultry products that do not contain feathers, heads, feet, and entrails"). In other words, the Government demands the opportunity to attempt to prove that if an individual were to grind up an entire "chicken" into a "meal"—feathers, head, feet, entrails, and all the other parts that make up a chicken—that resulting meal could not be called "chicken meal." And that this same perplexing logic applies to a turkey.

As such, and out of an abundance of caution, Haning respectfully requests that—if this Court denies his motion to dismiss and also denies his alternative request that this Court defer a definitive ruling on his motion—this Court rule that Haning, too, will get his day in court and be permitted the opportunity to argue to the jury that the alleged speech the Government attempts to criminalize is protected by the First Amendment.

**III.    Conclusion**

Based on the foregoing, Haning respectfully requests that this Court grant his motion to dismiss, dismissing all counts of the superseding indictment because the Government is prosecuting alleged commercial speech that is protected by the First Amendment to the United States Constitution.

9

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Ian T. Murphy*
ARTHUR S. MARGULIS, #16906
WILLIAM S. MARGULIS, #37625
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
art@margulisgelfand.com
bill@margulisgelfand.com
justin@margulisgelfand.com
ian@margulisgelfand.com
**Attorneys for Defendant**

## Certificate of Service

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

*/s/ Ian T. Murphy*
ARTHUR S. MARGULIS, #16906
WILLIAM S. MARGULIS, #37625
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
art@margulisgelfand.com
bill@margulisgelfand.com
justin@margulisgelfand.com
ian@margulisgelfand.com
**Attorneys for Defendant**