**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 4:18-CR-00139-RWS-NAB** |
| | ) | |
| **WILLIAM DOUGLAS HANING,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**POST-EVIDENTIARY HEARING BRIEF IN SUPPORT OF
MOTION TO DISMISS INDICTMENTS OR, IN THE ALTERNATIVE,
TO DISQUALIFY PROSECUTORS BIRMINGHAM AND BATEMAN**

Defendant William Douglas Haning ("Haning"), by and through undersigned counsel, respectfully submits this post-evidentiary hearing brief in support of his motion to dismiss both the superseding indictment (Doc. 82) and the initial indictment (Doc. 1). In the alternative, Haning moves to disqualify Assistant United States Attorneys ("AUSAs") Charles S. Birmingham ("Birmingham") and Kyle T. Bateman ("Bateman") (collectively, the "EDMO prosecution team").

This Court should dismiss both the superseding indictment and the initial indictment because the Government has violated the statutory scheme which governs the prosecution of a defendant by Special Attorneys to the United States Attorney General. *See* 28 U.S.C. §§ 515, 516, 519, 543, 547. Specifically, the Government has violated—and continues to violate—the statutes in two critical ways, either one of which warrants relief.

First, it is undisputed that the United States Attorney for the Western District of Missouri, Timothy A. Garrison ("Garrison"), has not been appointed a Special Attorney to the United States Attorney General but is nevertheless "in charge of this case." (Doc. 92 at 9). However, absent such an appointment, Garrison's authority is statutorily limited to prosecutions "within his district." *See*

28 U.S.C. § 547; *United States v. Sigillito*, 759 F.3d 913, 929 (8th Cir. 2014). Thus, Garrison's prosecution of Haning in the Eastern District of Missouri violates federal law.

Second, the Government concedes that no United States Attorney General has ever played any role in this case and, therefore, has not provided the statutorily mandated direction and supervision of the actions taken by the Special Attorneys in this matter—including, but not limited to, the issuance of the superseding indictment. *See* 28 U.S.C. §§ 515, 516, 519, 543, 547. The Government argues this lack of involvement by any Attorney General precludes dismissal of the indictments on the grounds that installation of the then-Acting United States Attorney General— Matthew G. Whitaker ("Whitaker")—violated the Appointments Clause of the United States Constitution. (*See* Docs. 79 and 92). As such, the Government's position throughout this litigation has been that, rather than violating the Appointments Clause, the Government has, instead, violated the federal statutes which govern any prosecution involving Special Attorneys to the United States Attorney General. The Government's position necessarily means that this prosecution has not been directed and supervised by the one person federal law requires to perform those tasks: the Attorney General of the United States. *See* 28 U.S.C. §§ 515, 516, 519, 543, 547.

To deny Haning's motion to dismiss the indictments would require this Court to overrule *Sigillito* and to disregard the federal statutes which control prosecutions by Special Attorneys.

Additionally, this Court should dismiss the indictments because—notwithstanding the Government's attempts to isolate the unconstitutionally-installed Whitaker from this case by, *inter alia*, making the conscious decision to omit his name from the superseding indictment (*see* Doc. 92 at 13)—Whitaker's installation as Acting United States Attorney General necessarily indicates that Haning's prosecution was directed and supervised by an unconfirmed principal officer in direct violation of the Appointments Clause.

Finally, and only in the event this Court does not dismiss the indictments, this Court should disqualify the EDMO prosecution team due to an ongoing personal and actual conflict of interest caused by their subordinate relationship to Haning's former attorney, United States Attorney Jeffrey B. Jensen ("Jensen"), in all aspects of their professional life. Moreover, each member of the EDMO prosecution team has an actual and personal conflict of interest because evidence demonstrates that each has failed to implement the office-wide recusal procedure mandated by the Department of Justice in this case which reveals that this litigation has proceeded under the authority of the United States Attorney for the Eastern District of Missouri—Haning's former lawyer who also represented a witness against Haning in this case—and that the details of this litigation have remained accessible by the employees of what is supposed to be an entirely recused office.[1]

## I.       Relevant Background

Since October 6, 2017, Jensen has served as the United States Attorney for the Eastern District of Missouri. Each member of the EDMO prosecution team is employed as a full-time AUSA in the Eastern District of Missouri and each operates in that capacity on a daily basis in his other cases. Jensen and the Office of the United States Attorney for the Eastern District of Missouri are recused from this case in what the Department of Justice has officially declared an "office-wide recusal" (*see* Doc. 75-1)—and for good reason: prior to becoming the United States Attorney, Jensen and his former firm—Husch Blackwell—represented both Haning and Wilbur-Ellis, Haning's former employer, which is a witness in this case and a defendant in a related matter. *See United States v. Wilbur-Ellis et al.*, 4:17-cr-00100-NAB (E.D. Mo.).

---

[1] Haning has not had the opportunity to elicit testimony from any employee of the U.S. Attorney's Office for the Eastern District of Missouri. Thus, while the record already establishes that dismissal and disqualification are warranted, the opportunity to elicit testimony from individuals who work in the U.S. Attorney's Office for the Eastern District of Missouri would undoubtedly add support to Haning's positions.

