UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 4:18-CR-139-RWS |
| v. | ) | |
| | ) | |
| WILLIAM DOUGLAS HANING, | ) | |
| | ) | |
| Defendant. | ) | |

## HANING'S SENTENCING MEMORANDUM

Defendant William Douglas Haning ("Haning"), by and through undersigned counsel, respectfully submits this memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary" to achieve the statutory objectives of punishment. *See* 18 U.S.C. § 3553(a). Haning respectfully requests, pursuant to a written plea agreement with the United States under Federal Rule of Criminal Procedure 11(c)(1)(C), that this Court impose a sentence of probation for a period of five years.

The 48-year old father of three who stands before this Court for sentencing has pled guilty to the first criminal convictions he has ever received. Haning has fully accepted responsibility for his conduct, is profoundly remorseful for what he has done, and has forfeited significant assets to the Government in connection with this matter. While Haning certainly appreciates the seriousness of the crimes to which he pled guilty, based on his age, background, complete lack of criminal history, full acceptance of responsibility, sincere remorse, and his profoundly positive attributes, Haning submits that a sentence of probation is "sufficient, but not greater than necessary." *Id*. Significantly, the United States concurs, by written plea agreement pursuant to Rule 11(c)(1)(C), that a sentence of probation in this case is appropriate.

As Congress and the Supreme Court acknowledge, this Court is charged with the

responsibility of evaluating Haning as an individual in crafting an appropriate sentence that is particularly tailored to him. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *see also* 18 U.S.C. § 3553(a)(1) ("The court…shall consider…the history and characteristics of the defendant").

When faced with the possibility of incarceration, it is easy to lose sight of the fact that a sentence of probation is, by no means, lenient. Indeed, as recently as 2007, the U.S. Supreme Court rejected the idea that a sentence of probation is nothing but an overly-lenient slap on the wrist. *See Gall v. United States*, 552 U.S. 38, 44, n.4 (2007) ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty...[p]robation is not granted out of a spirit of leniency...probation is not merely 'letting an offender off easily'").

**I.      Procedural Background**

Haning was charged in a superseding indictment with one count of conspiracy in violation of 18 U.S.C. § 1349, thirty-two counts of wire fraud in violation of 18 U.S.C. § 1343, nine counts of mail fraud in violation of 18 U.S.C. § 1341, seven counts of money laundering in violation of 18 U.S.C. § 1957, and one count of conspiracy in violation of 18 U.S.C. § 371. (Doc 82). Following substantial motion practice, Haning entered a plea of guilty, pursuant to a written plea agreement with the Government under Federal Rule of Criminal Procedure 11(c)(1)(C), to Counts 49 and 50 of the superseding indictment. (Doc. 175). Specifically, on October 24, 2019, Haning pled guilty to one count of money laundering in violation of 18 U.S.C. § 1957 and one count of conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. (*Id.*).

2

On December 13, 2019, the United States Probation Office issued its Disclosure Presentence Investigation Report ("PSR"). (Doc. 180). On December 27, 2019, Haning filed objections to the PSR. (Doc. 182). On January 3, 2020, Haning filed supplemental objections to the PSR. (Doc. 184). On January 10, 2020, the Probation Office issued its Final PSR. (Doc. 185).

## II. Legal Standard

Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of punishment. 18 U.S.C. § 3553(a). The United States Sentencing Guidelines, while advisory, "are no longer mandatory." *United States v. Ture*, 450 F.3d 352, 356 (8th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 224 (2005).

As the United States Court of Appeals for the Eighth Circuit has established, the methodology this Court should follow post-*Booker* is the following:

> In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines . . .. Next, the district court should decide if any applicable Guidelines provisions permit a traditional "departure" from the recommended sentencing range . . .. The term "departure" is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines" . . .. The calculation of the initial advisory Guidelines range, along with any applicable departures, results in a "final advisory Guidelines sentencing range" . . .. Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. § 3553(a) justify a "variance" outside the final advisory Guidelines sentencing range . . .. As opposed to a "departure," a "variance" refers to a "non-Guidelines sentence" based on the factors enumerated in Section 3553(a).

*United States v. Lozoya,* 623 F.3d 624, 625-26 (8th Cir. 2010) (citations omitted).

## III. Guidelines

Haning objects to certain inapplicable Sentencing Guidelines enhancements and other allegations relating to the offense conduct included in both the Disclosure and Final PSR.[1]

---

[1] In light of the plea agreement pursuant to Rule 11(c)(1)(C), resolution of these objections is immaterial to the sentence ultimately imposed by this Court, provided this Court sentences Haning consistent with the plea agreement. However, out of an abundance of caution, Haning lodges the following objections to the PSR.