On February 14, 2018, Haning was charged in an indictment with thirty-one counts. (Doc. 1). Consistent with the mandate of the Department of Justice's Official Notice (Doc. 75-1), the initial indictment contains the name of then-Attorney General Jefferson Sessions and his title, then the name of United States Attorney for the Western District Timothy Garrison and his title, and then the names of the Special Attorneys. (*See* Doc. 1).

On November 13, 2018, Haning filed a motion to dismiss the indictment or, in the alternative, to disqualify the EDMO prosecution team. (Doc. 72). On November 29, 2018, the Government responded in opposition. (Doc. 79). However, prior to this Court's ruling on Haning's motion, the Government sought, and the grand jury returned, a superseding indictment charging Haning with an additional 19 felony counts. (Doc. 82). The superseding indictment does not contain the name or title of then-Acting Attorney General Whitaker, or the name or title of any United States Attorney; it contains only the names of the members of the EDMO Prosecution Team, not any principal officer. (*Id.*).

On December 3, 2018, Haning filed a motion to dismiss the superseding indictment or, in the alternative, to disqualify the EDMO prosecution team. (Doc. 88). On December 11, 2018, the Government responded in opposition. (Doc. 92). On December 18, 2018, Haning filed a reply in support of his motion. (Doc. 95). This Court set an evidentiary hearing on Haning's motion for January 2, 2019. (Doc. 89).

On December 20, 2018, Haning filed a motion to compel production of documents. (Doc. 96). Specifically, Haning sought production of all grand jury subpoenas issued in connection with this case as he had become aware of at least one subpoena that was issued by Birmingham, not in his capacity as a Special Attorney to the United States Attorney General, but, rather, in his capacity as an AUSA in the Eastern District of Missouri. (*Id.*). Haning also sought the letters of appointment

and/or the appointment affidavits appointing Phillip E. Porter ("Porter") and Garrison as Special Attorneys in this case. (*Id.*). On December 27, 2018, the Government responded in opposition to Haning's motion to compel. (Doc. 98). In this pleading, the Government for the first time disclosed that Garrison was not a Special Attorney. (*Id.*).

On December 30, 2018, the Government filed a motion to quash subpoenas served by Haning on the EDMO prosecution team. (Doc. 99). On January 1, 2019, Haning responded in opposition. (Doc. 100).

On January 2, 2019, the parties appeared before this Court for the first setting of the evidentiary hearing on Haning's motion to dismiss or, in the alternative, to disqualify the EDMO prosecution team. (Doc. 101). At this setting, Birmingham represented to this Court that every grand jury subpoena issued in this case had been issued by Birmingham in his capacity as an AUSA in the Eastern District of Missouri, that each contained the main address and phone number of the EDMO U.S. Attorney's Office, and that none contained any indication that this prosecution was being handled by any authority other than the EDMO U.S. Attorney's Office. (*See* Jan. 2, 2018 Evid. Hearing Tr. at 43-46). This Court ultimately continued the evidentiary hearing to February 6, 2019.

On February 4, 2019, the Government filed a supplemental response in opposition arguing, *inter alia*, that the United States Attorney for the Western District of Missouri need not be appointed as a Special Attorney to supervise and direct a prosecution in the Eastern District of Missouri. (Doc. 105). In support of this curious position, the Government argued the Eighth Circuit in *Sigillito* "made a mistake" (Doc. 105 at 3) when it held, "[b]ecause the USA and AUSAs in the Western District USA were special attorneys in this case, they had the authority to prosecute Sigillito in the Eastern District USA." *Sigillito*, 759 F.3d at 929.

On February 5, 2019, the Government filed under oath-declarations of Porter, Bateman, Joshua Jones ("Jones"), and Jensen. (Docs. 106-109). The next day, the parties appeared for the second setting of the evidentiary hearing. (Doc. 111). Porter testified at the hearing. (*See* Feb. 6, 2019 Evid. Hearing Tr.). Following Porter's testimony, this Court determined that Birmingham possessed testimony relevant to resolution of Haning's motion and that the Court wanted to hear Birmingham's testimony (*see id.* at 116), but the Government asserted that Birmingham had not been authorized to testify by Garrison pursuant to the *Touhy* regulations. (*Id.* at 5). This Court asked the parties to brief the issue of whether the *Touhy* regulations prevented the Court from ordering Birmingham to testify. (*Id.* at 149).

On February 27, 2019, the Government filed its brief concerning the applicability of the *Touhy* regulations. (Doc. 120). The Government styled the brief as a brief in support of its motion to quash. (*Id.*). On March 6, 2019, Haning filed his response in opposition. (Doc. 124). On March 11, 2019, the Government filed its reply. (Doc. 125).

On March 20, 2019, the Government filed four separate objections to this Court's order requiring Birmingham to testify. (Docs. 126-129). This Court denied Haning's motion to strike the four objections but granted him leave to respond. (Doc. 146). On April 26, 2019, Haning filed his consolidated response to the four objections. (Doc. 150).

On May 2, 2019, the parties appeared before this Court for a status conference. (Doc. 153). This Court granted the Government's motion to quash, effectively ending the evidentiary hearing on Haning's motion. (Doc. 154). This Court then ordered post-evidentiary hearing briefing. (Doc. 153).