3

Specifically, Haning objects to paragraphs 56, 57, 63, 67, and 100 of the Final PSR. (Doc. 185). In this case, the parties engaged in significant motion practice and, thereafter, thoughtfully negotiated a written plea agreement. (*See* Doc. 176). In the written plea agreement, the parties agreed that the base offense level in this case is 6, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§2N2.1(a) and (c)(1) and 2B1.1. (*Id.* at 24). The parties further agreed that 16 levels should be added pursuant to U.S.S.G. §§2N2.1(c)(1) and 2B1.1(b)(1)(J) as the pecuniary gain exceeded $1,500,000 but was less than $3,500,000. (*Id.*). The parties also agreed that 2 levels should be added as the offense involved sophisticated means. (*Id.*). Finally, the parties agreed that 3 levels should be deducted pursuant to U.S.S.G. §§3E1.1(a) and (b) as Haning clearly accepted responsibility. (*Id.* at 25). Accordingly, the parties agreed the Total Offense Level in this case is 21. (*Id.*).

Notwithstanding the parties' meticulous negotiated written plea agreement, the PSR recommends that this Court conclude that the Total Offense Level in this case is 26. (Doc. 185 at ¶ 67). This Court should reject the PSR's incorrect conclusions.

    A.    <u>Paragraph 56</u>

The PSR incorrectly asserts that the pecuniary gain in this matter is between $3,500,000 and $9,500,000 which would result in an 18-level enhancement, as opposed to the 16-level enhancement agreed to by the parties. (*Id.* at ¶ 56). However, this conclusion is refuted by other correct observations contained within the PSR. Specifically, the PSR correctly notes, "[a]ccording to the government, the determination of loss to the individual consumers who purchased the misbranded product would be impossible. The parties have agreed the loss amount for guideline calculation purposes is the pecuniary gain as to each defendant." (*Id.* at ¶ 43). The PSR then correctly explains:

4

> For guideline purposes since the determination of loss to the individual consumers who purchased the misbranded product would be impossible to calculate, the parties agreed that the aggregated pecuniary gain derived by [Haning] from the marketing and sale of misbranded and adulterated product for which [Haning] is accountable was at least $1,500,000, but not more than $3,500,000.

(*Id.* at ¶ 45).

Nonetheless, the PSR asserts that Haning should be held accountable for unlawful pecuniary gain of between $3,500,000 and $9,500,000. (*Id.* at ¶ 56). Because there is nothing in the record, and no reason for this Court to conclude, that Haning is accountable for pecuniary gain exceeding $3,500,000, this Court should sustain Haning's objection to Paragraph 56 of the PSR and apply the 16-level enhancement agreed to by the parties.

      B.      <u>Paragraph 57</u>

The PSR also mistakenly asks this Court to apply a 2-level enhancement pursuant to U.S.S.G. §2B1.1(b)(9)(C) for Haning's purported violation of a prior "specific judicial or administrative order, injunction, decree, or process[.]" (Doc. 185 at ¶ 57). Rather than looking to the factual basis for the guilty plea to which the parties agreed, it appears the PSR looks to unproven allegations contained within the superseding indictment. (*See* Doc. 82 at ¶¶ 29-32). This Court should sustain Haning's objection to the application of this enhancement.

The PSR contends this Court should apply this enhancement because auditors in the State of Texas allegedly seized approximately 33,000 pounds of low-ash chicken meal in May 2010. (Doc. 185 at ¶ 57). In addition to this allegation not being agreed to by the parties in the written plea agreement or admitted by Haning at his guilty plea, this allegation does not support imposition of the sentencing enhancement recommended in the PSR. Specifically, review of allegations in the superseding indictment reveals that the alleged "Stop Sale Seizure" referenced in the PSR was specifically tethered to the low-ash chicken meal on site during an audit of the facility more than

5

9 years ago. (*See* Doc. 82 at ¶ 31). That low-ash chicken meal was purportedly seized by the State of Texas at that time and, as such, Haning's guilty plea, nearly a decade later, to money laundering and conspiracy does not constitute a violation of a prior "specific judicial or administrative order, injunction, decree, or process"—indeed, it is impossible for Haning to have violated the "Stop Sale Seizure" as it was limited to the specific protein product that was seized at that time. Under the PSR's interpretation of allegations that the parties did not agree to, this enhancement would ostensibly apply even 100 years from now—but this enhancement only applies when a "specific" order, injunction, decree, or other similar process is violated. *See* U.S.S.G. §2B1.1(b)(9)(C). It cannot reasonably be disputed that no such violation occurred in this case.

Because the 2-level enhancement the PSR asks this Court to apply is plainly misplaced, this Court should sustain Haning's objection to Paragraph 57 of the PSR.