## II.    Discussion

### A.    The Government Has Violated the Federal Statutes that Govern this Prosecution

Dismissal of the indictment and the superseding indictment is warranted because the Government has violated, and continues to violate, the statutory scheme which governs the prosecution of a defendant by Special Attorneys to the United States Attorney General. *See* 28 U.S.C. §§ 515, 516, 519, 543, 547.

#### 1.    *Garrison is Acting Outside His District Despite Not Being Appointed a Special Attorney*

The most important two facts at issue in this litigation are *undisputed*: (1) Garrison has been directing and supervising this prosecution in the Eastern District of Missouri; and (2) while doing so, Garrison has never been a Special Attorney pursuant to 28 U.S.C. § 515 or any other statute.

The only member of the prosecution team the defense was permitted to call, Porter, admitted these facts under oath:

> Q:    Okay. Has Mr. Garrison, at any time during the pendency when he was directing and supervising this prosecution, been a special attorney pursuant to section 515 or any other section?
>
> A:    He has not and it's not required for him to be such.

(Feb. 6, 2019 Evid. Hearing. Tr. at 79).[2]

The Government's position—that Garrison may prosecute Haning without being a Special Attorney—conflicts with the statutes directly on point and with binding Eighth Circuit precedent.

---

[2] In addition to Porter's testimony, Haning requested Garrison's Special Attorney appointment letter and oath by way of discovery and, subsequently, by filing a motion to compel. (Doc. 96). At the January 2, 2019 evidentiary hearing, the Government represented to this Court that Garrison need not be a Special Attorney and that, therefore, no such paperwork exists. (Jan. 2, 2019 Evid. Hearing. Tr. at 20-21) ("THE COURT: And how did -- so your position is Mr. Garrison did not need to be sworn in as any type of a Special Attorney in order for this to take place, it's just the office was designated by the Department of Justice to be able to do this? Is that -- MR. PORTER: Short answer, yes").

7

Under federal law, a United States Attorney has authority to prosecute all offenses against the United States only "within his district." 28 U.S.C. § 547. The exception to this rule—as delineated in the statute entitled, "Special Attorneys"—is that the "Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires." 28 U.S.C. § 543. These Special Attorneys "may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought." 28 U.S.C. § 515. And each such Special Attorney "*shall* take the oath required by law." *See id*. (emphasis added).

During the course of this litigation, Garrison has not been the United States Attorney for the Eastern District of Missouri. As such, this prosecution has not occurred "within his district." 28 U.S.C. § 547. And the only evidence before this Court—Porter's admission under oath—is that Garrison "has not" been a Special Attorney pursuant to Section 515 or any other section—because the Government maintains "it's not required for him to be such." (Feb. 6, 2019 Evid. Hearing. Tr. at 79). It naturally follows, as Porter also admitted in his testimony, that Garrison has never taken the Special Attorney oath in connection with this case. (Feb. 6, 2019 Evid. Hearing. Tr. at 80) (Q: "Has he [Garrison] ever taken the Special Attorney oath in connection with this case that you and Ms. Mahoney and the other members of the prosecution team have taken?" A: "No, sir.").

Thus, the analysis turns on whether it is required that Garrison—who has been at the helm of this ship throughout the entire time during which Haning has been under indictment—be a Special Attorney.

The Eighth Circuit has already answered this question clearly and unambiguously.

In *Sigillito*, 759 F.3d at 928-29, the Eighth Circuit considered whether the United States Attorney for the Western District of Missouri had the authority to prosecute a defendant in the Eastern District of Missouri. The court's analysis was as follows:

> Sigillito contends that the United States Attorney (USA) from the Western District USA had no authority to prosecute him because 28 U.S.C. § 547 requires that USAs prosecute crimes only within their district. While generally true, Sigillito ignores the statutes that allow the Attorney General to appoint special attorneys. Special attorneys may conduct any type of legal proceeding regardless of district of residence because of 28 U.S.C. § 515. As the Supreme Court has noted, specific statutes control over general statutes, regardless of the date of enactment. *Bulova Watch Co. v. United States,* 365 U.S. 753, 758 (1961). The more specific statute, which deals with special attorneys, allows for prosecution regardless of the special attorney's residency. ***Because the USA and AUSAs in the Western District USA were special attorneys in this case, they had the authority to prosecute Sigillito in the Eastern District USA***. Thus, Sigillito's argument on this point fails.

*Id*. at 929 (emphasis added).

On this issue, *Sigillito* is binding precedent in this district.

The Eighth Circuit made a factual finding that the United States Attorney (Beth Phillips) and the Western District Assistant United States Attorneys "were special attorneys in this case." *Id*. Because that factual finding is fatal to the Government's position in this case—where Porter flat-out admitted under oath that Garrison "has not" been a Special Attorney under Section 515 or any other statute (Feb. 6, 2019 Evid. Hearing. Tr. at 79)—the Government asks this Court to overrule the Eighth Circuit's factual finding and its legal holding, and to find that the U.S. Attorney in *Sigillito* was not a Special Attorney. (*See* Doc. 105) ("The Eighth Circuit simply made a mistake in that assertion").

*First*, the Government should be judicially estopped from advancing this argument. This presentment of contradictory positions should not be allowed under the rule of judicial estoppel, which is an "equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). The purpose of the rule is "to protect the integrity of the judicial process"

9

by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749-50 (internal citations omitted).