      C.     Paragraph 59

In the written plea agreement, the parties agreed that the only applicable enhancements are the 16-level enhancement pursuant to U.S.S.G. §§2N2.1(c)(1) and 2B1.1(b)(1)(J) (for the pecuniary gain) and the 2-level enhancement pursuant to U.S.S.G. §§2N2.1(c)(1) and 2B1.1(b)(10)(C) (as the conduct involved sophisticated means). (*See* Doc. 176 at 24). However, the PSR notes that an additional 1-level enhancement pursuant to U.S.S.G. §2S1.1(b)(2)(A) is warranted because Haning pled guilty to violating 18 U.S.C. § 1957. (Doc. 185 at ¶ 59). It appears, despite not being contemplated in the plea agreement, that this enhancement is warranted. As such, Haning does not lodge an objection to Paragraph 59 of the PSR.

      D.     Paragraphs 63, 67, and 100

Haning's objections to Paragraphs 63, 67, and 100 of the PSR flow directly from the above-described objections to the PSR's recommendation that this Court apply unwarranted

6

enhancements not contemplated by the parties. Specifically, because this Court should sustain Haning's objections to Paragraphs 56 and 57, the PSR's assertion in Paragraph 63 that the Adjusted Offense Level is 29 is incorrect—instead, the Adjusted Offense Level is 25. As such, Haning respectfully objects to Paragraph 63 of the PSR. For the same reasons, the PSR's assertion in Paragraph 67 that the Total Offense Level is 26 is incorrect—instead, the Total Offense Level is 22. Accordingly, Haning respectfully objects to Paragraph 67 of the PSR. Finally, because the Total Offense Level in this case is 22, and because Haning's criminal history category is I, the Guideline imprisonment range in this case is 41 to 51 months—*not*, as the PSR contends, 63 to 78 months. As such, Haning respectfully objects to Paragraph 100 of the PSR.

### E.   Offense Conduct Objections

Additionally, Haning respectfully objects to the factual contentions contained within paragraphs 28, 29, 30, 31, 36, 37, 39, 42, and 44 included in the offense conduct section of the PSR, each of which is directly relevant to the above Guidelines enhancements to which Haning objects and which are inconsistent with the plea agreement between the parties.

There is no evidentiary support for the factual contentions in these paragraphs. Furthermore, these paragraphs include allegations not stipulated to by the parties and, moreover, include allegations from other cases in which Haning is not, and was never, a party. (*See, e.g.,* Doc. 185 at ¶ 42) (discussing Information filed under Docket No. S1-4:17-CR-00100-PLC).

Based on the foregoing, this Court should conclude that the Total Offense Level in this case is 22.

### IV.   Section 3553(a) Factors

As a matter of law, this Court must not presume the Guideline range reasonable, but must make an individual assessment of the Section 3553(a) factors based on all the facts presented. *See*

7

*Gall*, 552 U.S. at 50. Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553(a) then lists seven factors that a sentencing court must consider. Especially relevant to this case, and supportive of the parties' request that this Court sentence Haning to five years of probation, are the following factors:

### A.   The History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)

Haning was born and raised in Texas. Although his parents divorced when he was 16 years old, Haning had a good childhood, along with his brother and sister. Haning has been married to his wife, Christy, for 27 years and has raised three daughters—ages 26, 23, and 20.

Haning has worked hard his entire life. He began his career working in law enforcement in the Kaufman County, Texas Sheriff's Department. Thereafter, he worked with his family at a protein blending company that was eventually purchased by Wilbur-Ellis, an international marketer and distributor of agricultural products and animal feed. Currently, Haning works alongside his wife at her home health hospice service.

### B.   The Need to Protect the Public from Further Crimes of the Defendant – 18 U.S.C. § 3553(a)(2)(C)

As demonstrated by a lifetime of no arrests or convictions and an unblemished performance on bond during the pendency of this case, Haning will never commit another crime. Haning has already suffered the consequences of a felony conviction and he will continue to do so. Put simply, this is not a defendant who will recidivate.

Furthermore, sentencing courts often consider a defendant's age when considering this Section 3553(a) factor. Indeed, there are a number of decisions in which courts have given notably less weight to the Sentencing Guidelines in recognition of the fact that older individuals, some as young as 40, are far less likely to commit additional crimes. *See* United States Sentencing

8

Commission, *Recidivism: Criminal History Computation of the Federal Sentencing Guidelines* (2004) (showing that those in the age group of 41 to 50 who fall in criminal history category I have an especially low recidivism rate of 6.9%, as compared to those, for example, in the 36 to 40 years of age bracket who recidivate at a rate of 12.1% and those under age 21 who recidivate at a rate of 29.5%); *see also United States v. Carmona-Rodriguez*, 2005 WL 840464, *4 (S.D.N.Y. 2005) (observing that those defendants "over the age of forty...exhibit markedly lower rates of recidivism in comparison to younger defendants"). The Sentencing Commission releases such empirical studies precisely so that, in cases such as this, the Court can include these facts in its consideration of a fair sentence.