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Id.* at 749. The Government should not be permitted to "gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"—but that is precisely what the Government is doing here. The Eighth Circuit did not make "a mistake." Rather, the Government made representations in oral argument that this Court heard during the evidentiary hearing. And the parties in this case are certainly not in a position to litigate the facts of *Sigillito*— all so that a district court can overrule the Eighth Circuit on a factual premise of its holding.

*Second*, the Government's argument is a red herring, because the Eighth Circuit's holding cannot be ignored even if the Eighth Circuit was *arguendo* mistaken about this fact. As set out in its decision, the Eighth Circuit carefully and thoughtfully analyzed the interplay between 28 U.S.C. § 547—which limits a United States Attorney's jurisdiction to "within his district"—and 28 U.S.C. §§ 543 and 515—which delineate what Special Attorneys may do. *See Sigillito*, 759 F.3d at 928-29. (In his testimony, Porter denied that the Eighth Circuit addressed the interplay between Sections 547 and 515. *See* Feb. 6, 2019 Evid. Hearing. Tr. at 94).

Then, the Eighth Circuit concludes that the Western District United States Attorney's prosecution of the defendant in the Eastern District of Missouri was lawful for one reason: "Because the USA and AUSAs in the Western District USA were special attorneys in this case, they had the authority to prosecute Sigillito in the Eastern District USA." *Id*. at 929. The Government asks this Court to read *Sigillito* as saying that they had the authority to prosecute Sigillito outside of the Western District regardless of whether the U.S. Attorney and the Western

10

District AUSAs were Special Attorneys—and there is no reasonable way to read the Eighth Circuit's opinion that way. What that means is that the holding still stands, even if the factual premise were somehow mistaken, and that holding is straightforward: a prosecutor only has the authority to prosecute a defendant outside of his district if he is a Special Attorney acting consistently with 28 U.S.C. §§ 515 and 543. And Porter's under-oath testimony established in no uncertain terms that Garrison has never been a Special Attorney and that for the majority of the time he was prosecuting this case, Porter too was not a Special Attorney. (*See* Feb. 6, 2019 Evid. Hearing. Tr. at 46) (Porter admitted he was a member of the prosecution team prior to December 17, 2018 but that he was not appointed as a Special Attorney until that date). Porter's participation in this case too requires dismissal because he too was not a Special Attorney when he purportedly approved the superseding indictment.

*Third*, there is no dispute that—consistent with the statutory scheme—a Special Attorney is required to take an oath. In this regard, Porter readily admitted the relevant facts and legal requirements when he was questioned about his own authority to prosecute Haning:

> Q:    Now, to become a special attorney, you had to take an oath separate from the oath that you took to become an AUSA in the Eastern District of Missouri; correct?
>
> A:    That is correct.
>
> Q:    And as we talked about before, that's a statutory requirement under 505 of Title 28; correct?
>
> A:    I believe that is also correct.

(Feb. 6, 2019 Evid. Hearing. Tr. at 79); *see also* 28 U.S.C. § 515 (Special Attorneys "shall take the oath required by law").

> Q:    Has he [Garrison] ever taken the special attorney oath in connection with this case that you and Ms. Mahoney and the other members of the prosecution team have taken?

11

A:      No, sir.

(Feb. 6, 2019 Evid. Hearing. Tr. at 80).

*Finally*, the principle Haning is advocating is far from controversial—the U.S. Attorney's Office in the Eastern District of Missouri has adopted it in other cases, as has the Department of Justice on a national level. For example, the Justice Department implemented a U.S. Attorney-only recusal in the recent prosecution of Steven Stenger. In that case, AUSA Hal Goldsmith obtained an indictment against Stenger and the indictment was signed with the following signature block:

> REGINALD HARRIS
> Attorney for the United States
> Acting Under Authority Conferred by
> 28 U.S.C. Section 515

*See United States v. Stenger*, 4:19-CR-312-CDP-NCC (Doc. 2) (Filed April 25, 2019).[3]

Similarly, the Government brought to this Court's attention the *United States v. Yumeitrius Manuel* case in the United States District Court for the Middle District of Alabama, Case No. 2:11-CR-134-MEF. (*See* Doc. 128). In that pleading, the Government highlights the fact that undersigned counsel, Justin K. Gelfand, was a federal prosecutor in that 2011 case; indeed, a component of the Department of Justice based in Washington, D.C. handled that prosecution in Montgomery, Alabama, because of a conflict of interest that arose from the U.S. Attorney's prior representation of the defendant in the same case. That indictment, signed by Gelfand, had the following signature block:

> THOMAS D. ANDERSON
> Attorney for the United States
> Acting Under Authority Conferred by 28 U.S.C. 515

---

[3] Haning asks this Court to take judicial notice of this pleading filed in this district.

The bottom line remains: to prosecute Haning, Garrison has to be a Special Attorney acting under authority conferred by Section 515. But the undisputed testimony in this Court's record reveals one fundamental truth: Garrison is not, and has never been, a Special Attorney acting under authority conferred by Section 515 or any other statute. Porter said so. (*See* Feb. 6, 2019 Evid. Hearing. Tr. at 80). Furthermore, Garrison has never taken the Special Attorney oath required by statute. Unless this Court were to entirely disregard three federal statutes and a binding Eighth Circuit case, the man captaining this ship—Garrison—does not have the authority to prosecute Haning and this case must therefore be dismissed.