At age 48, Haning will not recidivate if he is sentenced to probation.

        C.      <u>The Kinds of Sentences Available – 18 U.S.C. § 3553(a)(3)</u>

In *Gall*, the U.S. Supreme Court observed that probation, "'rather than an act of leniency,' is a 'substantial restriction of freedom.'" 552 U.S. at 44; *see also Warner*, 792 F.3d at 860 (affirming term of probation as "a sufficiently serious sentence"); *United States v. Coughlin*, No. 06-20005, 2008 WL 313099, at *5 (W.D. Ark. Feb. 1, 2008) (recognizing that "probation can be severe punishment[s], hugely restrictive of liberty, highly effective in the determent of crime and amply retributive," and that "[n]ot all defendants must be sentenced to imprisonment to be duly punished"); *United States v. Brady*, No. 02-CR-1043 (JG), 2004 WL 86414, at *8 (E.D.N.Y. Jan. 20, 2004) (noting that probation is "a punitive measure"). Congress and the Sentencing Commission have similarly recognized that probation, "a sentence in and of itself," may constitute an appropriate alternative to incarceration that meets fully the statutory purposes of sentencing. *See* U.S.S.G., Ch. 5, pt. B, Intro. Cmt. (citing 18 U.S.C. § 3561). Probationers remain subject to "several standard conditions that substantially restrict their liberty," including restraints on their

ability to associate freely or to leave the judicial district. *Gall*, 552 U.S. at 48. The Court can also impose a variety of "discretionary conditions" to probation, 18 U.S.C. § 3563(b), and the violation of any condition can be grounds for revocation and the imposition of a term of incarceration.

Nor was probation intended by Congress to be an exceptional kind of punishment. To the contrary, Congress directed more than three decades ago that the Guidelines should reflect the "general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). This is precisely the position in which Haning finds himself. He is a first-time offender who has not been convicted of a crime of violence.

Haning submits, and the Government, by way of the plea agreement in this case agrees, that a sentence of probation is sufficient punishment in this case. Indeed, the felony conviction alone has already hit Haning hard and the collateral consequences—to his freedom and reputation—are real. Haning has learned his lesson and has fully accepted responsibility for his conduct.

### D. The Need to Avoid Unwarranted Sentence Disparities – 18 U.S.C. § 3553(a)(6)

A sentence of probation in this case would satisfy Congress' mandate that sentencing courts should aspire to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This Court has ready access to numerous defendants with similar records who have been found guilty of similar conduct—and who have received probation.

For example, the PSR notes that there are several related cases in this district. (*See* Doc. 180 at ¶¶ 12-16). Each defendant in the related cases that has been sentenced has received a sentence of probation. (*See id*. at ¶¶ 12 and 14) Thus, the sentence Haning is requesting is well

within the heartland of sentences similarly situated defendants with similar records have received for similar conduct. *See* 18 U.S.C. § 3553(a)(6); *see also Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (emphasizing need for sentencing courts to avoid unwarranted sentencing disparities among similarly situated defendants).

## V.     Conclusion

Based on the foregoing, Haning respectfully requests that this Court sentence him to a term of probation as agreed to by the parties in the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). If given the opportunity, Haning will be exemplary on probation as he has been on bond since his arraignment nearly two years ago. He has fully accepted responsibility for his conduct and aspires to continue to be a remarkable father to his children, husband to his wife, and asset to his community.

For all these reasons, Haning respectfully submits that a sentence of probation is "sufficient, but not greater than necessary," and that is what the law requires. 18 U.S.C. § 3553(a).

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Ian T. Murphy*
ARTHUR S. MARGULIS, #16906
WILLIAM S. MARGULIS, #37625
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
art@margulisgelfand.com
bill@margulisgelfand.com
justin@margulisgelfand.com
ian@margulisgelfand.com
**Attorneys for Defendant**

**Certificate of Service**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Ian T. Murphy*
ARTHUR S. MARGULIS, #16906
WILLIAM S. MARGULIS, #37625
JUSTIN K. GELFAND, #62265
IAN T. MURPHY, #68289
8000 Maryland Ave., Ste. 420
St. Louis, MO 63105
Telephone: 314.390.0234
Facsimile: 314.485.2264
art@margulisgelfand.com
bill@margulisgelfand.com
justin@margulisgelfand.com
ian@margulisgelfand.com
**Attorneys for Defendant**