2.     *This Prosecution is Not Being Supervised by the United States Attorney General*

The Government has staked its position in no uncertain terms: it is Garrison, *not* the Attorney General (or, when Whitaker was installed, Acting Attorney General), who is singularly directing and supervising this prosecution. (*See* Doc. 92 at 10-11) ("it could not be any more clear that *the United States Attorney for the Western District of Missouri is in charge of this case*) (emphasis added); *id*. ("the current relevant chain of command, *from top to bottom*, is WDMO USA Tim Garrison, WDMO Criminal Chief Gene Porter, WDMO Fraud and Public Corruption Unit Chief Kate Mahoney (as a Special Attorney), and Charles Birmingham, Gilbert Sison, and Kyle Bateman as the line prosecutors on the case (also as Special Attorneys)") (emphasis added); *id*. ("No different from any other matter or case undertaken by the United States Attorney for the Western District of Missouri, the WDMO USA does not need any further approval or supervision from the Attorney General or any other official in the Department of Justice to pursue investigative and prosecutive actions in this case"); Feb. 6, 2019 Evid. Hearing. Tr. at 77-79 (Porter testified that Garrison has been directing and supervising this prosecution).

This plainly violates federal law. The law requires that "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefore, is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516. Where, as here, the Government is purporting to exercise its authority through Special Attorneys to the United States Attorney General, "the Attorney General *shall supervise* all litigation to which the United States, an agency, or officer thereof is a party, *and shall direct* all United States attorneys, assistant United States attorneys, and special attorneys appointed under [28 U.S.C. § 543] in the discharge of their respective duties." 28 U.S.C. § 519 (emphasis added). Section 543 provides that the "Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires" and "[e]ach attorney appointed under this section is subject to removal by the Attorney General." 28 U.S.C. § 543 (emphasis added). And the statute from which the Government expressly purports to derive its authority in this case—28 U.S.C. § 515—confers prosecutorial authority on others only "when *specifically directed* by the Attorney General" and only after the attorney has "take[n] the oath required by law" (emphasis added).

Indeed, the Department of Justice's Office of Legal Counsel ("OLC") itself has repeatedly recognized the importance of the Attorney General in these statutory functions. *See* John Harmon, Litigating Authority of the Office of Federal Inspector, Alaska Natural Gas Transportation System, 5 4B U.S. Op. Off. Legal Counsel 820, 1980 WL 20994 (1980) ("Section 519 in terms imposes a *mandatory duty on the Attorney General to supervise all litigation involving the United States*, except as otherwise authorized by law") (emphasis added); *see also* Theodore Olson, The Attorney General's Role as Chief Litigator for the United States, 6 U.S. Op. Off. Legal Counsel 47, 54, 59, 1982 WL 170670 (1982) ("While the Attorney General may delegate some litigating authority...

14

*he may not delegate the ultimate responsibility* which is by law vested exclusively in the Attorney General") (emphasis added).

By the Government's own admission—separate and apart from the Appointments Clause issue and separate and apart from the Garrison-is-not-a-Special-Attorney issue—the Government is violating federal law and apparently believes it is entitled to do so. For this reason alone, this Court should dismiss the indictment and the superseding indictment. *See United States v. Providence Journal Co.*, 485 U.S. 693 (1988) (dismissing matter for lack of jurisdiction where special prosecutor lacked statutory authority to represent the United States in a petition for a writ of certiorari even though district court judge appointed the special prosecutor to handle the underlying case). As the Supreme Court held, the question is not whether the Government believes it has the authority to prosecute; in *Providence Journal*, a federal district judge clearly believed he had the authority to appoint a special prosecutor. *See id*. The only question there—and here—is whether the prosecutors actually have the authority to prosecute, and the clear answer there and here is no. *See id*.

To be clear, the Government has *not* represented that the Attorney General of the United States has directed and supervised this prosecution; rather, the Government has in no uncertain terms represented that the Attorney General has not, and that the Attorney General does not have to. This directly conflicts with the heavy weight of legal authority on which Haning relies: federal statutes, case law, and DOJ OLC opinions. Despite the abundance of litigation on this pretrial motion, the Government has not offered a single statute or case that supports its position—and, no matter how many times the Government asserts otherwise, the internal "recusal notice" email is not law.

15

B.      This Prosecution Violates the Appointments Clause

Under the Appointments Clause, no person may assume the power of a principal officer of the United States unless that person has been appointed to that office by the President with the advice and consent of the Senate. *See* U.S. Const. Art. II, § 2, Cl. 2. On November 7, 2018, President Donald Trump installed Whitaker as Acting Attorney General after forcing the resignation of Attorney General Jefferson Sessions. However, because he was not appointed to that office by the President with the advice and consent of the Senate, Whitaker held that authority improperly and in direct contravention of the Appointments Clause. Whitaker remained Acting Attorney General until February 14, 2019, when William Barr was confirmed by the Senate as the new Attorney General. (Unlike Whitaker, Barr was nominated by the President and confirmed by the Senate.)

Whitaker's several-month involvement in this case is fatal to this case because the Government claims the prosecution team is comprised of Special Attorneys to the United States Attorney general pursuant to 28 U.S.C. § 515; but that statute provides prosecutorial authority only "when *specifically directed by the Attorney General*" (emphasis added). In the absence of a statute to the contrary (there is none), "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefore, is reserved to officers of the Department of Justice, *under the direction of the Attorney General*." 28 U.S.C. § 516 (emphasis added). Similarly, "*the Attorney General shall supervise* all litigation to which the United States, an agency, or officer thereof is a party, *and shall direct* all United States attorneys, assistant United States attorneys, and special attorneys appointed under [28 U.S.C. § 543] in the discharge of their respective duties." 28 U.S.C. § 519 (emphasis added). Furthermore, the "*Attorney General may appoint* attorneys to assist United States attorneys when the public interest

so requires" and "[e]ach attorney appointed under this section *is subject to removal by the Attorney General*." 28 U.S.C. § 543 (emphasis added).

Collectively, these statutes singularly and unavoidably task the Attorney General with the responsibility of supervising litigation involving the United States, directing special attorneys in the discharge of their duties, and appointing special attorneys who are subject to removal only by the Attorney General himself. Federal law plainly demands that any action taken by a Special Attorney to the United States Attorney General in a federal criminal case be supervised and directed by the Attorney General.

Of particular significance is the fact that the superseding indictment in this case was handed down on November 29, 2018, when Whitaker still unconstitutionally acted as the Acting United States Attorney General. (*See* Doc. 82). Indeed, Whitaker did not vacate that post until February 14, 2019, after the second setting of the evidentiary hearing on the pending motion to dismiss. And the Government's calculated decision to leave Whitaker's name off of the superseding indictment does nothing to shield the patent unconstitutionality of this prosecution. (*See* Doc. 92 at 13) ("the prosecution team had a choice to make, because no matter how the signature block was constructed, the defense would argue that the superseding indictment was invalid"). The decision to leave Whitaker's name off of the superseding indictment was the result of intentional deliberation employed in a thinly-veiled effort to avoid what the Government believed would present a more powerful Appointments Clause challenge.

There is simply no such thing as a Special Attorney to the United States Attorney General when there is not a validly-appointed Attorney General. Because the prosecutors in this case act as Special Attorneys to the United States Attorney General, their authority in that capacity is expressly limited to that which is supervised and directed by the Attorney General. Absent this

statutorily-mandated supervision and direction by the Attorney General, a Special Attorney to the United States Attorney General acts without legal authority.

Because he was installed as Acting Attorney General in violation of the Appointments Clause, Whitaker lacked the power to prosecute this case—much less to supervise it, direct it, or to remove the Special Attorneys prosecuting it. The Government cannot insulate this prosecution from dismissal simply by deciding to ignore these federal laws. The Department of Justice should never intentionally violate federal laws in any manner. As it turns out, it appears that even now that there is a constitutionally-appointed Attorney General, the Government is of the opinion that his direction and supervision is unnecessary in this case. *See supra.*

The Supreme Court has rejected the idea that individuals can be subjected to the actions of those who act without authority. *See, e.g., Ryder v. United States*, 515 U.S. 177, 181-84 (1995) (invalidating actions taken by individuals given authority in violation of the Appointments Clause); *Providence Journal Co.*, 485 U.S. at 693 (dismissing case for lack of jurisdiction where special prosecutor lacked statutory authority to represent the United States in a petition for a writ of certiorari even though district judge appointed the special prosecutor to handle the underlying case); *Landry v. Fed. Deposit Ins. Corp.*, 204 F.3d 1125, 1130-32 (D.C. Cir. 2000) (violation of Appointments Clause constitutes structural error); *N.L.R.B. v. SW General, Inc.*, 137 S.Ct. 929, 935 (2017) (reaffirming that Appointments Clause is a "structural safeguard") (internal citations omitted).

Because this case is purportedly being prosecuted—at least, in part—by Special Attorneys to the Attorney General, this legal challenge is unique compared to others lodged in federal criminal cases raising Appointments Clause challenges arising from Whitaker. The legal analysis is inherently and inevitably different because, unlike a case prosecuted by a United States Attorney

within his or her district, this case has no principal officer's involvement. (Garrison is not a principal officer in the Eastern District of Missouri, just as the Secretary of Defense is not a principal officer authorized to prosecute a defendant in this district.)

Because the prosecution of Haning violates the Appointments Clause, this Court should dismiss the indictments.

C.    The EDMO Prosecution Team have Actual and Personal Conflicts of Interest

If this Court denies Haning's motion to dismiss, this Court should—at a minimum— disqualify the EDMO prosecution team because each is a full-time AUSA in a United States Attorney's Office which is supposedly recused from this prosecution and each prosecutor reports directly to Haning's former attorney, Jeffrey Jensen, on a daily basis. Moreover, the EDMO prosecution team has failed to implement the mandated "office-wide" recusal which has caused this case to be handled no differently than any other case prosecuted by the United States Attorney's Office for the Eastern District of Missouri.

1.    *Each Member of the EDMO Prosecution Team is a Subordinate of Jensen*

In prior pleadings on this issue, the Government repeatedly emphasizes that "the only conflict of interest that matters is an actual conflict of interest." (Doc. 92 at 20); (*See also* Doc. 126 at 1-2) ("absent articulation of an actual conflict," this Court should not "interfere with" the manner in which the executive branch staffs its cases). Haning has both articulated and demonstrated an "actual conflict" in this case—at least insofar as he could without being permitted to elicit the testimony of Birmingham or Bateman.

Giving the members of the EDMO prosecution team a new title solely for purposes of this case does not somehow change the fact that each remains an AUSA in a United States Attorney's

Office which is supposedly subject to an "office-wide" recusal; each directly reports to Jensen on a daily basis in all other cases and employment capacities, each is compensated as an AUSA, each is eligible for promotion within that office, and each is simultaneously an AUSA in every other capacity of his professional life. During the pendency of this case, these AUSAs have regularly appeared in federal court in their capacities as AUSAs in this district—and they continue to do so. The EDMO prosecution team has an actual conflict of interest due to their ongoing subordinate relationship to Haning's former attorney, Jensen. There is no objective reason why EDMO AUSA Hal Goldsmith, for example, is recused from this case but why Birmingham and Bateman are not.

Making matters worse, the EDMO prosecution team has built a case which relies heavily, and unjustifiably, on the credibility of Wilbur-Ellis and its employees. This too creates an actual conflict of interest for the EDMO prosecution team—because a decision to believe that Jensen's former client, Wilbur-Ellis, misled or lied to the Government would require the EDMO prosecution team to reject Jensen's former client's statements and, presumably, to reject Jensen's representations made while in the role of his former client's advocate. In this regard, Haning introduced evidence that Jensen directly communicated about this case with Birmingham when Jensen was in private practice; however, Haning was prevented from eliciting testimony from Birmingham about the substance of those communications. Furthermore, the Husch Blackwell connection to this case is even deeper and more troubling. Based on information and belief, a member of Birmingham's immediate family is presently employed at Husch Blackwell. The Government never disclosed this fact to the defense. And to be clear, even if she has not worked on this matter, the conflict still exists—because Birmingham is in a position to believe or to disbelieve Husch Blackwell's client based, at least in part, on the advocacy of Husch Blackwell attorneys.

Stated simply, the EDMO prosecution team each has a personal and actual conflict of interest because their performance in this case might have an effect on their careers as AUSAs in the Eastern District of Missouri. There is no reason these two EDMO AUSAs have to work on this case given these conflicts of interest. To be clear, a conflict of interest often exists despite the integrity and best efforts of the people involved. For example, a prosecutor should not prosecute a distant family member even if that prosecutor has the utmost integrity and swears not to let that relationship affect his or her conduct. It is a conflict of interest regardless. In other words, the question before this Court is *not* whether Birmingham or Bateman have acted differently because of Jensen or the other Husch Blackwell connections. The question is whether a conflict is present simply because those relationships exist. It is.

2. *The EDMO Prosecution Team Failed to Implement the Office-Wide Recusal*

When Haning raised the issue that he was being prosecuted by attorneys with a conflict of interest, the Government responded that the "office-wide" recusal alleviated any concerns. (*See* Doc. 92). In his reply, and through evidence adduced at the evidentiary hearing, Haning established that the so-called "office-wide" recusal has not been implemented in any meaningful manner and that, therefore, the actual conflict of interest remains. (*See* Doc. 95 and Evid. Hearing Tr.).

It was only when it became clear that the Government's purported office-wide recusal had not been implemented that the Government first began contending that Haning and this Court are not entitled to information concerning how the recusal was implemented and that the office-wide recusal was "voluntary." (*See* Docs. 126-129). This Court witnessed an evolution in the Government's positions. First, the Government argued there was no conflict because it implemented recusal processes. Second, when it became clear the Government failed in that respect, the Government then objected to disclosing information. And third, when Haning was able

to prove the virtual non-existence of recusal procedures in the EDMO U.S. Attorney's Office, the Government's position shifted to this notion that the recusal was "voluntary" in the first place and is, therefore, not subject to judicial review.

The Department of Justice ordered an "office-wide recusal" in an attempt to eliminate the obvious conflict of interest in this case stemming from Jensen's previous representation of both Haning and Wilbur-Ellis. Evidence demonstrating that the recusal has not been implemented in any meaningful way demonstrates that the EDMO prosecution team has an *actual* conflict of interest that precludes their continued involvement in this case. After all, a recusal can only effectively eliminate an obvious conflict of interest if it is actually adhered to.

Haning's argument has always been, among other things, that evidence demonstrating the prosecution team's failure to comply with the "office-wide recusal" the Department of Justice put into place further evidences *an actual and personal conflict of interest* for the individual members of the EDMO prosecution team. In addition to reporting directly to Jensen on every other case besides this one, their failure to implement the "office-wide recusal" in this case demonstrates this case is being handled no differently than any other case in their office.

In *Sigillito*—a case relied on by the Government in previous pleadings until it realized that *Sigillito* expressly held that the United States Attorney for the Western District of Missouri was only authorized to supervise and direct a prosecution in the Eastern District of Missouri if he was appointed a Special Attorney—the Eighth Circuit held "prosecutors must be disinterested such that they may not represent the United States 'in any matter in which they, their family, or their business associates have any interest.'" *Sigillito*, 759 F.3d at 927–28 (quoting *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803 (1987)). The Eighth Circuit continued, "This is because '[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring

irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions.'" *Id.* at 928 (quoting *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 249–50 (1980)). "As a result, the presence of an interested prosecutor is a fundamental error that 'undermines confidence in the integrity of the criminal proceeding.'" *Id.* (quoting *Young*, 481 U.S. at 810).

Recusal is necessary to ensure that Haning is prosecuted only by disinterested prosecutors. If the recusal formally put into place by the Department of Justice was largely ignored—and it is now clear that it was—Haning has been prosecuted for more than a year by prosecutors who represent the United States in a "matter in which they, their family, or their business associates have any interest." *Sigillito*, 759 F.3d at 927-28.

The members of the EDMO prosecution team were exempted from the "office-wide recusal" of the Eastern District of Missouri on the condition that the recusal was implemented. (*See* Doc. 75-1). The recusal notice specifically stated, "WDMO will provide a supervisory chain of command so the three EDMO AUSAs listed below...who are excluded from the recusal that otherwise affects all other lawyers in the EDMO USAO...can continue to be the line prosecutors working this case." (*Id.*). The notice also outlined how "transfer of information related to this matter" was to be handled. (*Id.*). And it expressly explained, "any Special Attorney assigned the matter or case should sign any pleadings or documents using the signature block of the Western District of Missouri, with the addition of the Attorney General's name preceding that of the United States Attorney." (*Id.*). When it became clear that these, and other, directives were not followed by the EDMO prosecution team, Haning moved to disqualify them.

23

Through the Government's responsive pleadings and through evidence adduced at the evidentiary hearing, Haning has conclusively demonstrated that the "office-wide recusal" has not been implemented. For instance, Haning has demonstrated that:

- 50 to 100 grand jury subpoenas were issued by an EDMO AUSA purporting to act on behalf of Jensen which provided the main number and main address of the EDMO U.S. Attorney's Office (Feb. 6, 2019 Evid. Hearing Tr. at 66, 80);

- The Government filed a pleading in a related seizure warrant case signed by EDMO AUSA Bateman and filed by Bateman and Jensen (*Id.* at 72);

- Recused EDMO AUSA Jones filed a pleading in a related case with the assistance of a recused paralegal in the EDMO Financial Litigation Unit whose identity has not been disclosed (*Id.* at 82);

- Danielle Floyd, Stephanie Haar, and Erica Wall (among others) are recused employees of the EDMO U.S. Attorney's Office but have, nonetheless, regularly received ECF notices in this case including notices of all sealed and/or *ex parte* pleadings that were filed by the Government (*Id.* at 54-56);

- The Government has intentionally used signature blocks inconsistent with the recusal protocols supposedly put into place by the Department of Justice (*Id.* at 75);

- Physical files in EDMO are not stored where recused employees cannot access them because "we trust our people" (*Id.* at 63);

- Documents related to this case may have been printed to shared printers in the EDMO U.S. Attorney's Office (*Id.* at 65);

- There may have been administrative functions performed by recused employees with respect to this case (*Id.* at 67);

- Porter does not know whether any EDMO employees exempted from the recusal had discussed this case with Jensen as he did not ask them (*Id.* at 52); and

- Jensen has communicated with at least one member of the prosecution team about this litigation and Jensen submitted a declaration to this Court with respect to Haning's pending motion (*Id.* at 51-52).

The parties seem to agree that Haning has the right to not be prosecuted by a conflicted prosecutor. The only dispute concerns whether the fact that the EDMO prosecution team are subordinates of Haning's former attorney in all facets of their professional life, save this case, and whether the fact that the "office-wide recusal" protocol has been effectively ignored throughout this litigation matters.

This does matter. Because the EDMO prosecution team relies on Jensen's approval to advance in their careers and because this case has been treated as if it were any other case being prosecuted in the Eastern District of Missouri, the EDMO prosecution team has a personal and actual conflict of interest and this Court should disqualify them from any further participation in this case.

### III.    Conclusion

Based on the foregoing, this Court should dismiss this case because the Government has violated, and continues to violate, the federal statutes governing this prosecution and because Whitaker's installation as Acting United States Attorney General violated the Appointments Clause. In the alternative, this Court should disqualify the EDMO prosecution team because conferring onto them a different title for purposes of a single case does not change the fact that they remain AUSAs in this district, that they have an actual conflict of interest, and that the

investigation of this case was undertaken pursuant to the authority of the United States Attorney for the Eastern District of Missouri.

Respectfully submitted,

**Margulis Gelfand, LLC**

 /s/ Justin K. Gelfand
JUSTIN K. GELFAND, #62265
WILLIAM S. MARGULIS, #37625
ARTHUR S. MARGULIS, #16906MO
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
bill@margulisgelfand.com
art@margulisgelfand.com
ian@margulisgelfand.com

**Certificate of Service**

I hereby certify that I filed the foregoing through the Court's CM/ECF system which will provide notice of filing to all counsel of record.

/s/ Justin K. Gelfand
JUSTIN K. GELFAND, #62265
WILLIAM S. MARGULIS, #37625
ARTHUR S. MARGULIS, #16906MO
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
justin@margulisgelfand.com
bill@margulisgelfand.com
art@margulisgelfand.com
ian@margulisgelfand.com